### UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC.,                            ) | |
|                      Plaintiff,      ) | |
|                            ) | Court No. 23-00046 |
|              v.                   ) | |
|                            ) | |
| UNITED STATES,                ) | |
|                            ) | |
|                   Defendant.    ) | |

### PLAINTIFF'S MOTION TO DEEM ADMITTED ITS REQUESTS FOR ADMISSION AND COMPEL OTHER DISCOVERY RESPONSES FROM DEFENDANT

Pursuant to USCIT Rules 36(a)(6), 37(a)(2)(B), and 37(a)(4)(A), Plaintiff Glock, Inc. ("Glock") respectfully submits this motion with an incorporated memorandum in support ("Motion") to: (1) deem Defendant United States ("Defendant") to have admitted each of the requests set forth in Glock's First Set of Requests for Admissions, dated April 2, 2024 ("RFAs") for failure to provide sufficient answers; (2) strike all of Defendant's objections to Glock's First Set of Interrogatories, dated March 27, 2024 ("Interrogatories"), for failure to timely respond, with the exception of attorney-client privilege; (3) overrule each of Defendant's objections to the requests in Glock's First Set of Requests for the Production of Documents, dated March 27, 2024 ("RFPs"), and the Interrogatories; (4) order Defendant to respond to each of the RFP requests and Interrogatories in full and without objection, other than as to attorney-client privilege, and produce all responsive documents; and (5) order Defendant to pay Glock's reasonable attorneys' fees and expenses incurred in connection with the Motion.

### INTRODUCTION

Glock manufactures certain models of GLOCK pistols from domestically manufactured components and assembles certain other models of GLOCK pistols from foreign manufactured

pistol component parts that it imports from GLOCK Ges.m.b.H. in Austria. Pursuant to a licensing agreement, Glock pays royalties to another Austrian entity for the right to use certain trademarks in connection with its subsequent sale of those products. The amount of the royalties is based on a percentage of Glock's net sales of products. Because the pistol component parts that Glock imports are not sold in their condition as imported, the component parts are appraised under 19 USC § 1401a(d)(2)(A)(iii), which provides for the deductive value of imported merchandise after assembly in the United States.

This action concerns the deduction and non-dutiability of Glock's sales-based royalty payments. Defendant, through U.S. Customs and Border Protection ("CBP"), has refused to accept Glock's accounting of its royalty payments as a "general expense" under 19 USC § 1401a(d)(3)(A)(i) notwithstanding Glock's compliance with U.S. Generally Accepted Accounting Principles ("GAAP"). Consequently, the very straightforward issue for this Court to decide is whether the trademark-related royalty payments that Glock makes for its net sales of products assembled in the United States from parts manufactured overseas constitutes a general expense that is properly deducted from the dutiable value of imported component parts.

Despite the simplicity of the issues and Glock's long term open book and collegial engagement with CBP for well over six years, Defendant remains insistent on making this matter as time consuming, burdensome, and difficult as possible. Indeed, Glock cooperated with CBP at all administrative levels for over a half decade in an effort to amicably resolve this dispute, however the Defendant ultimately concluded that this Court should determine the deductibility of Glock's royalty payments.

This litigation comes as a result of the Defendant's unabashed refusal to accept Glock's GAAP-compliant accounting of its royalty payments. In the years leading up to this action, CBP has systematically failed to acknowledge and accept basic accounting principles, act on its

statutory mandates, adhere to Congress' explicit guidance, and/or follow its own regulations, published guidance and administrative determinations.

In par with its pre-litigation practices, Defendant has asserted wholesale meritless objections to Glock's initial discovery requests, and it inexcusably failed to both provide substantive responses and/or produce any documents whatsoever. Defendant has continued to stonewall and avoid its discovery obligations despite Glock's efforts to meet and confer with Defendant to narrow the issues in dispute and obtain the discovery for which it is rightfully entitled. With no end in sight to the Defendant's dilatory approach to discovery, Glock has no choice but to seek relief from this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE LAWSUIT

On January 16, 2024, Glock commenced this lawsuit to challenge the valuation of an import entry that was filed at the Port of Atlanta, Georgia on November 10, 2021, and liquidated on October 21, 2022 (the "Entry"). *Compl.* (Doc. 7) ¶3. The merchandise covered by the Entry consists of a Kit containing various component parts necessary to assemble twenty (20) finished/complete GLOCK Model 19RM FXD training pistols. *Id.* ¶¶11-12. Glock assembled the training pistols using component parts from the Entry at its facility in Smyrna, Georgia and then sold the completed training pistols to the United States Postal Inspection Service in Potomac, Maryland. *Id.* ¶¶14-15.

