## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 23-00046 |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT IN PLAINTIFF'S FAVOR</u>

Dated: White Plains, New York
      July 3, 2024

<div style="margin-left:40%">

**RENZULLI LAW FIRM, LLP**
JOHN F. RENZULLI
PETER V. MALFA
One North Broadway, Suite 1005
White Plains, New York 10601
Telephone: (914) 285-0700

-and-

**SANDLER, TRAVIS & ROSENBERG, P.A.**
JASON M. KENNER
675 Third Avenue, Suite 1805-06
New York, New York 10017
Telephone: (212) 549-0137

*Attorneys for Plaintiff*

</div>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 2

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 3

   I.   THE LAWSUIT.............................................................................................................. 3

   II.   LIQUIDATION OF THE SUBJECT ENTRY .................................................................. 4

   IV.  GLOCK'S COUNTERPROPOSAL, WHICH GLOCK ORIGINALLY OFFERED BEFORE FILING THE COMLAINT, WOULD RESOLVE THIS DISPUTE. ........................ 7

ARGUMENT ....................................................................................................................... 8

   I.   THE MOTION FOR JUDGMENT IS UNTIMELY. ........................................................ 8

   II.   GLOCK'S CLAIMS ARE NOT MOOT BECAUSE THE ISSUES ARE CAPABLE OF REPETITION WHILE AVOIDING REVIEW AND ONLY HAVE BEEN IMPACTED HERE BY THE GOVERNMENT'S VOLUNTARY CESSATION GAMESMANSHIP......... 9

   III.  THE GOVERNMENT'S POSITION WOULD RESULT IN AN ABSURD OUTCOME INCONSISENT WITH JUSTICE, FAIRNESS, AND THIS COURT'S RULES. .................. 13

   IV.  THE COURT SHOULD AWARD GLOCK ITS ATTORNEYS' FEES AND COSTS. 15

CONCLUSION.................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*3V, Inc. v. United States*,
  23 C.I.T. 1047 (1999) ............................................................................................... 9

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937) ................................................................................................. 9

*Allstates Trading & Clothing Co. v. United States*,
  30 C.I.T. 1914 (2006) .......................................................................................... 9, 12

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ............................................................................................... 15

*Associacao Dos Industriais de Cordoaria E Redes v. United States*,
  828 F. Supp. 978 (Ct. Int'l Trade 1993) .............................................................. 11, 13

*Atlantic Richfield Co. v. United States Dep't of Energy*,
  769 F.2d 771 (D.C. Cir. 1984) ............................................................................... 11

*Atteberry v. United States*,
  31 C.I.T. 133 (2007) ............................................................................................... 11

*Avenues In Leather, Inc. v. United States*,
  317 F.3d 1399 (Fed. Cir. 2003) .............................................................................. 12

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................................. 15

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ............................................................................................... 10

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................................. 9

*Del Monte Fresh Produce Co. v. United States*,
  570 F.3d 316 (D.C. Cir. 2009) ............................................................................... 10

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
  445 U.S. 326 (1980) ................................................................................................. 9

*Former Emps. of Bass Enters. Prod. Co. v. United States*,
  13 C.I.T. 372 (1989) ............................................................................................... 16

# TABLE OF AUTHORITIES

(continued)

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)......................................................................................................11

*Heartland By-Prod., Inc. v. United States*,
  568 F.3d 1360 (Fed. Cir. 2009).................................................................................11, 13

*Iron Arrow Honor Society v. Heckler*,
  464 U.S. 67 (1983)...................................................................................................... 13

*Jarvis Clark Co. v. United States*,
  733 F.2d 873 (Fed. Cir. 1984)..................................................................................... 14

*Lehmann v. S/V THALIA*,
  520 F. Supp. 3d 146 (D.R.I. 2021)................................................................................ 8

*Loper Bright Enterprises v. Raimondo*,
  No. 22-451, 603 U.S. __, slip op. (Jun. 28, 2024) ..................................................... 14

*Mitchco Int'l., Inc. v. United States*,
  26 F.4th 1373 (Fed. Cir. 2022)..................................................................................... 9

*Moore v. Ogilvie*,
  394 U.S. 814 (1969)..................................................................................................... 10

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999)..................................................................................................... 10

*People of State of California v. San Pablo & T.R. Co.*,
  149 U.S. 308 (1893)..................................................................................................... 10

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752 (1980)..................................................................................................... 15

*Sea Shepherd New Zealand v. United States*,
  639 F. Supp. 3d 1367 (Ct. Int'l Trade 2023)............................................................... 9

