UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| GLOCK, INC., | : | |
| | : | |
| Plaintiff, | : | Court No.  23-00046 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **ORDER**

Upon reading defendant's response to plaintiff's motion to deem admitted its requests for admission and compel other discovery responses; upon other papers and proceedings had herein; and upon due deliberation, it is hereby:

**ORDERED** that plaintiff's motion is denied.

_____
JUDGE

Dated:  New York, New York
      This _____ day of _____ , 2024.

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| GLOCK, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 23-00046 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | **NON-CONFIDENTIAL** |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DEEM ADMITTED ITS REQUESTS FOR ADMISSION AND COMPEL OTHER DISCOVERY RESPONSES**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

MARCELLA POWELL
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-9230 or 9236

Of Counsel:
Taylor Bates
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: August 2, 2024

# TABLE OF AUTHORITIES

BACKGROUND ......................................................................................................... 2

I. GLOCK'S PRIOR DISCLOSURE INVOLVING MERCHANDISE IMPORTED
   BETWEEN 2013 AND 2018 ................................................................................ 4

II. HQ H304606 (June 24, 2021) ............................................................................ 6

III. THE 2011 LICENSING AGREEMENT DIFFERS MATERIALLY FROM
    GLOCK'S 2022 LICENSING AGREEMENT ................................................... 9

IV. GLOCK'S DISCOVERY REQUESTS AND THE PARTIES' "MEET AND
    CONFER" EFFORTS ....................................................................................... 10

ARGUMENT ........................................................................................................... 12

I. THE GOVERNMENT'S RESPONSES TO GLOCK'S REQUESTS FOR
   ADMISSIONS ARE JUSTIFIED ...................................................................... 11

   A. Glock's Requests Improperly Seek Admissions On Conclusions Of Law ............... 13

      1. Glock's Request for Admission Nos. 1, 2, and 3 Improperly Seek An
         Admission As To The Content Of A Regulation ........................................... 14

      2. Glock's Request No. 4 Improperly Seeks An Admission On
         The Interpretation of A Statute ................................................................... 15

      3. Glock's Request No. 5 Improperly Seeks An Admission On A Set Of
         Hypothetical Facts ...................................................................................... 16

      4. Glock's Request Nos. 6-8, 10 and 11 Improperly Seek Admissions
         On Conclusions of Law And Do Not Involve The Application of Law
         To Facts ..................................................................................................... 17

      5. Glock's Requests for Admissions Contain Undefined Accounting Terms
         Of Art That Are At The Heart Of This Action ............................................. 18

II. THE GOVERNMENTS RESPONSES TO GLOCK'S REQUESTS FOR PRODUCTION
    ARE JUSTIFIED BECAUSE THE REQUESTS SEEK INFORMATION THAT IS NOT
    RELEVANT AND NOT PROPORTIONATE TO THE NEEDS OF THE CASE .......... 19

   A. Glock's Request No. 7 Improperly Seeks Information Relating
      To HQ H3034606 ........................................................................................ 23

**7**

    B.  Glock's Request Nos. 5, 6, 17, 18, 19, 20, 21, 22, and 23 Seek Information That Is Not Relevant To Glock's Claims And Is Disproportionate To The Needs of The Case ...................................................................................................................... 23

III.    THE GOVERNMENT'S RESPONSES TO GLOCK'S REQUEST NOS. 8-15 ARE JUSTIFIED ............................................................................................................. 26

IV.    THE COURT SHOULD DENY GLOCK'S REQUEST THAT THE GOVERNMENT'S OBJECTIONS TO ITS INTERROGATORIES BE WAIVED ...................................... 26

V.    GLOCK'S REQUEST FOR ATTORNEYS FEES SHOULD BE DENIED ................. 28

CONCLUSION ...................................................................................................................... 29

**TABLE OF CONTENTS**

<u>**Cases**</u>

*Abbott v. United States*,
    177 F.R.D. 92 (N.D.N.Y. 1997) ........................................................................... 15, 16

*Allen v. Eckard*,
    2019 WL 1099001 (M.D. Pa. March 3, 2019) ........................................................ 19

*Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017) .................................................................... 20

*Clean Earth of Maryland, Inc. v. Total Safety, Inc.*,
    2011 WL 4832381 (N.D.W. Va. Oct. 12, 2011) ..................................................... 16

*Coach, Inc. v. Horizon Trading USA Inc.*,
    908 F. Supp. 2d 426 (S.D.N.Y. 2012) ................................................................... 13

*Denton v. Bibb*,
    2022 WL 2906759 (E.D. Cal. July 22, 2022) ........................................................ 17

*Disability Rights Council v. Wash. Metro Area*,
    234 F.R.D. 1 (D.D.C. 2006) .................................................................................. 15

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*,
    284 F.R.D. 132 (S.D.N.Y. 2012) .......................................................................... 20

*Gilead Sciences, Inc. v. Safe Chain Solutions LLC*,
    345 F.R.D. 22 ................................................................................................... 19, 20

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   2016 WL 3519618 (E.D. Pa. June 28, 2016) ........................................................ 19

*Kahrs Int'l, Inc. v. United States*,
   602 F.Supp.2d 1352 (Ct. Int'l Trade 2009) ......................................................... 11

*LaForte v. Horner*,
   833 F.2d 977 (Fed. Cir. 1987) ................................................................................ 11

*Lutron Electronics Co. Inc. v. United States*,
   Court No. 23- 00264 (Ct. Int'l Trade) ........................................................... 8, 20

*Miller v. Holtzmann*,
   240 F.R.D. 1 (D.D.C. 2006) .................................................................................... 15

*Orange Lake Country Club, Inc. v. Castle L. Grp., P.C.*,
   2018 WL 3390254 (M.D. Fla. Feb. 21, 2018) ...................................................... 23

*Parsons v. Best Buy Stores*,
   2010 WL 2243980 (S.D.W. Va. May 19, 2010) ................................................... 16

*Perez v. Miami-Dade County*,
   297 F.3d 1255 (11th Cir. 2002) ............................................................................. 12

*Perkins v. Chelsea Piers Mgmt.*,
   2012 WL 4832814 (S.D.N.Y. Oct. 10, 2012) ....................................................... 20

*Pickle & Olive Co.*,
   659 F.2d 1049 (1981) ...................................................................................... 21, 24

*Rhodes v. Phoenix Arms*,
   2022 WL 2079088 (N.D.N.Y. June 9, 2022) ....................................................... 20

*Roberts v. Clark County Sch. Dist.*,
   312 F.R.D. 594- (D. Nev. 2016) ............................................................................ 20

*Robinson v. De Niro*,
   2022 WL 101909 (S.D.N.Y. Jan. 11, 2022) ................................................... 12, 19

*Rogers v. Cusson*,
   2023 WL 8292588 (D. Conn. Dec. 1, 2023) ................................................... 12, 19

*Skaraborg Invest USA, Inc. v. United States*,
   9 F. Supp. 2d 706 (Ct. Int'l Trade 1998) .......................................................... 8, 20

*Stalling-Daniel v. Northern Trust Co.*,
  2002 WL 424629 (N.D. Ill. March 2002) ..................................................... 12

*Tracchia v. Tilton*,
  2008 WL 5382253 (E.D. Cal. Dec. 22, 2008) ............................................... 15