All GLOCK pistols, including the training pistols assembled from the parts in the Entry, bear a distinctive GLOCK logo and embody the unique and readily identifiable overall appearance of a GLOCK pistol, both of which are protected by trademarks registered with the U.S. Patent and Trademark Office. *Compl.* ¶16. In exchange for the exclusive rights to the commercial use of the

GLOCK trademarks in the United States, Glock pays royalties to the owner of the trademarks pursuant to the licensing agreement. *Id.* ¶¶19-21. The amount of royalties that Glock owes is based on its "net sales" of licensed products, which includes all models of GLOCK pistols, "following its sale of licensed products in the United States." *Id.* ¶¶21-23. "Net sales" of licensed products is determined after licensed products are sold and specific sums are calculated and deducted, including trade discounts, credits based on returns of licensed products, freight expenses, and federal firearm excise taxes. *Id.* ¶24.

On or about June 24, 2021, CBP issued HQ H304606 wherein it rejected Glock's cost valuation methodology and determined that Glock's royalty payments are dutiable because CBP somehow believes the royalties constitute a cost of production. *Compl.* ¶¶28, 44-45. In accordance with HQ H304606, CBP liquidated the Entry without a deduction in value for the royalty payment. *Id.* ¶¶29-30. Glock then protested the liquidation of the Entry, which was deemed denied by operation of law. *Id.* ¶¶4-5. CBP's appraisement of the Entry was erroneous because there is no legal basis to include Glock's sales-based royalty payment in the dutiable value. *Id.* ¶¶38, 46-47. This action ensued for this Court to determine the non-dubitability of Glock's royalty payment.

## II.     DISCOVERY REQUESTS AND RESPONSES

On March 27, 2024, Glock served the RFPs (**Exhibit A**) and Interrogatories (**Exhibit B**). On April 2, 2024 Glock served the RFAs (**Exhibit C**) (collectively, the "Requests"). The Requests are very limited – with just 24 requests in the RFPs, 18 Interrogatories, and 11 RFAs – seeking specific information indisputably and directly relevant to Glock's claims and the Defendant's anticipated defenses, and are specifically derived from Glock's interactions with CBP over the past six-plus years. *See generally* Requests. Additionally, the RFAs are narrowly tailored and served

early in this litigation for purposes of streamlining discovery by establishing matters for which there can be no reasonable dispute.

Unfortunately, Glock's efforts to streamline and obtain discovery have been met by Defendant's hostility and flouting of its discovery obligations. Defendant's responses to the RFPs ("RFP Responses," **Exhibit D**) and "answers" to the Interrogatories ("Interrogatories Responses," **Exhibit E**) were not timely served. After it missed the response deadline, Defendant requested – and Glock granted – an after-the-fact extension of time to respond, but with the explicit caveat that Defendant waived any objections to the Interrogatories pursuant to USCIT Rule 33(b)(4). Email Chain dated May 15, 2024 (**Exhibit F**).[1] Nonetheless, each of the Responses – including the Defendant's responses to the RFAs ("RFA Responses," **Exhibit G**) – are littered with boilerplate, baseless and improper objections, replete with evasive commentary, fail to provide substantive information, and devoid of any document production whatsoever.

## III.   GLOCK'S MEET AND CONFER EFFORTS

Prior to filing the Motion, Glock endeavored to meet and confer with Defendant concerning the Responses but has been stonewalled in its efforts. After receiving Defendant's deficient RFA Responses, Glock sent Defendant a letter on May 9, 2024 detailing the deficiencies (the "May 9

---

[1] Defendant also waived its objections to the RFPs by failing to timely respond (including with an additional five days for mailing). *See* USCIT Rule 34(b) ("party to whom the request is directed must respond in writing within 30 days"; "response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons"); *see also Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) ("If a party fails to file timely objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests."). But in an effort to meet and confer and to show good faith, Glock only highlighted Defendant's waiver of objections to the Interrogatories due to the express language of USCIT Rule 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). Nonetheless, as set forth herein, Glock's reasonableness was met with Defendant using that opportunity to assert baseless objections to the RFPs.