*Shah Bros. v. United States*,
  9 F. Supp. 3d 1402 (Ct. Int'l Trade 2014)................................................................... 12

*St. Pierre v. United States*,
  319 U.S. 41 (1943).................................................................................................... 13

## TABLE OF AUTHORITIES
(continued)

*Star Pipe Prod. v. United States*,
   393 F. Supp. 3d 1200 (Ct. Int'l Trade 2019) ...................................................................... 10, 13

*Tianjin Magnesium Int'l Co. v. United States*,
   37 C.I.T. 562 (2013), *on reconsideration*, 36 I.T.R.D. 536 (Ct. Int'l Trade 2014) ................... 15

*United States v. Stone & Downer Co.*,
   274 U.S. 225 (1927) ........................................................................................................ 12

*United States v. Zucca & Co.*,
   11 U.S. Cust. App. 167 (Ct. Cust. App. 1921) ............................................................... 12

**Statutes**

18 U.S.C. § 543 ...................................................................................................................... 15

19 U.S.C. § 1401 ..................................................................................................................... 2

19 U.S.C. § 1514 ..................................................................................................................... 1

**Rules**

USCIT Rule 1 ..................................................................................................................... 13, 14

USCIT Rule 12 ......................................................................................................................... 8

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 23-00046 |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

Plaintiff GLOCK, Inc. ("Glock") hereby submits its opposition to the motion of Defendant United States (the "Government") for entry of judgment in Glock's favor (Doc. 21) (the "Motion for Judgment"). The Motion for Judgment is nothing other than a blatant attempt by the Government to evade this Court's ruling on the merits of Glock's claims and unreasonably protract both these proceedings and U.S. Customs and Border Protection's ("CBP") application of its erroneous and substantially unjustified position on the valuation of Glock's imported merchandise.

The Government's disregard for justice by now seeking to avoid finality of its dispute with Glock flies in the face of CBP's pre-litigation agreement to liquidate the subject entry specifically for purposes of having this Court determine the dutiability of Glock's royalty payments pursuant to 19 U.S.C. § 1514(a)(2). The Government's novel effort to moot this action at this venture through a self-serving voluntary cessation of its disputed valuation of merely one import entry – indeed, one entry out of thousands that Glock makes each year – is baseless as doing so would in no way secure the just, speedy, and inexpensive determination of the issues in dispute. Moreover, as the Government's motion itself concedes, CBP's erroneous and unjustified valuation of Glock's imported merchandise is unquestionably capable of repetition and will clearly evade review but-for Glock's filing and seeking judicial review of literally thousands of protests. This Court's determination of the dutiability of Glock's royalty payments is necessary and warranted now, and

the Court should award Glock its reasonable attorneys' fees and costs for having to oppose the Government's frivolous motion.

## **INTRODUCTION**

Glock manufactures certain models of GLOCK pistols from domestically manufactured components and assembles certain other models of GLOCK pistols from foreign manufactured pistol component parts that it imports from GLOCK Ges.m.b.H. in Austria. Pursuant to a licensing agreement, Glock pays royalties to another Austrian entity for the right to use certain trademarks in connection with its subsequent sale of those products. The amount of the royalties is based on a percentage of Glock's net sales of products. Because the pistol component parts that Glock imports are not sold in their condition as imported, the component parts are appraised under 19 U.S.C. § 1401a(d)(2)(A)(iii), which provides for the deductive value of imported merchandise after assembly in the United States.

This action concerns the deduction and non-dutiability of Glock's sales-based royalty payments. After six-plus years of Glock continuously trying to resolve this dispute in a reasonable and fair manner through the protracted administrative procedures, CBP refused to accept Glock's accounting of its royalty payments as a "general expense" under 19 U.S.C. § 1401a(d)(3)(A)(i) notwithstanding Glock's compliance with U.S. Generally Accepted Accounting Principles ("GAAP"). Consequently, the very straightforward issue for this Court to decide is whether the trademark-related royalty payments that Glock makes for its net sales of products assembled in the United States from parts manufactured overseas constitutes a general expense that is properly deducted from the dutiable value of imported component parts.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     THE LAWSUIT

On January 16, 2024, after the more than six years of attempting to resolve this matter through administrative processes, Glock commenced this lawsuit to challenge the valuation of an import entry that was filed at the Port of Atlanta, Georgia on November 10, 2021, and liquidated on October 21, 2022 (the "Entry"). *Compl.* (Doc. 7) ¶3. The merchandise covered by the Entry consists of a Kit containing various component parts necessary to assemble twenty (20) finished/complete GLOCK Model 19RM FXD training pistols. *Id.* ¶¶11-12. Glock assembled the training pistols using component parts from the Entry at its facility in Smyrna, Georgia and then sold the completed training pistols to the United States Postal Inspection Service in Potomac, Maryland. *Id.* ¶¶14-15.