*United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*,
  2020 WL 4018587 (N.D. Okla. July 16, 2020) .............................................. 14

*United States v. Block 44, Lots 3, 6, Plus West 80 Feet of Lots 2 and 5*,
  177 F.R.D. 695 (M.D. Fla. 1997) ................................................................ 13

*United States v. Greenlight Organic, Inc.*,
  542 F. Supp. 3d 1409 (Ct. Int'l Trade 2021) ......................................... 11, 27

*United States v. Maverick Marketing, LLC*,
  427 F. Supp. 3d 1386 (Ct. Int'l Trade 2020) ............................................... 27

*United States v. Petroff-Kline*,
  557 F.3d 285 (6th Cir. 2009) ..................................................................... 11

*VWP of Am., Inc. v. United States*,
  175 F.3d 1327 (Fed. Cir. 1999) ............................................................... 2, 3

*Walker v. Dorriety*,
  2022 WL 20209778 (M.D. Ala. March 15, 2022) ....................................... 26

*Worthy Chemicals, Inc. v. United States*,
  47 Cust. Ct. 540 (C.C.P.A. 1961) ........................................................ 21, 24

## Statutes

19 U.S.C. § 1401a ......................................................................................... 2

19 U.S.C. § 1401a(a)(1) ................................................................................. 2

19 U.S.C. § 1401a(b)(1) ................................................................................. 2

19 U.S.C. § 1401a(d)(2)(A)(iii) ....................................................................... 4

19 U.S.C. § 1401a(d)(3)(A)(i) ..................................................................... 3, 23

19 U.S.C. § 1401a(d)(3)(B)(i) ................................................................. 3, 4, 15

19 U.S.C. § 1401a(f) ...................................................................................... 7

19 U.S.C. § 1401a(1)(B)-(E) ........................................................................... 5

19 U.S.C. § 1401a(1)(F) ........................................................................................... 5

19 U.S.C. § 1515(b) ................................................................................................. 3

**<u>Rules</u>**

Fed. R. Civ. P. 36 ............................................................................................ 11, 12, 13

USCIT Rule 26(b)(1) ......................................................................................... 19, 20

USCIT Rule 36 ....................................................................................................... 11

USCIT Rule 36(a)(1) ........................................................................................ *passim*

USCIT Rule 36(a)(4) ............................................................................................... 12

USCIT Rule 36(a)(6) ............................................................................................... 12

USCIT Rule 37 ......................................................................................................... 1

USCIT Rule 37(a)(4) ............................................................................................... 27

USCIT Rule 37(a)(4)(A) ......................................................................................... 27

USCIT Rule 73.1 ...................................................................................................... 3

**<u>Regulations</u>**

19 C.F.R. § 152.102(c)(1) ................................................................................ 13, 14

19 C.F.R. § 152.105(d)(1) ...................................................................................... 23

19 C.F.R. § 177.9(b)(3) ........................................................................................... 22

**<u>Other Authorities</u>**

HQ H304606 (June 24, 2021) ........................................................................... *passim*

8B Charles A. Wright, Arthur R. Miller, & Richard L. Marcus,
   Federal Practice and Procedure § 2252 (3d ed. 2024 Supplement) ....................... 12

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JENNIFER CHOE-GROVES, JUDGE

_____
GLOCK, INC.,                                          :
                                                             :
                            Plaintiff,            :        Court No.  23-00046
                                                             :
                    v.                                   :
                                                             :
UNITED STATES,                                   :
                                                             :
                                                             :
                            Defendant.          :
_____ :

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DEEM ADMITTED ITS REQUESTS FOR ADMISSION AND COMPEL OTHER DISCOVERY RESPONSES FROM DEFENDANT

Pursuant to the provisions of Rules 26, 33, 34, 36 and 37 of the Rules of the United States Court of International Trade, defendant, United States, hereby responds to plaintiff, Glock, Inc.'s (Glock), motion "to deem admitted its requests for admission and compel other discovery responses from defendant."  For the reasons set forth below, this Court should deny Glock's motion in its entirety.

Through this motion, Glock requests that this Court order that its requests for admissions be deemed admitted and compel "other discovery responses" from the Government.  Glock's cursory motion, however, is deficient in that it fails to establish that its discovery requests are proper.  Glock's requests for admissions consist of improper abstract statements of law.  Glock's request for production of documents seek information that is disproportionate to the needs of this case.  Indeed, many of Glock's document requests are facially defective as they seek information that is not relevant to its claims.   Glock's requests lack temporal limitations, and their scope

encompasses every type of imported good and extends to every branch, unit, and component of

U.S. Customs and Border Protection (CBP).  The Government responses to Glock's discovery

are completely appropriate.

## **BACKGROUND**

This action involves the valuation of twenty pistol kits for Model 19 RM FXD imported

by Glock, Inc. in a single entry on November 10, 2021 at the Port of Atlanta, Georgia.  Imported

merchandise must be appraised for purposes of ascertaining the final amount of duty.  19 U.S.C.

§ 1500(a), (c), (d).  The value statute, codified at 19 U.S.C. § 1401a, provides in relevant part:

**(a) Generally**
    **(1)** Except as otherwise specifically provided for in this chapter, imported
        merchandise shall be appraised, for the purposes of this chapter, on the
        basis of the following:
        **(A)** The transaction value provided for under subsection (b) of this section.
        **(B)** The transaction value of identical merchandise provided for under
            subsection (c) of this section, if the value referred to in subparagraph
            (A) cannot be determined, or can be determined but cannot be used by
            reason of subsection (b)(2) of this section.
        **(C)** The transaction value of similar merchandise provided for under
            subsection (c) of this section, if the value referred to in subparagraph
            (B) cannot be determined.
        **(D)** The deductive value provided for under subsection (d) of this section,
            if the value referred to in subparagraph (C) cannot be determined and
            if the importer does not request alternative valuation under paragraph
            (2).
        **(E)** The computed value provided for under subsection (e) of this section,
            if the value referred to in subparagraph (D) cannot be determined.
        **(F)** The value provided for under subsection (f) of this section, if the value
            referred to in subparagraph cannot be determined.

"The primary method of valuation is the 'transaction value' of the merchandise provided

for under 19 U.S.C. § 1401a(b)(1)."  *VWP of Am., Inc. v. United States*, 175 F.3d 1327, 1330

(Fed. Cir. 1999).  It is only when this "primary method" either "cannot be determined or cannot

be used" that Customs will look to the "secondary valuations methods in the order listed in [19

U.S.C.] § 1401a(a)(1) . . . ." *Id.*

At entry, Glock valued the pistol kits at issue at $5,261.00, but subsequently twice revised its valuation of the merchandise. First, on July 27, 2022, Glock submitted a post-summary correction (PSC) advising CBP that the value of the merchandise increased from $5,261.00 to $6,802.00. On that same day, Glock submitted another PSC advising CBP that the value of the merchandise had decreased from $6,802.00 to $6,475.00 and that it used the deductive value method of appraisement. Glock's PSC did not provide CBP with the amount of "royalty payment" that was included in plaintiff's valuation of the merchandise. The entry liquidated on October 21, 2022, and CBP assessed duties, taxes, and fees based on a value of $6,475.00. CBP estimates that the amount at issue in this action is approximately $19.