Letter", (**Exhibit H**)). Rather than accepting Glock's repeated requests for a conference, Defendant insisted on providing a written response to the May 9 Letter. (**Exhibit F**). On May 20, 2024, Defendant provided a letter in response to Glock's May 9 Letter (the "May 20 Letter", **Exhibit I**) wherein it essentially confirmed that Defendant stood on nearly every one of its deficient responses.

The parties subsequently engaged in a lengthy meet-and-confer conference on May 31, 2024, however Defendant was unwilling to confirm a final position on any of the topics discussed. Glock followed the May 31 conference with two letters to the Defendant dated June 4, 2024 (the "June 4 Letters"): one addressing the Defendant's positions on the RFA Responses (**Exhibit J**); and the other addressing the Defendant's positions on and detailing the severe deficiencies with the RFP Responses and the Interrogatories Responses (**Exhibit K**). Defendant subsequently notified Glock that it was purportedly continuing to review the June 4 Letters, but it has still not amended its Responses, produced any documents, identified any Responses that it intends to amend, or even stated when any amended Responses or documents would be forthcoming. *See* Email Chains dated June 10, 2024 and June 12, 2024, collectively attached as **Exhibit L**.

## ARGUMENT

Defendant has continuously dodged its discovery obligations, provided next to no information and produced no documents, leaving Glock with no choice but to seek the Court's intervention.

## I.    THE COURT SHOULD DEEM EACH RFA ADMITTED.

USCIT Rule 36(a)(6) provides,

> "The requesting party may move to determine the sufficiency of an answer or objections. Unless the court finds an objection justified, it must order that an answer be served.  On finding that an answer does

not comply with this rule, the court may order either that the matter
is admitted or that an amended answer be served."

*See also Sigma-Tau HealthScience, Inc. v. United States*, 32 F. Supp. 3d 1355, 1356 (Ct. Int'l Trade

2014) ("[o]n finding that an answer does not comply with this rule, the court may order either that

the matter is admitted or that an amended answer be served").

Here, as set forth in more detail in Glock's May 9 Letter (**Exhibit H**) and June 4 Letter

pertaining to the RFAs (**Exhibit K**), Defendant's RFA Responses are woefully deficient. For

example, among other issues detailed in the May 9 Letter and June 4 Letter, the RFA Responses

include the following baseless objections that Defendant asserted to nearly every request:

- Defendant objected to all RFAs except RFA 9 on the ground that each Request "is improper, as it is a pure legal conclusion or legal issue" and "does not involve the application of law to fact or facts." (**Exhibit F** at 1-4). Defendant's reliance on USCIT Rule 36(a)(1) for that objection is plainly incorrect. The Rule specifically provides that "[a] party may serve on any other party a written request to admit . . . the truth of any matters . . . relating to . . . facts, the application of law to facts, or opinions about either." USCIT Rule 36(a)(1)(A). Each RFA properly asks Defendant to admit certain matters concerning the application of law and Defendant's opinions related thereto. *See, e.g., Bos. v. ClubCorp USA, Inc.*, 2019 WL 1873293, at *4 (C.D. Cal. Mar. 11, 2019) (question about whether defendant met the definition of a "debt collector" under a certain, undisputed statute was a question of law and fact that could be answered); *Watterson v. Garfield Beach CVS LLC*, 2015 WL 2156857, at *4 (N.D. Cal. May 7, 2015) (question about whether a rewards program was a "wellness program" under a statute properly sought answer applying law to facts).

- Defendant objected to all RFAs except RFA 1 on the ground that certain "terms" are "undefined, vague, and ambiguous." (**Exhibit F** at 2-4). As set forth throughout the May 9 Letter, the allegedly objectionable terms have common, well-understood meanings. Indeed, these terms are frequently used by the Defendant, and many are even defined in federal law. USCIT Rule 36(a)(4) outlines the basic requirements for answers to requests for admissions, and it requires the answering party to "specifically deny," "fairly respond to the substance of the matter," and in "good faith" qualify its answers. Defendant simply has no basis to claim that there is any ambiguity regarding the terms used in the RFAs, and its baseless objections are without justification.