All GLOCK pistols, including the training pistols assembled from the parts in the Entry, bear a distinctive GLOCK logo and embody the unique and readily identifiable overall appearance of a GLOCK pistol, both of which are protected by trademarks registered with the U.S. Patent and Trademark Office. *Compl.* ¶16. In exchange for the exclusive rights to the commercial use of the GLOCK trademarks in the United States, Glock pays royalties to the owner of the trademarks pursuant to the licensing agreement. *Id.* ¶¶19-21. The amount of royalties that Glock owes is based on its "net sales" of licensed products, which includes all models of GLOCK pistols, "following its sale of licensed products in the United States." *Id.* ¶¶21-23. "Net sales" of licensed products is determined after licensed products are sold and specific sums are calculated and deducted, including trade discounts, credits based on returns of licensed products, freight expenses, and federal firearm excise taxes. *Id.* ¶24.

On or about June 24, 2021, CBP issued HQ H304606, attached as **Exhibit A**, wherein it rejected Glock's cost valuation methodology and determined that Glock's royalty payments are

dutiable because CBP somehow believes the royalties constitute a cost of production. *Compl.* ¶¶28, 44-45. In accordance with HQ H304606,[1] Glock added the royalty to the dutiable value, after which CBP liquidated the Entry without a deduction in value for the royalty payment. *Id.* ¶¶29-30. Glock then protested the liquidation of the Entry, which was deemed denied by operation of law. *Id.* ¶¶4-5. CBP's appraisement of the Entry was erroneous because there is no legal basis to include Glock's sales-based royalty payment in the dutiable value. *Id.* ¶¶38, 46-47. HQ H304606 was wrongly decided, and it instructs CBP personnel to unlawfully include Glock's royalty payment in the dutiable value of its imported merchandise. Consequently, this action ensued for this Court to determine the non-dubitability of Glock's royalty payment.

## II.    LIQUIDATION OF THE SUBJECT ENTRY

After nearly a year of inaction by CBP following issuance of HQ H304606, the subject Entry was liquidated without a deduction in value for the royalty payment pursuant to a Post Summary Correction that Glock filed with the port of entry on July 28, 2022 (the "PSC"). The PSC was accompanied by a letter from Glock's outside Customs' counsel to CBP ("Glock's July 28 PSC Letter") that requested an immediate liquidation "to accelerate the judicial review by the U.S. Court of International Trade ("CIT") of the decision issued in HQ H304606 on June 24, 2021." Glock's July 28 PSC Letter, attached as **Exhibit C**. Glock's July 28 PSC Letter explained to CBP that the royalty amount was not deducted from the value stated in the PSC because "[t]he

---

[1] The Government falsely represents to this Court that HQ H304606 does not address "the disputed valuation issues" in this case because "that ruling letter analyzed a different (2011) licensing agreement." Motion for Judgment (Doc. 21) at 4-5 n.6. Defendant's misleading statement to this Court is particularly perplexing given that Glock has repeatedly made clear that HQ H304606 is directly at issue on this point because, as Glock most recently explained again in its June 4, 2024 letter to the Government, attached as **Exhibit B**, "the scope and application of the license agreement at issue in HQ H304606 is the same in all material respects as the current license agreement, and that the current version merely clarifies the terms that have always existed." Exhibit B at 5.

inclusion of the royalty amount as part of the deduction for profit and general expenses of the sale of the imported pistols is the primary valuation issue in the HQ ruling." *Id.* at 1. It further explained to CBP that:

> "It is in everyone's interest that the royalty issue be put before the CIT as soon as possible. Therefore, we respectfully request that CBP apply the corrections made by this PSC and liquidate the subject entry. Glock will thereafter file a protest, request expedited treatment and file a summons in the CIT." *Id.*

CBP acted in response to Glock's July 28 PSC Letter – with full knowledge and agreement to have this Court resolve the valuation issues in dispute in this action – by liquidating the Entry.

Despite the simplicity of the issues and the six-plus years that Glock has engaged with CBP, the Government has remained steadfast in refusing to acknowledge that Glock's royalty payments are appropriately accounted for, in accordance with GAAP, as a general expense deductible from the dutiable value of its imported merchandise. Now, despite CBP's liquidation of the Entry to facilitate this Court's determination of the deductibility of Glock's royalty payments, the Government wishes to reverse course by attempting to invoke this Court's equitable powers to force reliquidation, moot Glock's claims, and make Glock start the "administrative process" all over. Motion for Judgment (Doc. 21) at 5 n.6. Specifically, the Government's Motion for Judgment asks the Court to approve the Government paying Glock "less than $50," plus interest. Doc. 21 at 3. The Government omits, however, that CBP liquidated the Entry purposefully in response to Glock's request to create what could only be considered a *de facto* test case for this Court to adjudicate the merits of the overarching controversy decided by HQ H304606.