Glock filed Protest No. 1704-22-105518 on November 16, 2022, challenging the agency's purported failure to deduct unspecified royalty payments from the deductive valuation of the merchandise at issue. *See* Docket No. 6, USCIT Rule 73.1 filing. Glock argued that the amount of the royalty "is calculated at the close of the calendar year and is based upon Glock's annual sales of all licensed products from wherever sourced, including the imported pistol kits." *Id*. According to Glock, the unspecified royalty payment should have been deducted from the unit value as part of Glock's "addition usually made for profit and general expenses" pursuant to 19 U.S.C. § 1401a(d)(3)(A)(i) and (B). *Id*. Glock claimed that the deduction of the royalty payment is consistent with the Generally Accepted Accounting Principles (GAAP).

Glock sought accelerated disposition of its protest pursuant to 19 U.S.C. § 1515(b), and the protest was denied by operation of law on December 21, 2022. Glock filed this action on March 1, 2023.

In its Complaint, Glock claims that CBP's appraisement of the subject merchandise is erroneous because the royalty payment it made for the trademark(s) covered by a licensing

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

agreement is a general expense and not dutiable.  *See* Compl. ¶¶ 32-38.  While Glock does not

identify a specific licensing agreement in its Complaint, Glock produced an agreement executed

in 2022 as part of its Initial Disclosures.  Glock alleges that it appraised the merchandise at issue

using the deductive value method pursuant to 19 U.S.C. § 1401a(d)(2)(A)(iii), and included its

royalty payment as part of the dutiable value of its merchandise.

According to Glock, the treatment of the royalty payment as a general expense is

consistent with GAAP, and CBP improperly substituted its method of valuation (even though, for

the entries of this case, the entries were liquidated at the valuation amount provided by Glock).

*Id.*  Glock also alleges that CBP's treatment of the royalty payments as a cost of production

rather than a general expense is contrary to 19 U.S.C. § 1401a(d)(3)(B)(i).  Compl. ¶¶ 39-47.

I.      **GLOCK'S PRIOR DISCLOSURE INVOLVING MERCHANDISE IMPORTED BETWEEN 2013 AND 2018.**

Prior to the entry of the subject merchandise in this action, on May 21, 2018, Glock

submitted a prior disclosure covering entries consisting of models of pistol kits that are not

covered by this court action.  See generally 19 U.S.C. 1592(c)(4) (governing prior disclosures);

19 C.F.R. § 162.74 (same).  In its prior disclosure, [[███████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████ ]].  *See* Ex. 3, Letter from Leonard L. Rosenberg, Sr. Counsel to

Sandler, Travis & Rosenberg P.A. to Fines, Penalties & Forfeitures, U.S. Customs and Border

Protection re: Glock, Inc. [[████████████████]] Prior Disclosure at 2 (May 21, 2018)

("Initial Prior Disclosure Letter").  In its letter, Glock explained that [[█████████████████

████████████████████████████████████████████████████████

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

██████████████████████████████████████████████████████████

█████████████████████████████████████████ ]]. *See* Ex. 3,

Initial Prior Disclosure Letter at 2-3 (further detailing [[████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ ]][1]

CBP's Office of Regulatory Audit and Agency Advisory Services (Regulatory Audit) performed a Technical Assist Disclosure Review "to determine whether the basis of appraisement suggested by Glock [USA] to appraise the merchandise subject to its disclosure was appropriate" and "whether the methodology used by Glock [USA] . . . was reasonable." *See* Ex. 6, HQ H304606. Regulatory Audit determined that it was appropriate for Glock to use a fallback deductive value method to appraise the merchandise covered by the prior disclosure. However, Regulatory Audit also determined that the valuation methodology suggested and applied by Glock was unreasonable because it incorrectly categorized its "royalty payments for licensed trademarks and patents used to assemble its firearms" as a general expense and deducted them from the value of the pistol kits. *Id.* at 3. Regulatory Audit found that the royalty payments were not a general expense because they "represent a direct cost [of production] and should be captured as a cost to acquire the goods." *Id.* Glock disagreed with Regulatory Audit's

---

[1] In this action, Glock alleges that it's valued of the merchandise at issue using the "deductive value" method. *See* Compl. ¶ 30.

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

determination and submitted a request for internal advice to the Office of Regulations and

Rulings (Regulations and Rulings or R&R) on October 31, 2019, "to determine if royalties paid

on a periodic basis based on the annual net sales of licensed merchandise were allowed to be

deducted from the US sales price in a deductive value calculation." *Id.*

## II.    HQ H304606 (June 24, 2021)

In response to Glock's request for internal advice regarding the valuation of the

merchandise covered by its prior disclosure, on June 24, 2021, CBP issued Ruling HQ H304606.

In HQ H304606, CBP analyzed (1) Glock's use of the "fallback superdeductive" valuation

method for that merchandise and (2) whether the royalty payments it made pursuant to a

licensing agreement should be included in the dutiable value of the merchandise covered by the

prior disclosure.

The licensing agreement reviewed by Regulations and Rulings in connection with HQ



H304606 (the "2011 Agreement") grants Glock "[[                              ]]. Ex. 6,

HQ H304606.  [[                              ]]. *Id.* [[                              ]].

In this ruling CBP first analyzed Glock's request to use the "fallback superdeductive"

valuation method under 19 U.S.C. §1401a(f).  According to Glock, it could not use the standard

superdeductive method set forth in 19 U.S.C. §1401a(d) because the imported components are

sold at various points in time following their importation.  For example, some imported

components are assembled and sold less than 90 days after importation, some between 90 and 180 days after importation and some well after 180 days of importation, including some that were imported in the previous year. Ex. 6, HQ H304606 at 7; *see generally* 19 U.S.C. 1401a(D)(2)(A). Thus, Glock claimed that the fallback superdeductive method provides the only methodology to calculate the usual profit and general expense for the merchandise concerned. CBP disagreed that the "fallback superdeductive" valuation method proposed by Glock was appropriate for all of its entries, because some entries may be eligible for the superdeductive value set forth at 19 U.S.C. 1401a(D)(2)(A)(iii) based on the timing of the assembly and sale relative to the date of importation. Ex. 6, HQ H304606 at 7-8.

CBP also analyzed Glock's diversion from the statutorily required unit price, *see* 19 U.S.C. § 1401a(d)(2)(B), in favor of a weighted average unit price as a starting point for its deductive value calculations. Ex. 6, HQ H304606 at 7. CBP determined that Glock's use of a weighted average was not a reasonable adjustment of the deductive value or superdeductive value. CBP recommended that its Regulatory Audit "revisit the acceptability of the importer's proposed fallback superdeductive value method of calculation." *Id*.

Next, CBP determined whether the intellectual property identified in the 2011 Agreement applied to the products contained in the entries covered by Glock's prior disclosure. The agency concluded that three of the patents and "at least two of the registered trademarks" identified in the 2011 Agreement were used to assemble the finished pistols in the United States from the components of the imported pistol kits covered by the prior disclosure. Ex. 6, HQ H304606 at 4, 9. It further concluded that the royalty payments were costs of production rather than costs of sales.