- Defendant also refused to answer RFAs because it, shockingly, claimed that RFAs are improper unless they specifically reference information contained in a

document or deposition that took place in discovery. (**Exhibit K** at 3). Unsurprisingly, Defendant has provided no legal authority for this novel position, which has no support in USCIT Rule 36(a)(4) or elsewhere. Moreover, objections based on the ongoing status of discovery, the lack of full document productions and/or depositions are improper and routinely rejected. *See, e.g., Carolina Cas. Ins. Co. v. Oahu Air Conditioning Service, Inc.*, No. 2:13–cv–01378–WBS–AC, 2014 WL 4661979, at *6 (E.D. Cal. Sept. 17, 2014). (ruling that a responding party's reliance "on the ongoing status of discovery, is insufficient" and directing the respondent to "respond by either admitting or denying [the] request…or stating in detail why it cannot truthfully admit or deny it.").

Defendant's frivolous objections and deficient responses to the RFAs reflect its complete disdain for Glock's entitlement to discovery and frustrates a critical purpose and proper use of Requests for Admissions, namely, to narrow the scope of disputed issues and streamline discovery. These deficiencies have been exacerbated by Defendant's failure to genuinely engage in meaningful efforts to resolve this discovery dispute through the meet and confer process. Indeed, Glock provided definitions for terms that Defendant claims it does not understand – including readily understood terms like "Generally Accepted Accounting Principles," "royalty payment," "obligates," "product," etc. – but Defendant still refused to answer the RFAs because definitions of these commonly understood and routinely used terms were not set forth in the RFAs when they were originally served. (**Exhibit K** at 2). Such baseless tactics, if valid, would mean that no litigant would ever be required to respond to any Request for Admissions because they could simply claim that they did not understand a term and, thus, have no obligation to respond.

Multiple courts have flatly rejected the Defendant's position on a purported need to define basic terms in a Request for Admissions. *See*, *e.g.*, *Brown v. McKinley Mall, LLC*, No. 15-CV-1044G(F), 2017 WL 2332330, at *4 (W.D.N.Y. May 30, 2017) (overruling a defendant's objection and holding that it "can readily ascertain the legal meaning of the terms used by Plaintiff's Requests to Admit in formulating [its] answers"); *S.E.C. v. Goldstone*, 300 F.R.D. 505, 528 (D. NM 2014) (overruling the defendant's objection based on its use of the terms in its own internal

communications);  *O. L. v. City of El Monte*, No. 2:20-cv-00797-RGK (JDEx), 2021 WL 926105, at *10 (C.D. Cal. Jan. 11, 2021) (overruling the answering party's objection to the term "evidence" because it is "understandable using common sense and ordinary definitions of terms."); *Deakins v. Pack*, No. 1:10–1396, 2012 WL 242859, at *29 (S.D. W. VA. Jan. 25, 2012) (overruling the answering party's objection based on the propounding party's failure to define the phrase "as a result of your interaction" and holding that the objection was "without merit" and instructing the answering party to "exercise reason and common sense to attribute an ordinary definition to the phrase.").

Nothing in the law allows Defendant to engage in such actions, which are indicative of Defendant's overall approach to hindering discovery in this matter. Thus, the Court should order, in accordance with USCIT Rule 36(a)(6), that Defendant has admitted each of the RFAs. *See, e.g.*, *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Comm'rs*, No. 4:10-CV-2163 CEJ, 2011 WL 6347901, at *2 (E.D. Mo. Dec. 19, 2011) ("Under the circumstances outlined above, the Court sees no basis for believing that amended answers would prove to be adequate and so the Court will order plaintiff's requests Nos. 1 through 13, 18, and 19 admitted. The Court will also require defendants to pay the reasonable expenses incurred by plaintiff in bringing the motion.").