Furthermore, the timing and circumstances of the Motion for Judgment are objectively suspect and expose the Government's underlying intent to evade its discovery obligations. Not only does the Motion for Judgment come on the heels of the parties' meet-and-confer correspondence concerning the Government's severely deficient discovery responses (*see, e.g.,*

Glock's Motion to Compel, Doc. 18 at 5-6), but it coincides with the Government's representations to this Court that it was:

> "having internal discussions that may affect broader trajectory of the case, and we want to avoid a circumstance of the Court or the parties expending resources unnecessarily."

DOJ Counsel Email to USCIT Case Manager, dated June 13, 2024, attached as **Exhibit D**.

The Government's "internal discussions" presumably focused on – and clearly resulted in – anything *other than* avoiding the unnecessary expenditure of resources. Despite Glock devoting substantial resources to expeditiously pursue discovery,[2] attempt to negotiate a joint protective order, and confer with the Government on discovery it promised would be forthcoming (but has continuously failed to produce), the Government appears to have realized it is losing this litigation and rather than resolve on the merits, it would simply opt for a dismissal. The Motion for Judgment exposes the Government's attempt at a "bait-and-switch" to evade responsibility for its own mistakes and wrongdoing, and it is premised entirely upon unsupportable legal arguments and inapposite case law.

This lawsuit happened solely because the Government refused Glock's pre-suit efforts to amicably and reasonably resolve this matter. Granting the Motion for Judgment would result in the absurd outcome that Glock will have been forced to waste time and effort litigating this case, at the Government's insistence, without any answer to the real question at hand, only to have to start the entire administrative and judicial processes all over with an endless number of individual

---

[2] Additionally, Glock requested that the Government serve its affirmative discovery requests, to which Glock would be happy to produce information, which Glock firmly believes would expedite the resolution of this matter. Again showcasing the Government's disregard for its obligations in this matter and the merits of this case, it has not bothered to serve a single discovery request.

import entries. Glock and CBP both deserve, and are entitled to, a final answer. The Court should deny the Motion for Judgment.

## IV.    GLOCK'S COUNTERPROPOSAL, WHICH GLOCK ORIGINALLY OFFERED BEFORE FILING THE COMLAINT, WOULD RESOLVE THIS DISPUTE.

The Government contends that it "attempt[ed] to conclude this matter" by providing its "proposed stipulation to dispose of this case." Motion for Judgment (Doc. 21) at 3. However, the Government's proposed stipulation failed to address the parties' controversy and, as such, Glock responded with a counterproposal. *Id.* at 2. Glock's counterproposal, attached as **Exhibit E,** included reasonable terms that were intended to – and would – resolve the entire controversy. Glock's counterproposal contains simple additions of language to fully address and resolve the issues in dispute, including:

> 2.    Glock, Inc. accounts for its royalty payments to VALUE Privatstiftung as a general expense pursuant to and in accordance with U.S. Generally Accepted Accounting Principles ("GAAP").
>
> 3.  Glock, Inc.'s royalty payments to VALUE Privatstiftung for its sale of GLOCK pistols assembled in the United States from pistol component part kits that are imported from GLOCK Ges.m.b.H. constitute a "general expense" under Section 1401a(d)(3)(A)(i).
>
> 4.  Glock, Inc.'s royalty payments to VALUE Privatstiftung for its sale of GLOCK pistols assembled in the United States from pistol component part kits that are imported from GLOCK Ges.m.b.H. are properly deducted from the dutiable value of the merchandise that Glock, Inc. imports from GLOCK Ges.m.b.H.
>
> . . .
>
> 7.  Glock, Inc. accounted for the royalty payment associated with The Entry as a general expense pursuant to and in accordance with GAAP, and said payment is properly deducted from the dutiable value of The Entry.

Exhibit E at 1-2.

The Government's proposal failed to provide any assurance of finality whatsoever, and appears to have no purpose other than to leave open its ability to relitigate this issue over and over again, anytime that it so desires. Not only do the Government's proposed terms cause Glock to endure substantial uncertainty, but they also reflect an intent to cause Glock – and ultimately the Court – to expend significant time and resources to have the same issues addressed again in connection with Glock's other import entries. If the Government truly wants to resolve this dispute it need only accept Glock's counterproposal, which will provide both finality in accordance with CBP's statutory mandates and a fair and just outcome for all parties.