CBP determined that the two trademarks applicable to the merchandise under review "involve the three-dimensional configuration of the goods as well as certain design elements." Ex. 6, HQ H304606 at 9.  It concluded that "the assembly of the imported components in the United States create the good which is, by its configuration, shape and design, the subject of the trade dress trademarks. Without the right to use the trade dress trademarks, the importer could not assemble the pistols in the United States without infringing the registered trade dress . . . ." Ex. 6, HQ H304606 at 11.  Therefore, the royalty payment made in exchange for the trademark rights constituted a cost of production.  Ex. 6, HQ H304606 at 11.

CBP determined that the royalty payments made in exchange for the patent and trademark rights set forth in the 2011 Agreement "are costs related to the assembly of the imported components and finished pistols."  *Id.*  According to CBP, the 2011 Agreement provides Glock with an exclusive license to assemble products that are identified as Licensed Products using imported patented components into a configuration protected by trademarks.  Therefore, the royalty payments made in exchange for the use of the patents and trademarks identified in the 2011 Licensing Agreement are linked to the cost of production of the merchandise via the assembly process, and are therefore not deductible as a general expense under any iteration of the deductive, superdeductive, or fallback deductive value method of appraisement.

### III.  THE 2011 LICENSING AGREEMENT DIFFERS MATERIALLY FROM GLOCK'S 2022 LICENSING AGREEMENT

Glock claims that it valued the model of pistol kit at issue in this action based on CBP's decision in HQ H304606, and in this action, which is reviewed *de novo*, it seeks broad discovery relating to that ruling.  This Court is not bound by CBP's administrative rulings in this *de novo* action.  *Skaraborg Invest USA, Inc. v. United States,* 9 F. Supp. 2d 706, 709 (Ct. Int'l Trade 1998).  *See also Lutron Electronics Co. Inc. v. United States*, Court No. 23- 00264,

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

Docket No. 37, Order on Plaintiff's Motion to Compel ("Customs' ruling letters are not binding on the court, and Customs' classification decision is subject to de novo review. Indeed, it does not appear to the court that they are even relevant.").

Moreover, CBP's determination as to the dutiability of the royalty payments at issue in HQ H304606 was expressly based on language in the 2011 Agreement permitting Glock to use the intellectual property in connection with the "assembly" of products and the royalties paid in connection with that assembly. Ex. 1, 2011 Agreement. That language is not present in the 2022 Agreement. Ex. 2. Specifically, the 2011 Agreement states:

3.    **Exclusive License**



5.    **Royalty Payments and Reports**



Compare with the 2022 Agreement (Ex. 2), which states:

**1.    LICENSE GRANT/RIGHTS**



**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**



Additionally, the model of pistol kits at issue in this case was not one of the models listed in the spreadsheets that accompanied Glock's prior disclosure which was analyzed in HQ H304606.  *See* 19 C.F.R. § 177.9(b)(3).  Because this case involves different transactions and different facts than those in HQ H304606, the ruling is not applicable to the goods in this case.

## IV.   GLOCK'S DISCOVERY REQUESTS AND THE PARTIES' "MEET AND CONFER" EFFORTS

Glock served its interrogatories and requests for production of documents on the Government on March 27, 2024, and served its request for admissions on April 2, 2024.  On May 2nd, 2024, the parties conferred regarding CBP's need for additional time to respond to plaintiff's interrogatories and document requests.  On May 13th, 2024, Glock agreed to an extension until May 27, 2024.  The Government served its responses to Glock's interrogatories and document requests on May 28, 2024 (May 27, 2024 was a Sunday).

On May 9, 2024, pursuant to USCIT Rule 37, Glock served the Government with a letter addressing its responses to Glock's requests for admission, and the Government responded by letter on May 20, 2024.  On May 31, 2024, the parties engaged in a "meet and confer" to discuss the Government's responses to Glock's requests for admission and other aspects of this case including confirming the amount in controversy, the applicability of HQ H304606 (June 24,

2021) to the entry at issue in this *de novo* action, the fact that Glock provided the value of the merchandise at issue to CBP, and that CBP has never made a determination as to whether royalty payments made under Glock's 2022 Agreement were dutiable. At the conclusion of the conference, the Government indicated that it would review its responses to Glock's requests for admission. On June 4, 2024, pursuant to USCIT Rule 37, Glock served the Government with a letter addressing its responses to Glock's interrogatories and document requests. In response, the Government advised that it would review Glock's letters and respond accordingly.

On June 13, 2024, we informed the Court that the Government was having internal discussions regarding the broader trajectory of this case as we did not want the parties to expend resources unnecessarily. On June 20, 2024, we advised Glock that the Government is willing to provide all of the relief that Glock is legally entitled to in this action and that we would provide a proposed stipulated judgment on agreed statement of facts for Glock's review. We explained that the small amount at issue did not justify the expenditure of significant resources to litigate this action. On that same day, Glock filed the instant motion. After failing to agree on a proposed stipulated judgment, the Government filed a motion for entry of judgment on June 27, 2024.

## ARGUMENT

### I.    THE GOVERNMENT'S RESPONSES TO GLOCK'S REQUESTS FOR ADMISSIONS ARE COMPLETELY APPROPRIATE.

Rule 36 of the United States Court of International Trade permits a party to serve a written request on another party for an admission relating to "facts, the application of law to fact, or opinions about either" or to "the genuineness of any described documents." USCIT R. 36(a)(1). "[R]equests for admissions are designed to secure the just, speedy and inexpensive determination of actions by avoiding the time, trouble and expense required to prove undisputed

facts which should be admitted." *LaForte v. Horner*, 833 F.2d 977, 982 (Fed. Cir. 1987)

(interpreting Federal Rule of Civil Procedure 36).[2]

 Requests for admission thus "expedite trial by eliminating the necessity of proving

essentially undisputed and peripheral issues." *United States v. Greenlight Organic, Inc.*, 542 F.

Supp. 3d 1409, 1414 (Ct. Int'l Trade 2021) (citations omitted); *United States v. Petroff-Kline*,

557 F.3d 285, 293 (6th Cir. 2009) (Rule 36 "is essentially intended to facilitate proof at trials by

obviating the need to adduce testimony or documents as to matters that are really not in

controversy."); *see also Perez v. Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002)

("[W]hen a party uses the rule to establish uncontested facts and to narrow the issues for trial,

then the rule functions properly."); 8B Charles A. Wright, Arthur R. Miller, & Richard L.

Marcus, Federal Practice and Procedure § 2252 (3d ed. 2024 Supplement) (Wright & Miller) (the

purpose of Rule 36 is "to expedite the trial and to relieve the parties of the cost of proving facts

that will not be disputed at trial[.]").

 Requests for admission are intended to "identify and eliminate matters on which the

parties agree," not to "seek information as to fundamental disagreement at the heart of the

lawsuit." *Rogers v. Cusson*, 2023 WL 8292588, at *1 (D. Conn. Dec. 1, 2023) (citing *Robinson

v. De Niro*, 2022 WL 101909, at *2 (S.D.N.Y. Jan. 11, 2022)). Rule 36 is not a discovery

device, "but rather a procedure for obtaining admissions for the record of facts already known by

the seeker." *Stallings-Daniel v. The Northern Trust Co.*, 2002 WL 424629 (N.D. Ill. March 19,

2002).

---

[2] As indicated in *Kahrs Int'l, Inc. v. United States*, because USCIT Rule 36 is "practically
indistinguishable" from Rule 36 of the Federal Rule of Civil Procedure, "cases interpreting Fed.
R. Civ. P. 36 are helpful in explicating USCIT R. 36." 602 F. Supp. 2d 1352, 1356 n.2 (Ct. Int'l
Trade 2009).