## II.    THE COURT SHOULD ORDER THAT DEFENDANT HAS WAIVED ANY OBJECTION TO THE INTERROGATORIES.

This Court's rules required Defendant to assert its objections to Glock's Interrogatories, if any, within 30 days. *See* USCIT Rule 33(b) ("responding party must serve its answers and any objections within 30 days after being served with the interrogatories"; "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure"). Here, Glock served the Interrogatories on March 27, 2024 (**Exhibit B**), and Defendant failed to respond by the deadline of May 1, 2024, which includes an additional five days for mailing. Defendant only

sought an extension of time to respond *after* missing the May 1 deadline. Glock granted an after-the-fact extension for the Interrogatories Responses, however it did so with the explicit understanding that Defendant's objections to the Interrogatories were "waived pursuant to USCIT Rule 33(b)(4)." (**Exhibit F**). Significantly, Defendant never disputed the timing of its belated request for an extension, nor did it in any way profess to have good cause for its delay. Furthermore, Defendant did not object to or even comment on Glock's invocation of waiver pursuant to USCIT Rule 33(b)(4). Accordingly, this Court should order that Defendant's objections to the Interrogatories are stricken, with the exception of attorney-client privilege, which Glock does not seek to pierce at this time. *See, e.g.*, *Adkison v. Marshall & Ziolkowski Enterprises, LLC*, No. CV 07-4739(JS)WDW, 2008 WL 1924919, at *1 (E.D.N.Y. Apr. 29, 2008) ("[i]n cases where, as here, no good cause has been shown, a finding of waiver is appropriate"; "[a]ny other result would ignore the time limits set forth in the [Rules], contribute further to the delay in resolving cases, and transform [the Rules] from a structure of well-defined rights and obligations to a system of suggested, but non-binding, guidelines"); *Rhymer v. Kmart Corp.*, No. 2003-CV-0081, 2008 WL 2810483, at *1 (D.V.I. July 21, 2008) ("law is well settled that a party's failure to object to interrogatories within thirty (30) days of service thereof is considered a waiver of any objections they might have had").

## III.    THE COURT SHOULD OVERRULE DEFENDANT'S OBJECTIONS TO THE RFPS AND INTERROGATORIES AND ORDER DEFENDANT TO RESPOND.

As set forth in detail in Glock's June 4 Letter addressing the substance – or lack thereof – of the RFP Responses and Interrogatories Responses (**Exhibit K**), Defendant's Responses are filled with frivolous objections that serve no purpose but to bring discovery to a halt. The following are just some examples of the deficiencies set forth in the June 4 Letter that showcase Defendant's meritless positions:

- In response to numerous RFP requests and Interrogatories, Defendant objected to the production of material that is purportedly "available to Plaintiff and/or to the public." At the outset, Defendant cannot merely assume that the documents or information that it has are identical to material that might possibly, but may not necessarily, be available elsewhere. Moreover, merely because a document or information may be publicly available or may also be otherwise available to a plaintiff does not alleviate a defendant from its obligation to produce all documents within its possession, custody, or control. *See, e.g.*, *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223–24 (D.D.C. 2015) ("The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility. A limitation of this nature would lead to patently absurd consequences. Indeed, it would require litigants to scour the public domain for nuggets of information that their adversaries could potentially use against them—a task that is as Herculean as it is nonsensical. Litigation is not, nor has it ever been, an elaborate parlor game of 'blind man's buff.'"); *Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015) ("even if a document is publicly available or in the opposing party's possession, a party must still disclose it").

- Defendant objected to numerous RFPs and Interrogatories on the basis that they seek material "not related to the claims in the Complaint" or are "irrelevant." Each RFP request and Interrogatory plainly seeks material at issue in this lawsuit, as detailed in the June 4 Letter (**Exhibit K**). Moreover, the standard for what discovery a party may seek is broader than that for admissibility at trial, and Defendant's refusal to provide requested discovery on the basis of relevance defies credulity. *See, e.g.*, *FDK Am., Inc. v. United States*, 973 F. Supp. 2d 1315, 1318 (Ct. Int'l Trade 2014) ("Relevancy in discovery is to be construed broadly . . . ."); *United Food & Com. Workers Union v. Chesapeake Energy Corp.*, No. CIV-09-1114-D, 2012 WL 32910, at *3 (W.D. Okla. Jan. 6, 2012) ("standard for determining whether information is relevant for purposes of pretrial discovery is substantially broader than the standard for relevance during trial").

- For certain RFPs the Defendant represented that it "continues to search for responsive documents," however it has not provided a timeframe for completing such search and no documents have been produced to-date.