## ARGUMENT

The Motion for Judgment is just the Government's latest effort to undercut the proper legal process that Glock has followed to seek justice and a fair result. As set forth below, the Motion for Judgment should be denied because it (i) is untimely, (ii) does not, and would not, moot Glock's claims, and (iii) flies in the face of fairness, justice, and this Court's Rules. The Court should further award Glock its reasonable attorneys' fees and costs in having to oppose the frivolous Motion for Judgment.

## I.    THE MOTION FOR JUDGMENT IS UNTIMELY.

At the outset, the Court should deny the Motion for Judgment as untimely. Rule 12(b) provides that a motion for "lack of subject-matter jurisdiction"[3] "must be made *before* pleading if a responsive pleading is allowed." USCIT Rule 12(a)(2)(b) (emphasis added). Here, the

---

[3] Mootness is an issue of subject-matter jurisdiction. *See*, *e.g.*, *Lehmann v. S/V THALIA*, 520 F. Supp. 3d 146, 149 (D.R.I. 2021) ("For a court to exercise subject matter jurisdiction in any given case, there must be an outstanding, unresolved issue between the parties that the court can resolve. Without such a controversy an action becomes moot.").

Government filed the Motion for Judgment as a dispositive "Motion to Dismiss" on June 27, 2024, *over two (2) months after* it filed its responsive pleading. *See* Answer (Doc. 13).[4]

Accordingly, the Government waived the right to make its Motion for Judgment under the USCIT Rules and, thus, it should be denied as untimely. The Court need go no further, but doing so only solidifies why the Court should deny the Motion for Judgment and ensure that justice takes place in this case.

## II.   GLOCK'S CLAIMS ARE NOT MOOT BECAUSE THE ISSUES ARE CAPABLE OF REPETITION WHILE AVOIDING REVIEW AND ONLY HAVE BEEN IMPACTED HERE BY THE GOVERNMENT'S VOLUNTARY CESSATION GAMESMANSHIP.

"The mootness doctrine is rooted in Article III, section 2 of the Constitution, which 'limits the exercise of the judicial power to 'cases' and 'controversies.''" *Allstates Trading & Clothing Co. v. United States*, 30 C.I.T. 1914, 1919 (2006) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239 (1937)).[5] "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)).[6] But there are several distinctions to this concept, which undermine any claim of mootness here.

---

[4] Not that doing so would excuse the untimeliness of the Motion for Judgment, but the Government's Answer does not even reference mootness or subject-matter jurisdiction. Indeed, the Government concedes that it "*do[es] not contest that the Court has jurisdiction* over this action…" Motion for Judgment (Doc. 21) at n.3 (emphasis added).

[5] Of note, the Government bears the burden of persuading the Court that this case truly is moot. Specifically, "'[t]he party arguing that a case has become moot bears the burden of coming forward with the subsequent events that have produced that alleged result.'" *Sea Shepherd New Zealand v. United States*, 639 F. Supp. 3d 1367, 1376 (Ct. Int'l Trade 2023) (quoting *Mitchco Int'l., Inc. v. United States*, 26 F.4th 1373 (Fed. Cir. 2022)). Additionally, "[m]ootness 'problems often require a highly individualistic, and usually intuitive, appraisal of the facts of each case.'" *Id.*

[6] The cases on which the Government relies are inapposite, and **none involve issues associated with the valuation of imported merchandise**. *See 3V, Inc. v. United States*, 23 C.I.T. 1047, 1050 (1999) (case moot where, unlike here, both "classification applied" and "classification [plaintiff] alleges should have been used . . . is also duty free"); *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 340 (1980) ("District Court's entry of judgment in favor of named plaintiffs

First, there is a clear and well-founded distinction to mootness where there is "'reasonable expectation that the wrong will be repeated.'" *Id.* (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). A significant "exception to the mootness doctrine applies where the claimed wrong is 'capable of repetition, yet evading review.'" *Id.* (quoting *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969)). Courts have held that this is true even when the lawsuit does not "challenge . . . [an] ongoing underlying policy, but merely attacks an isolated agency action," "so long as the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321–22 (D.C. Cir. 2009); *see, e.g., id.* ("challenge by two mental patients to their confinement in a segregated environment was not mooted by their post-complaint transfers because in view of the multiple institutional placements [they had] experienced, the controversy they brought to court [was] capable of repetition, yet evading review") (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999)).