In terms of procedures, the responding party must admit or deny the matter "or state in detail why the answering party cannot truthfully admit or deny it." USCIT R. 36(a)(4). If denying an assertion, the answering party "must fairly respond to the substance of the matter" and, "when good faith requires that [the] party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." USCIT R. 36(a)(4). In addition, the answering party "may assert lack of knowledge or information as a reason for failing to admit or deny" only after it has "made reasonable inquiry" and "the information it knows or can readily obtain is insufficient to enable it to admit or deny." USCIT R. 36(a)(4).

A party may move the Court for a determination as to the sufficiency of an answer or objection. "Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." USCIT R. 36(a)(6).

### A.    Glock's Requests Improperly Seek Admissions On Conclusions Of Law

A request for admission cannot require a party to admit to a legal conclusion. *See Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) (improper to ask defendants to admit to legal conclusions); *Disability Rights Council v. Wash. Metro Area*, 234 F.R.D. 1, 3 (D.D.C. 2006) (noting after revision of Fed. R. Civ. P. 36, "[i]t is still true, however, that one party cannot demand that the other party admit the truth of a legal conclusion."); *United States v. Block 44, Lots 3, 6, Plus West 80 Feet of Lots 2 and 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997) ("A request for admission of a conclusion of law is improper.").

In its motion, Glock argues that it's requests for admissions are proper because they ask "Defendant to admit matters concerning the application of law and Defendant's opinions related thereto." Glock's Mot. at 7. Glock is incorrect. As we show below, Glock's requests for

admissions fall far outside the boundaries of Rule 36's limits as they seek admissions on legal

conclusions and hypotheticals.  Moreover, Glock has made no effort to articulate how its requests

seek admissions on the specific facts in this action or the application of law to opinion.  Glock's

requests are also replete with accounting terms of art that go to the heart of the legal issues in this

action.  Accordingly, the Government's responses are appropriate and Glock's motion should be

denied.

## 1.    Glock's Request for Admission Nos. 1, 2, And 3 Improperly Seek An Admission As To The Content Of A Regulation.

Glock's request for admissions Nos. 1, 2, and 3 seeks to force the Government to admit

to the substance of 19 C.F.R. § 152.102(c)(1).

1.    Admit that CBP defines "generally accepted accounting principles" in accordance with 19 C.F.R. § 152.102(c)(1), which states that the phrase "refers to any generally recognized consensus or substantial authoritative support regarding which economic resources and obligations should be recorded as assets and liabilities; which changes in assets and liabilities should be recorded; how the assets and liabilities and changes in them should be measured; what information should be disclosed and how it should be disclosed; and which financial statements should be prepared."

**RESPONSE**:  Defendant objects to this request on the ground that it is improper, as it is a pure legal conclusion or legal issue.  The request does not involve the application of law to fact or facts.  *See* USCIT Rule 36(a)(1).

2.    Admit that the accounting rules, standards, and procedures issued by the Financial Accounting Standards Board (FASB) are "generally accepted accounting principles" within the meaning of 19 C.F.R. § 152.102(c)(1).

**RESPONSE:**  Defendant objects to the terms "accounting rules, standards, and procedures" on the ground that it is undefined, vague, and ambiguous.  Defendant further objects to this request on the ground that it is improper, as it is a pure legal conclusion or legal issue.  The request does not involve the application of law to fact or facts.  *See* USCIT Rule 36(a)(1).

14

3.      Admit that the accounting rules, standards, and procedures issued
        by the Governmental Accounting Standards Board (GASB) are
        "generally accepted accounting principles" within the meaning of
        19 C.F.R. § 152.102(c)(1).

        **RESPONSE:** Defendant objects to the terms "accounting rules,
        standards, and procedures" on the ground that it is undefined,
        vague, and ambiguous.  Defendant further objects to this request
        on the ground that it is improper, as it is a pure legal conclusion or
        legal issue.  The request does not involve the application of law to
        fact or facts.  *See* USCIT Rule 36(a)(1).

Request Nos. 1, 2, and 3 are improper.  "[R]equiring a party to admit to the content of a

regulation or statute does not eliminate issues for trial, which is the purpose of Requests for

Admission."  *United States ex rel. Strauser v. Stephen L. LaFrance Holdings*, Inc., 2020 WL

4018587, at *1 (N.D. Okla. July 16, 2020).  Accordingly, the Government properly objected to

Glock's request Nos. 1, 2, and 3 on the grounds that they seek admissions on a legal conclusion.

    **2.      Glock's Request No. 4 Improperly Seeks An Admission On The
             Interpretation of A Statute.**

Glock's Request No. 4 seeks to force the Government to admit that Section

1401a(d)(3)(B)(i) imposes certain obligations.

4.      Admit that 19 U.S.C. § 1401a(d)(3)(B)(i) obligates CBP to accept
        an importer's determination of usual profit and general expenses
        under the provisions of deductive value when the determination is
        carried out utilizing information prepared in a manner consistent
        with Generally Accepted Accounting Principles in the United
        States.

        **RESPONSE:** Defendant objects to this request on the ground that
        the terms "obligates," "usual profit and general expenses," and
        "Generally Accepted Accounting Principles in the United States"
        are undefined, vague and ambiguous.  Defendant further objects to
        this request on the ground that it is improper, as it is a pure legal
        conclusion or legal issue.  The request does not involve the
        application of law to fact or facts.  *See* USCIT Rule 36(a)(1).

15

A request improperly seeks a legal conclusion when it requires a party to admit that a statute or regulation imposes a particular obligation. *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,* 234 F.R.D. at 3; *Tracchia v. Tilton*, 2008 WL 5382253, at *2 (E.D. Cal. Dec. 22, 2008) ("A request calls for a legal conclusion when it asks a party to admit what is required or permitted by particular regulations"); *Miller v. Holtzmann*, 240 F.R.D. 1, 5 (D.D.C. 2006). Accordingly, the Government properly objected to Glock's request Nos. 1, 2, and 3 on the grounds that they seek a legal conclusion.

### 3. Glock's Request No. 5 Improperly Seeks An Admission On A Set Of Hypothetical Factual Scenarios.

Requests seeking an admission on hypothetical factual scenarios are improper. *See Abbott v. United States*, 177 F.R.D. 92 (N.D.N.Y. 1997) ("plaintiff's have posed improper hypothetical factual scenarios unrelated to the facts here to ascertain answers to pure questions of law). *See also Clean Earth of Maryland, Inc. v. Total Safety, Inc.*, 2011 WL 4832381 at *3 (N.D.W. Va. Oct. 12, 2011) *(citing Parsons v. Best Buy Stores,* , 2010 WL 2243980, at *2 (S.D.W. Va. May 19, 2010) (quoting *Abbott v. United States,* 177 F.R.D. 92, 93 (N.D.N.Y. 1997))).

Glock's Request No. 5 seeks an admission on conclusion of law based on a hypothetical set of facts that have not been established to exist.