- RFP requests 8 through 15 seek email communications from specific email accounts of eight identified CBP personnel, each of whom are known to have addressed matters pertaining specifically to Glock and the valuation of its import entries. The scope of the requests are appropriately limited to information specifically concerning Glock, yet despite the simplicity of these requests Defendant has objected and refused to produce responsive communications. Defendant cites proportionality as a basis for its objection, however claiming that emails related to the plaintiff in this action from persons involved in CBP's review of the valuation issues in dispute "is not proportional to the needs of this case" lacks any support in the law and cannot pass muster under any form of common sense.

In addition to striking Defendant's objections to the Interrogatories for having been waived as untimely, the Court should further overrule the substance of Defendant's objections to the RFPs and Interrogatories as they merely serve to continue Defendant's evasiveness, behind which it endeavors to hide the information and documents to which Glock is justly entitled. And the Court should order that Defendant must respond to each RFP request and Interrogatory, without objection other than as to attorney-client privilege, by a date certain. *See*, *e.g.*, *Adkison*, 2008 WL 1924919, at *1 ("Defendants shall comply with all outstanding discovery by May 5, 2008"); *Rhymer*, 2008 WL 2810483, at *1 ("[w]ithin ten (10) days from the date of entry of this order, Defendant shall serve upon counsel for Plaintiff responses to Plaintiff's Interrogatories and Demand For Production of Documents"; *Krewson*, 120 F.R.D. at 7 ("defendant . . . shall permit inspection and allow copying of all documents requested").

## IV.    THE COURT SHOULD AWARD GLOCK ITS ATTORNEYS FEES AND EXPENSES.

As set forth above, Defendant has engaged in an intentional and obvious plan to frustrate discovery, deprive Glock of its right to information, and force Glock to spend time and effort chasing Defendant through these games.  Defendant should face consequences for its choices to engage in discovery in this manner.

Indeed, the USCIT Rules not only allow, but require, that this Court award Glock its attorneys fees and expenses in connection with the Motion, if the Court finds in Glock's favor on the discovery issues.  *See* USCIT 37(a)(2)(B), (a)(4)(A) (in connection with motion for "order compelling an answer" or "production" for "fail[ure] to answer an interrogatory" or "fail[ure] to produce documents," "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that

conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including

attorney's fees") (emphasis added); *see also* USCIT Rule 36(a)(6) (for RFAs, "Rule 37(a)(4)

applies to an award of expenses"). The Court should issue such an award to Glock. *See*, *e.g.*,

*Travelers Indem. Co. of Connecticut v. Walking U Ranch, LLC*, No. 218CV02482CASGJS, 2022

WL 1601388, at *3 (C.D. Cal. Jan. 11, 2022) ("Court awards Travelers fees in the amount of

$2,455.50"); *Chang v. Jenny Jn Nails, Inc.*, No. 3:19CV2024(AVC), 2021 WL 6340170, at *1 (D.

Conn. Sept. 30, 2021) ("court concludes that the rate of $450 per hour shall be used in calculating

counsel's fee for filing the within motion"; "with a total of 4.17 hours of work on the motion,

counsel is entitled to an award of $1,876.50, for the defendants' failure to respond to the requested

discovery"); *Oklahoma Genetics, Inc. v. Kelley*, No. 17-CV-01275-JTM-GEB, 2018 WL

10501633, at *2 (D. Kan. Oct. 16, 2018) ("Plaintiff's request, per Rule 37(a)(5), for $2,924.50 in

attorneys' fees is granted").

## CONCLUSION

WHEREFORE, Plaintiff Glock, Inc. respectfully requests that this Court enter the attached

proposed order and grant such other and further relief as the Court deems appropriate and just.

Dated: White Plains, New York
       June 20, 2024

Respectfully submitted,

**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, New York 10601
Telephone: (914) 285-0700

By: /s/ Peter V. Malfa
    JOHN F. RENZULLI
    PETER V. MALFA

    -and-

**SANDLER, TRAVIS & ROSENBERG, P.A.**
JASON M. KENNER
675 Third Avenue, Suite 1805-06
New York, New York 10017
Telephone: (212) 549-0137

*Attorneys for Plaintiff*