Second, "a defendant's voluntary cessation of a challenged practice does not render an issue moot 'unless subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Star Pipe Prod. v. United States*, 393 F. Supp. 3d 1200, 1217 (Ct. Int'l Trade 2019) (emphasis added), *aff'd*, 981 F.3d 1067 (Fed. Cir. 2020). Further, as particularly relevant here, at least one decision provides that the Government's "voluntary cessation" with respect to a particular challenged entry will not moot a plaintiff's claims concerning that entry unless (i) "there will be no future liquidation of any of [the plaintiff's]

_____

over their objections did *not* moot their private case or controversy . . . .") (emphasis added); *People of State of California v. San Pablo & T.R. Co.*, 149 U.S. 308, 314 (1893) (case moot where, unlike here, "questions or abstract propositions" "cannot affect the result as to the thing in issue in the case before" court).

entries," such as where the plaintiff "has ceased importation"; and (ii) "the government [has] represent[ed] that it will not seek to recover unpaid duties with respect to past entries." *Heartland By-Prod., Inc. v. United States*, 568 F.3d 1360, 1368 (Fed. Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Third, even when a case may appear moot, "[c]ourts have also found review proper when there are grave questions as to the legality of administrative procedures, a strong public interest in early resolution of these questions and an impossibility of administrative solution." *Associacao Dos Industriais de Cordoaria E Redes v. United States*, 828 F. Supp. 978, 984 (Ct. Int'l Trade 1993) (citing *Atlantic Richfield Co. v. United States Dep't of Energy*, 769 F.2d 771, 784 (D.C. Cir. 1984)).

Here, despite the Government's efforts at gamesmanship through its forcing the filing of this action in the first place and now the Motion for Judgment, Glock's claims are not moot. The true issue in dispute in this case is whether the trademark-related royalty payments that Glock makes for its net sales of products assembled and sold in the United States from parts manufactured overseas constitutes a general expense that is properly deducted from the dutiable value of imported component parts. The resolution of this issue impacts not only the Entry, but also Glock's past entries and future entries that involve this same issue, of which there are, and will continue to be, a substantial amount. The resolution of this issue impacts tens of millions of dollars of imported merchandise over thousands of entries per year. Resolving solely the Entry that CBP agreed to liquidate for purposes of facilitating this Court's review of its position on royalty dutiability[7] on procedural gamesmanship grounds without a substantive resolution on the underlying issue

---

[7] *See* Glock's July 28 PSC Letter, Exhibit C, at 1 ("It is in everyone's interest that the royalty issue be put before the CIT as soon as possible….").

unequivocally does not resolve the true controversy at stake in this lawsuit especially where a binding CBP Headquarters ruling exists.

Of particular note, one of the cases[8] that the Government claims warrants that this Court grant the Motion for Judgment actually highlights the exact reason that this Court should not dismiss this case as moot. In *Shah Bros. v. United States*, 9 F. Supp. 3d 1402 (Ct. Int'l Trade 2014), despite the Government having previously "moved for entry of judgment in favor of" the plaintiff in an earlier case by agreeing to refund "excess duties and taxes paid, along with lawful interest," the Government doubled back and forced the plaintiff to relitigate the issue for a subsequent entry. There, the Government "did not similarly confess judgment in" the subsequent case until "nearly four years" after it did so in the prior case. *Id.* at 1405. Because of the Government's egregious positions there – like here – this Court awarded the plaintiff its "fees and costs" incurred in the subsequent action. *See id.* at 1405. Should this Court grant the Motion for Judgment, Glock will be in the same position as the plaintiff in *Shah*, subject to the Government's whim of whether Glock (and the Court) will be forced to incur undue time and expenses in relitigating the very issue that is before, and could be decided now, by this Court.

Thus, despite the Government's efforts to dodge a decision on the merits by claiming mootness, based on the doctrines of issues capable of repetition yet avoiding review, *Allstates*

---

[8] Other cases on which the Government relies are also inapposite for several reasons. One case deals with how a product is "classif[ied]" and whether the classification makes it "duty-free," not, like here, the proper calculation of the dutiable amount of a product. *Atteberry v. United States*, 31 C.I.T. 133, 153 (2007). And other cases that *Atterberry* cites for that proposition are similarly not on point for this case. *See United States v. Stone & Downer Co.*, 274 U.S. 225, 229 (1927) ("classification for duty of thirteen importations of wool in the fleece and in the yarn"); *Avenues In Leather, Inc. v. United States*, 317 F.3d 1399, 1404 (Fed. Cir. 2003) (error for court not "to consider Avenues's evidence" based on prior decision, not addressing issue of mootness). Furthermore, Glock is not contesting that the Government's counsel has legal authority to "confess a judgment" as "authorized and empowered" by the Government, an issue that has nothing to do with mootness. *United States v. Zucca & Co.*, 11 U.S. Cust. App. 167, 172 (Ct. Cust. App. 1921).