> 5. Admit that if GLOCK correctly determined cost allocations In accordance with U.S. Generally Accepted Accounting Principles, CBP is prohibited from substituting GLOCK's allocation methodology with its own allocation methodology.
>
> **RESPONSE:** Defendant objects to this request on the ground that the terms "GLOCK's allocation methodology" and "U.S. Generally Accepted Accounting Principles" are undefined, vague, and ambiguous. Defendant further objects to this request on the ground that it is an improper

16

hypothetical.  Defendant further objects to this request on
the grounds that it is improper, as it is a pure legal
conclusion.  The request does not involve the application of
law to fact or facts.  *See* USCIT Rule 36(a)(1).

Glock's request improperly calls for the Government to speculate on a set of facts in

order to admit a conclusion of law.  Accordingly, the Government's response to Request No. 5 is

appropriate.

### 4.  Glock's Request Nos. 6-8, 10 and 11 Improperly Seek Admissions On Conclusions of Law And Do Not Involve The Application of Law To Facts.

Glock's Request Nos. 6-8, 10 and 11 seek admissions on conclusions of law in the

abstract, and are not grounded in facts that are specific to this action.  The request also does not

involve the application of law to opinion.  A "[p]laintiff may ask a defendant how that defendant

understands the law to apply to the relevant facts in his case, but he may not ask a defendant to

admit what the law says in the abstract."  *Denton v. Bibb*, 2022 WL 2906759, at *4 (E.D. Cal.

July 22, 2022).

6.    Admit that a royalty payment that is based on a percentage of the
net sales of a product(s) may properly be recorded as a selling
expense under U.S. Generally Accepted Accounting Principles.

**RESPONSE:** Defendant objects to this request on the ground that
it is improper, as it is a pure legal conclusion or legal issue.  The
request does not involve the application of law to fact or facts.  *See*
USCIT Rule 36(a)(1).  Defendant further objects to this request on
the ground that the terms "royalty payment," "percentage of the net
sales," "product," "selling expense" are undefined, vague, and
ambiguous.  Defendant further objects to this request on the
ground that it is an improper hypothetical.

7.    Admit that under U.S. Generally Accepted Accounting Principles,
a selling expense is a period cost.

**RESPONSE:** Defendant objects to this request on the ground that
it is improper, as it is a pure legal conclusion or legal issue.  The
request does not involve the application of law to fact or facts.

17

Defendant further objects to the terms "U.S. Generally Accepted Accounting Principles," "selling expense," and "period cost" on the grounds that they are undefined, vague, and ambiguous.

8.      Admit that under U.S. Generally Accepted Accounting Principles, production costs do not include period costs.

   **RESPONSE:** Defendant objects to this request on the grounds that it is improper as it is a pure legal conclusion or legal issue.  The request does not involve the application of law to fact or facts. Defendant further objects to this request on the grounds that the terms "U.S. Generally Accepted Accounting Principles," "production costs," and "period costs" are undefined, vague, and ambiguous.

10.     Admit that the amount of a royalty payment that is based on a percentage of the net sales of a product(s) cannot be known until after the product(s) is sold.

   **RESPONSE:**  Defendant objects to this request on the ground that it is improper, as it is a pure legal conclusion or legal issue.  The request does not involve the application of law to fact or facts. Defendant further objects to the terms "royalty payment," "percentage of net sales," and "product(s)" on the ground that they are undefined, vague, and ambiguous. Defendant further objects to this request on the ground that it is an improper hypothetical.

11.     Admit that the obligation to pay a royalty that is based on net sales of a product(s) is not precipitated until after a sale of the product(s).

   **RESPONSE:**  Defendant objects to this request on the ground that it is improper, as it is a pure legal conclusion or legal issue.  The request does not involve the application of law to fact or facts. Defendant further objects to the terms "royalty," "net sales," "product(s)," and "precipitated" on the ground that they are undefined, vague, and ambiguous.  Defendant further objects to this request on the ground that it is an improper hypothetical.

Request Nos. 6-8, 10 and 11 seek admissions on what the law says in the abstract and are not tied to the facts of this case.  Indeed, those requests do not incorporate any references to the imported merchandise, the royalty payment that Glock made in this case, or any of Glock's

18

licensing agreements.  The Government's responses to Request Nos. 6-8, 10 and 11 are appropriate.

     **5.  Glock's Requests for Admissions Contain Undefined Accounting Terms Of Art That Are At The Heart Of This Action.**

    Glock's requests for admissions contain terms such as "net sales," "period cost," "selling expense," and "production costs."  Glock argues that those terms have "common, well-understood meanings."  Glock Mot. at 7.  Glock is incorrect.  Those words are accounting terms of art and not common parlance.  The crux of Glock's Complaint is that the royalty payment that it made should not be included in the dutiable value of the merchandise at issue because it is a "selling expense."  Thus, the resolution of the legal issues in this case will turn on the Court's interpretation of those accounting terms of art.

    As we explained above, requests for admission are intended to "identify and eliminate matters on which the parties agree," not to "seek information as to fundamental disagreement at the heart of the lawsuit."  *Rogers v. Cusson*, 2023 WL 8292588, at *1 (D. Conn. Dec. 1, 2023) (citing *Robinson v. De Niro*, 2022 WL 101909, at *2 (S.D.N.Y. Jan. 11, 2022)).  Glock's requests are improper as they seek information as to the legal issues that are at the heart of the lawsuit.  Accordingly, the Government's responses are appropriate.

**II.  THE GOVERNMENT'S RESPONSES TO GLOCK'S REQUESTS FOR PRODUCTION ARE APPROPRIATE AND JUSTIFIED BECAUSE THE REQUESTS SEEK INFORMATION THAT IS NOT RELEVANT AND NOT PROPORTIONATE TO THE NEEDS OF THE CASE.**

    USCIT Rule 26 (b) (1) defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

19

> access to relevant infoTermation, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need not
> be admissible in evidence to be discoverable.

USCIT R. 26 (b)(1).

Evidence is "relevant 'if it has any tendency to make a fact more or less probable that it would be without the evidence' and 'the fact is of consequence in determining the action.'" *Allen v. Eckard,* 2019 WL 1099001, at *2 (M.D. Pa. March 3, 2019) (citing *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2016 WL 3519618, at *3 (E.D. Pa. June 28, 2016)).  In ascertaining which materials are discoverable and which are not, a court must further determine whether the information sought is proportionate to the needs of the case. *Gilead Sciences, Inc. v. Safe Chain Solutions LLC*, 345 F.R.D. 22, 29 (E.D.N.Y. 2024).   Thus, to be discoverable, information must be relevant <u>and</u> proportional to the needs of the case.  *Id*.  In weighing proportionality, courts consider the issues, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  USCIT R. 26(b)(1).  The proportionality requirement set forth in USCIT Rule 26(b)(1) imposes "reasonable limits on discovery."  *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594-603 (D. Nev. 2016).  Lawyers "must size and shape their discovery requests to the requisites of the case.  *Id*.

"The party seeking discovery bears the initial burden of proving the discovery is relevant[.]" *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (citations omitted)); *Rhodes v. Phoenix Arms*, 2022 WL 2079088, at *7

(N.D.N.Y. June 9, 2022); (plaintiffs motion to compel denied on the grounds that it failed to articulate why the remaining documents are discoverable); *Perkins v. Chelsea Piers Mgmt.*, 2012 WL 4832814, at *1 (S.D.N.Y. Oct. 10, 2012) (citations omitted) (plaintiff's failure to provide argument as to why the documents sought were relevant to its case was fatal to the motion to compel.)