*Trading & Clothing*, 30 C.I.T. at 1919, voluntary cessation, *Heartland By-Prod.*, 568 F.3d at 1368,

and public policy, *Associacao Dos Industriais*, 828 F. Supp. at 984, the case clearly is not moot, a

case and controversy remains, a binding CBP Headquarters ruling still exists, and the continuation

of this case would not result in an advisory opinion.[9] Those doctrines were designed to prevent

precisely the efforts in which the Government has engaged through its Motion for Judgment.

Accordingly, the Court should deny the Motion for Judgment.

### III.    THE GOVERNMENT'S POSITION WOULD RESULT IN AN ABSURD OUTCOME INCONSISENT WITH JUSTICE, FAIRNESS, AND THIS COURT'S RULES.

It is no coincidence that the Government filed the Motion for Judgment on June 27, 2024

(Doc. No. 21) – just one (1) week after Glock filed its Motion to Compel (Doc. 18). The

Government's goal – the only purpose of the Motion for Judgment – is to strip away any judicial

determination on the merits of this dispute, or otherwise pertaining to its responsibility for its

actions (or lack thereof) in discovery.

The Government's actions go against the very heart of fairness and justice to which litigants

are entitled before this Court. The USCIT Rules "should be construed, administered, and employed

by the court and the parties to secure the just, speedy, and inexpensive determination of every

---

[9] Despite the Government devoting an entire separate section of the Motion for Judgment to the concept of advisory opinions (Doc. 21 at 4–6), the issues of mootness and advisory opinions are interrelated. *See, e.g., Star Pipe Prod.* 393 F. Supp. at 1217–18 (where decision "would be upon a hypothetical state of facts," "court concludes that this issue is moot and any opinion on retroactivity would be impermissibly advisory"). For the reasons set forth above, the case is not moot, and no decision of this Court would be an advisory opinion because any such decision would "affect the rights of the litigants in the case before it," which is consistent with the cases cited by the Government, which do not undermine this Court's authority to decide this case. *St. Pierre v. United States*, 319 U.S. 41, 42 (1943); *see also Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies").

action and proceeding." USCIT Rule 1. The Motion for Judgment asks the Court to do the very

opposite and is the textbook example of what Rule 1 was designed to prevent.[10]

Rather than allowing the parties to reach a definitive conclusion in a "just, speedy, and

inexpensive" manner, *id.*, the Government seeks to avoid the Court doing so to cover up its failure

to participate in discovery, dodge a decision on the merits, and force Glock to relitigate what should

be a simple and straightforward issue every single time that Glock imports anything, whenever the

Government feels like making Glock do so. The U.S. Supreme Court recently reiterated that such

deference to the whims of an agency is unjust. *See Loper Bright Enterprises v. Raimondo*, No. 22-

451, 603 U.S. __, slip op. at 33 (Jun. 28, 2024) ("allow[ing] agencies to change course . . . fosters

unwarranted instability in the law, leaving those attempting to plan around agency action in an

eternal fog of uncertainty").  To the extent that there is any ambiguity about this Court's continued

authority to hear this case – which, for the reasons set forth above, there is not – fairness and justice

dictate that this Court should deny the Motion for Judgment and allow the parties to reach a

decision on the merits, consistent with the authority, and responsibility, that Congress has bestowed

on this Court to decide the propriety of the issue. *See Jarvis Clark Co. v. United States*, 733 F.2d

873, 874 (Fed. Cir. 1984) ("Court of International Trade is required to decide the correctness not

only of the importer's proposed classification but of the government's classification as well").  As

a result of its exclusive jurisdiction, this Court is the only forum Glock can have its dispute heard

and decided.

Finally, the *correctness* of the dutiable value of the subject Entry, as with all imported

merchandise, should certainly be a concern to the Government and especially personnel employed

---

[10] Unlike the Government, Glock has made every effort to reach a fair and speedy resolution of
this matter, both for the six years leading up to this lawsuit and since the lawsuit was commenced,
but it has only been met by the Government's efforts to put up baseless roadblocks.

by CBP. If the Government does not truly believe that the dutiable amount that would result from the stipulated facts it proposes would actually be correct – which necessarily accepts the correctness of Glock's deduction of its royalty amounts from dutiable value – then any CBP personnel involved in the Government's "internal discussions" which precipitated its decision to file the Motion for Judgment should be mindful of 18 U.S.C. § 543, which proscribes that:

> "Whoever, being an officer of the revenue, knowingly admits to entry, any goods, wares, or merchandise, upon payment of less than the amount of duty legally due, shall be fined under this title or imprisoned not more than two years, or both, and removed from office."