Notwithstanding that this is a *de novo* action, Glock seeks to litigate the merits of CBP's valuation determination with respect to its prior disclosure in HQ H304606. *See* Glock's Mot. at 4 (Glock's discovery is "derived from Glock's interactions with CBP over the past six-plus years"). Glock misunderstands the nature of a valuation action. This Court is not bound by CBP's administrative rulings in this *de novo* action and, thus, HQ H304606 is not relevant. *Skaraborg Invest USA, Inc. v. United States,* 9 F. Supp. 2d at 709. *See also Lutron Electronics Co. Inc. v. United States*, Court No. 23- 00264, Docket No. 37, Order on Plaintiff's Motion to Compel ("Customs' ruling letters are not binding on the court, and Customs' classification decision is subject to de novo review. Indeed, it does not appear to the court that they are even relevant").

In a valuation action, the plaintiff has the dual burden of proving that CBP's appraisement of the merchandise was erroneous and the burden of establishing the correct valuation. *Pickle & Olive Co.*, 659 F.2d 1049, 1052 (Ct. Int'l Trade 1981); W*orthy Chemicals, Inc. v. United States*, 47 Cust. Ct. 540, 545 (C.C.P.A. 1961). The plaintiff must overcome the presumption of correctness that attaches to the appraised value. *Diamax Hawaii, Ltd. v. United States*, 4 CIT 162, 166 (1982) (because plaintiff did not "succeed in bearing its burden of proof, the valuation of Customs must be affirmed"); *Arditi v. United States*, 38 Cust. Ct. 749 (1957) ("[I]t is not incumbent upon the Government to prove that the appraised value is proper, until and

unless the importer shows such appraisement to be erroneous and establishes a different value in place thereof.").  If the plaintiff fails to satisfy its dual burden, it simply cannot prevail.  Indeed, this Court has held that:

> Plaintiff cannot come to court and attempt to shoot holes in the declared valuation and leave it to the court to figure out a better valuation.  It is plaintiff's burden to articulate what it paid, why that was wrong, and what it should have paid, all through competent evidence.

*See* Ex. 7, Memorandum, *Continental Teves, Inc. v. United States*, Court No. 03-00782 (Apr. 2009).

Glock alleges that it valued the pistol kits at issue pursuant to the deductive value method and that because the royalty payments it made are "general expenses," they must be deducted from the dutiable value of the merchandise.  *See* Compl. ¶¶ 32-38.  The treatment of Glock's royalty payment for valuation purposes is dependent on whether deductive value is the appropriate method of valuation for the subject pistol kits.  Glock must establish all material facts to support its valuation, including that deductive value is the proper appraisement method for the entry at issue in this action.

Here, Glock did not place reasonable limits on its document requests as they seek a large amount of discovery for broad categories unrelated to the claims in the Complaint, and do not reference any limiting factors such as temporal scope, type or category of imported merchandise, or identification of the CBP component or branch that might have the requested documents.  Below, we address each of Glock's requests for production more fully.

**A. Glock's Request No. 7 Improperly Seeks Information Relating To HQ H3034606.**

CBP's administrative rulings are not relevant to the Court's determination in a *de novo* action.  Indeed, the Court is not bound by CBP's rulings, and CBP is under no obligation to follow the ruling in litigation.  Nevertheless, Glock requested the following:

> **Request for Production 7:** Produce all documents, including email, memoranda, casefiles, and/or internal messages, discussing or relating to HQ H304606.

We objected to this request on the ground that it seeks irrelevant information and information that is disproportionate to the needs of this case.  Besides the fact that the HQ304606 has no bearing on the Court's determination in this action, the ruling does not apply to the merchandise at issue in this action.  19 C.F.R. § 177.9(b)(3).  As we explained above, CBP's determination in HQ H304606 covered models of pistol kits identified in Glock's prior disclosure and the intellectual property covered by the 2011 Licensing Agreement.  CBP's valuation decision was based on specific language in Glock's 2011 Licensing Agreement.  That language is not present in the 2022 Licensing Agreement.

As a show of good faith and to ensure transparency, without waiving any of our objections, we are producing the non-privileged documents contained in the ruling file for HQ H304606.

**B. Glock's Request Nos. 4, 5, 6, 17, 18, 19, 20, 21, 22, And 23 Seek Information That Is Not Relevant To Glock's Claims And Is Disproportionate To The Needs of The Case.**

Requests for "all documents" at the outset of a request facially lack proportionality and "arguably capture[] a host of documents that would have little to no relevance" to the claims in a case.  *Orange Lake Country Club, Inc. v. Castle L. Grp., P.C.*, 2018 WL 3390254, at *3 (M.D.

Fla. Feb. 21, 2018).  Furthermore, requests for production that seek "all documents" "relating to"

is disproportionate to the needs of the case.

> **Request for Production 4:** Produce all documents, training materials, manuals, or instructions discussing or relating to how CBP determines the dutiability of royalty payments and licensing fees related to the use of patents.
>
> **Request for Production 5:** Produce all documents, training materials, manuals, or instructions discussing or relating to how CBP determines the dutiability of royalty payments and licensing fees related to the use of trademarks.
>
> **Request for Production 6:** Produce all documents, training materials, manuals, or instructions discussing or relating to how CBP determines whether an expense is an "addition usually made for profits and general expenses" deductible under 19 U.S.C. § 1401a(d)(3)(A)(i) and 19 C.F.R. § 152.105(d)(1).
>
> **Request for Production 17:** Produce all documents, training materials, manuals, or instructions discussing or relating to the applicability of the Internal Revenue Code and Internal Revenue Service regulations to customs valuation determinations.
>
> **Request for Production 18:** Produce all documents, training materials, manuals, or instructions discussing or relating to the deductibility of costs qualifying under Generally Accepted Accounting Principles ("GAAP") as profits and general expenses ("P&GE") from deductive value under 19 U.S.C. § 1401a(d)(3)(A)(i).
>
> **Request for Production 19:** Produce all documents, training materials, manuals, or instructions discussing or relating to how CBP determines whether a royalty payment and/or licensing fee is a condition of sale of imported merchandise for exportation to the United States.
>
> **Request for Production 20:** Produce all documents, training materials, manuals, or instructions discussing or relating to how CBP determines whether a royalty payment and/or licensing fee is related to manufacturing merchandise in the United States.
>
> **Request for Production 21:** Produce all documents, training materials, manuals, or instructions discussing or relating to how CBP determines whether a royalty payment and/or licensing fee is

related to assembling merchandise in the United States.

**Request for Production 22:** Produce all documents, training materials, manuals, or instructions discussing or relating to how CBP determines whether a royalty payment and/or licensing fee is related to selling merchandise in the United States.

**Request for Production 23:** Produce all documents, training materials, manuals, or instructions discussing or relating to the elements of trademark infringement under the Lanham Act.