Stated differently, to the extent that CBP personnel truly believe that Glock's royalty payments are not lawfully deductible from the dutiable value of its imported merchandise, it could constitute a felony criminal offence for them to knowingly admit the subject Entry upon the valuation which the Government proposes in its Motion for Judgment. Certainly, this is not what the Government intended, however it is an unfortunate consequence of the games it has decided to play.

## IV.    THE COURT SHOULD AWARD GLOCK ITS ATTORNEYS' FEES AND COSTS.

"'[A]n assessment of attorney's fees is undoubtedly within a court's inherent power.'" *Tianjin Magnesium Int'l Co. v. United States*, 37 C.I.T. 562, 566 (2013), *on reconsideration*, 36 I.T.R.D. 536 (Ct. Int'l Trade 2014) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980))). "[S]uch authority exists despite separate mechanisms for imposing sanctions contained in the United States Code and the Federal Rules of Civil Procedure." *Id.* (citing *Chambers*, 501 U.S. at 45-46). "'[A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'" *Id.* (quoting *Chambers*, 501 U.S. at 45 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–58 (1975))). "The court also retains the discretion to award

costs in appropriate situations." *Id.* (citing *Former Emps. of Bass Enters. Prod. Co. v. United States*, 13 C.I.T. 372, 374 (1989)).

Here, for all of the reasons set forth above, the Motion for Judgment is frivolous, was filed in bad faith, and is an oppressive abuse of the judicial process. The Motion for Judgment is an obvious attempt by the Government to hit the reset button in this litigation because it does not like the way it is going, despite the many years of administrative processes that led to this point. Rather than focusing on the merits of this dispute, the Government has continued its pattern of delay and dodging its responsibility by this latest tactic of filing the Motion for Judgment, which has forced Glock to devote substantial time and resources in opposing it. Accordingly, the Court should order that the Government must pay Glock its reasonable attorneys' fees and costs incurred in opposing the Motion for Judgment.

## CONCLUSION

The ramifications of the Court's ultimate decision on the merits of Glock's claims with respect to the subject Entry – specifically, whether Glock's trademark-related royalty payments are properly deducted from the dutiable value of imported component parts – will transcend the tens of millions of dollars' worth of imported merchandise that Glock imports each year. Consequently, a decision on the merits is the only means to bring finality to the controversy at hand, and the Government's attempt to avoid such a determination should be rejected.

WHEREFORE, Plaintiff GLOCK, Inc. respectfully requests that this Court enter its proposed order denying the Government's Motion for Judgment and awarding Glock its reasonable attorneys' fees and costs, and grant such other and further relief as the Court deems appropriate and just.

Dated:  White Plains, New York
        July 3, 2024

                              Respectfully submitted,

                              **RENZULLI LAW FIRM, LLP**
                              One North Broadway, Suite 1005
                              White Plains, New York 10601
                              Telephone: (914) 285-0700

                              By: _/s/ Peter V. Malfa_____
                                JOHN F. RENZULLI
                                PETER V. MALFA

                                -and-

                              **SANDLER, TRAVIS & ROSENBERG, P.A.**
                              JASON M. KENNER
                              675 Third Avenue, Suite 1805-06
                              New York, New York 10017
                              Telephone: (212) 549-0137

                              *Attorneys for Plaintiff*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                  Defendant. | )<br>)<br>)<br>)   Court No. 23-00046<br>)<br>)<br>)<br>)<br>) |

### [PROPOSED] ORDER CONCERNING DEFENDANT'S MOTION FOR JUDGMENT IN PLAINTIFF'S FAVOR

This Court, having reviewed and considered Defendant's motion, Plaintiff's opposition, and Defendant's reply, if any, as well as all other papers submitted in connection therewith, if any, and the oral argument of counsel, if any;

It is **HEREBY ORDERED AND ADJUDGED** as follows:

(1)     Defendant's motion is denied; and

(2)     Defendant must pay Plaintiff's attorneys' fees and expenses in connection with opposing Defendant's motion, and in connection therewith (i) Plaintiff shall provide the Court with an itemization of such attorneys' fees and expenses within fourteen (14) days of this Order; and (ii) Defendant shall thereafter pay Plaintiff the attorneys' fees and expenses, once approved by the Court, within fourteen (14) days of the Court's approval.

Dated: _____, 2024              _____

                                           HON. JENNIFER CHO-GROVES, JUDGE