Glock's requests are not relevant to its valuation claim involving a single entry of pistol kits. Glock's dual burden in this action is to prove that CBP's appraisement of its merchandise is incorrect and prove the correct appraisement. *Pickle & Olive Co.*, 659 F.2d at 1052; W*orthy Chemicals, Inc. v. United States*, 47 Cust. Ct. at 545. The Government does not have the burden to prove that the appraised value is correct, "until or unless the importer shows such appraisement to be erroneous and establishes a different value thereof." *Arditi v. United States*, 38 Cust. Ct. at 752. Thus, Glock's discovery requests will not yield information necessary to satisfy its dual burdens. Glock has not explained how training materials, manuals and instructions relating to trademark infringement under the Lanham Act are relevant to its claims, or how training materials, manuals and instructions relating to the applicability of Internal Revenue Code and Internal Revenue Service regulations to customs valuation determinations have any bearing on its claims in this action. Glock's Complaint does not contain any allegations regarding the Lanham Act, the Internal Revenue Code, or Internal Revenue Service regulations. Glock has not cited a single case where the Court considered training materials, manuals or instructions as evidence in a valuation case.

Furthermore, Glock's inclusion of broad terms "all documents" and "relating to" in each request renders them disproportionate to the needs of the case. Glock described this case as involving a simple issue yet it requests that CBP engage in a wide-range, limitless search for

documents. As drafted, Glock's requests encompass every single email, draft, handwritten note, etc. in CBP's possession as well as documents related to other importers. There is no temporal scope. Indeed, facially, Glock's requests are so broad that it is impossible for the Government to fully respond to them. The Government's responses to Glock's requests for production are appropriate.

## III. THE GOVERNMENT RESPONSES TO GLOCK'S REQUEST NOS. 8-15 ARE JUSTIFIED.

Glock's Request Nos. 8 through 15 seek email communications from or received by several individuals "which concern, refer to or in any way relate to GLOCK, including":

> the pistol kits, GLOCK trademarks, GLOCK patents, GLOCK's
> royalty payments, GLOCK's use of the fallback method based on
> the deductive value of imported merchandise, GLOCK's use of a
> weighted average to determine model price, the
> assembly of GLOCK pistols, and/or GLOCK licensing
> agreements.

In response, the Government objected to Glock's requests on the grounds that they seek documents that are not relevant to Glock's claims in this action. Specifically, Glock's Complaint does not contain any claims related to the "fallback method based on the deductive value of imported merchandise," "Glock's use of a weighted average to determine model price," or "Glock patents." We further objected to the requests on the ground that they seek "all communications which concern, refer to or in any way relate to GLOCK" from the identified individuals which is disproportionate to the needs of the case. Given that the Government enjoys the presumption of correctness that attaches to an appraisal of imported goods, and does not have the burden of proving the that the appraised value is correct, information related to valuation methodology is not relevant. Indeed, as this Court held, "[i]t is plaintiff's burden to articulate what it paid, why that was wrong, and what it should have paid, all through competent

26

evidence." *See* Ex. 7, Memorandum, *Continental Teves, Inc. v. United States*, Court No. 03-00782 (Apr. 2009).

We also advised that the Government did not have sufficient information at that time to narrow the request to identify relevant communications. The Government did not have possession of the entry documentation including the commercial invoices or the Amended Intellectual Property Agreement dated January 1, 2022, which includes the identification of intellectual property purportedly applicable to the pistol kits at issue. On July 23, 2024, Glock produced the entry documentation to the Government and the Amended Intellectual Property Agreement. The production of those documents will permit the Government to search and identify responsive documents. Accordingly, the Government will supplement its responses to Request Nos. 8 thorough 15.

Finally, Glock complains that the Government's objection to request No. 1 based on the fact that the responsive documents are publicly available is improper because it cannot be assumed that the documents and information that the Government "has are identical to material that might possibly, but may not necessarily, be available elsewhere." Mot. at 11. Glock's argument is without merit. Glock fails to mention that in response to Request No. 1, the Government expressly identified the USCIT Rule 73.1 documents filed with the Court and HQ H304606 – those are the publicly available documents that are available to Glock.

## IV. THE COURT SHOULD DENY GLOCK'S REQUEST THAT THE GOVERNMENT'S OBJECTIONS TO ITS REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES BE WAIVED.

Glock argues that the Government's objections to its interrogatories and document requests are a ploy to avoid providing Glock with the discovery to which it is entitled. Glock's Mot. at 12. Glock's characterization of the Government's objections and responses is wrong.

Above, we articulated in detail why Glock's document requests are improper and the basis for the Government's objections.

As for Glock's interrogatories, the Government responded to every interrogatory, and did not stand on any objections as a basis for not responding. That Glock might not like the Government's responses is not a valid basis for a motion to compel. Furthermore, even if this Court finds that the objections have been waived, a court still has the discretion to deny a motion to compel when a discovery request exceeds the bounds of proper discovery. *Walker v. Dorriety*, 2022 WL 20209778 (M.D. Ala. March 15, 2022). Glock's interrogatories exceed the bounds of proper discovery. Specifically, Glock's Interrogatory Nos. 1, 3, 7, and 8 improperly seek a pure legal conclusion. Interrogatory Nos. 10, 11, 14, and 15 seek information relating to HQ H303606, which is not relevant to the claims in this *de novo* action. As drafted, Interrogatory Nos. 2, 4, 5, 12, and 13 seek information that is not relevant and disproportionate to the needs to of this case. Those interrogatories do not contain any limiting references such as a specific type or category of imported good. Even though Glock's interrogatories are improper, the Government responded to each one. Accordingly, this Court should deny Glock's request that the objections be waived.

## V. GLOCK'S REQUEST FOR ATTORNEYS FEES SHOULD BE DENIED.

Glock is not entitled to any award of attorneys fees. USCIT Rule 37(a)(4) establishes the conditions under which a court should award the reasonable expenses, including attorney fees, with respect to a motion to compel. The rule provides that the Court "shall" award such fees and costs to the prevailing party on the motion. The Government has sufficiently established that Glock's motion to compel is baseless and should be denied. Even if the Court were inclined to grant part of Glock's motion, the Court should not award attorneys fees. First, USCIT Rule

37(a)(4)(A) expressly provides that the Court can decline to award attorneys fees if the "opposing party's nondisclosure, response, or objection was substantially justified." As demonstrated above, the Government's responses to Glock's discovery were substantially justified. *See, e.g., United States v. Greenlight Organic, Inc.*, 542 F. Supp. 3d at 1321; *United States v. Maverick Marketing, LLC*, 427 F. Supp. 3d 1386 (Ct. Int'l Trade 2020). Thus, the court should not award attorneys fees even if it were to grant any part of Glock's motion.

## <u>CONCLUSION</u>

For these reasons, this Court should deny Glock's motion to deem admitted its request for admissions and compel other discovery responses from the Government.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office


        /s/ Marcella Powell
        MARCELLA POWELL
        Senior Trial Counsel
        Department of Justice, Civil Division
        Commercial Litigation Branch
        26 Federal Plaza – Suite 346
        New York, New York 10278
        Attorneys for Defendant
Dated: August 2, 2024     (212) 264-1873

**CERTIFICATE OF COMPLIANCE PURSUANT TO**
**USCIT STANDARD CHAMBER PROCEDURE 2(B)**

I, Marcella Powell, Senior Trial Counsel in the Office of the Assistant Attorney

General, Civil Division, Commercial Litigation Branch, International Trade Field Office,

who is responsible for the foregoing brief, relying upon the Microsoft Word word count

feature of the word processing program used to prepare the brief, certify that this brief

complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B)

and contains 8974 words.


/s/ Marcella Powell