**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC., | ) |
|             Plaintiff, | ) |
| v. | ) Court No. 23-00046 |
| UNITED STATES, | ) |
|             Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
TO DEEM ADMITTED ITS REQUESTS FOR ADMISSION AND
COMPEL OTHER DISCOVERY RESPONSES FROM DEFENDANT**

**TABLE OF CONTENTS**

**ARGUMENT**..................................................................................................................... 2

    **I.    THE GOVERNMENT'S POSITION ON THE RFA RESPONSES IS UNSUPORTABLE AND IGNORES KNOWN FACTS.** ................................................. 2

    **II.   THE COURT SHOULD ORDER THAT THE GOVERNMENT HAS WAIVED OBJECTIONS TO THE INTERROGATORIES AND MUST SUBSTANTIVELY RESPOND TO EACH.** ........................................................................................ 5

    **III.  THE COURT SHOULD OVERRULE THE GOVERNMENT'S OBJECTIONS TO THE RFPS AND ORDER FULL RESPONSES TO EACH.** ......................................... 7

    **IV.  THE COURT SHOULD AWARD GLOCK ITS REASONABLE ATTORNEYS' FEES AND EXPENSES.** ............................................................................... 10

**CONCLUSION** ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. United States*,
    177 F.R.D. 92 (N.D.N.Y. 1997) .................................................................................... 3

*Continental Teves, Inc. v. United States,*
    No. 03-00782, *Memorandum* (C.I.T. Apr. 2, 2009) ................................................... 7

*Denton v. Bibb*,
    No. 1:19-cv-00316, 2022 WL 2906759 (E.D. Cal. July 22, 2022) ............................. 3

*Diamax Hawaii, Ltd. v. United States*,
    4 C.I.T. 162 (1982) ..................................................................................................... 7

*FDK Am., Inc. v. United States*,
    973 F. Supp. 2d 1315 (C.I.T. 2014) ............................................................................ 9

*Miller v. Holzmann*,
    240 F.R.D. 1 (D.D.C. 2006) ........................................................................................ 3

*Parsons v. Best Buy Stores, L.P.*,
    No. 3:09-CV-00771, 2010 WL 2243980 (S.D. W.Va. May 19, 2010) ....................... 3

*Proctor & Gamble Co. v. U.S.*,
    No. 1:05-cv-00355, 2007 WL 2994686 (S.D. Ohio Oct. 6, 2007) .............................. 4

*Pueblo of Isleta v. Grisham*,
    No. 17-654 KG/KK, 2019 WL 1429586 (D. N.M. Mar. 30, 2019) ............................ 3

*S.E.C. v. Escala Group, Inc.*,
    No. 09 Civ. 2646(DLC), 2009 WL 236554 (S.D.N.Y. July 31, 2009) ....................... 2

*Torrington Co. v. U.S.*,
    146 F.Supp.2d 845 (C.I.T. 2001) ................................................................................ 4

*United States v. Arnold Pickle & Olive Co.*,
    659 F.2d 1049 (C.C.P.A. 1981) .................................................................................. 7

*United Food & Com. Workers Union v. Chesapeake Energy Corp.*,
    No. CIV-09-1114-D, 2012 WL 32910 (W.D. Okla. Jan. 6, 2012) ............................. 9

*Walker v. Dorriety*,
    No. 1:20-CV-1007, 2022 WL 20209778 (M.D. Ala. Mar. 15, 2022) ......................... 5

# TABLE OF AUTHORITIES
(continued)

**Statutes**

19 U.S.C. § 1401a ............................................................................................................. 3, 5

19 U.S.C. § 4531 ................................................................................................................. 5

U.S.C. Title 19 ..................................................................................................................... 5

**Rules**

USCIT Rule 36 .................................................................................................................... 2

USCIT Rule 33 .................................................................................................................... 5

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Court No. 23-00046 |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
TO DEEM ADMITTED ITS REQUESTS FOR ADMISSION AND
COMPEL OTHER DISCOVERY RESPONSES FROM DEFENDANT**

Plaintiff GLOCK, Inc. ("GLOCK") respectfully submits this reply ("Reply") in response to the Defendant United States' (the "Government") opposition to GLOCK's motion to compel (Doc. 18) (the "Motion to Compel").

In its response to the Motion to Compel (Doc. 34) (the "Opposition"), the Government begins with a lengthy historical summary of the parties' multi-year dispute, including the HQ decision and the 2011 License Agreement.[1] This recitation is irrelevant to the Court's assessment of GLOCK's Motion to Compel. Nevertheless, the Government's historical narration makes one thing abundantly clear: it is no stranger to the specific topics, positions, arguments, legal principles, and terminology at issue in this case – all of which are fully within its purview and involve principles routinely applied by U.S. Customs and Border Protection ("CBP") under its statutory mandate – despite professing ignorance of these matters.

---

[1] Contrary to the Government's argument, the fact that the license agreement reviewed in HQ H304606 has been updated is of no moment. As GLOCK has repeatedly explained to the Government, only minor, non-substantive changes to the license agreement occurred, and the operative provisions that pertain to the royalties GLOCK is obligated to pay relative to imported merchandise remain substantively unchanged.

Next, the Opposition focuses on *de novo* review and GLOCK's ultimate burden of proof at trial. Again, these arguments have no bearing on the proper scope of discovery or the propriety of the Government's objections. Finally, the Government discusses its myriad objections and why it believes they are proper. However, as discussed more fully below, the Government's objections are without merit and GLOCK's motion should be granted in its entirety.

## ARGUMENT

### I. THE GOVERNMENT'S POSITION ON THE RFA RESPONSES IS UNSUPORTABLE AND IGNORES KNOWN FACTS.

Aside from reciting hornbook law on Rule 36, the Government fails to substantively support its objections to GLOCK's carefully crafted RFAs which target specific issues for purposes of streamlining discovery at the outset of this action. Indeed, as discussed below, the Opposition's arguments underscore the flaws in the Government's objections.

First, the Government contends that all but one of the RFAs improperly seek admissions on conclusions of law and "fall far outside the boundaries of Rule 36's limits." (Opp. at 13-14). But the law is clear that "[a] party may serve on any other party a written request to admit . . . the truth of any matters . . . relating to . . . facts, the application of law to facts, or opinions about either." USCIT Rule 36(a)(1)(A).

Next, the Government argues that RFAs 1, 2 and 3 "[i]improperly seek an admission as to the content of a regulation." (Opp. at 21). That is not true. These RFAs ask for admissions as to how the Government defines "generally accepted accounting principles" specifically in the context of the valuation statute at issue in this case, and whether two indisputably authoritative standards are considered as such. *See S.E.C. v. Escala Group, Inc.*, No. 09 Civ. 2646(DLC), 2009 WL 236554, at *7 (S.D.N.Y. July 31, 2009) ("There are multiple GAAP sources, including standards issued by the FASB."); *id.* at n.6 ("FASB standards sit atop the hierarchy of GAAP sources."); *see*

*also Pueblo of Isleta v. Grisham*, No. 17-654 KG/KK, 2019 WL 1429586, at *8 (D. N.M. Mar. 30, 2019) ("[T]he Governmental Accounting Standards Board ('GASB') determines authoritative sources of generally accepted accounting principles ('GAAP')").

The Government then argues that RFA 4 "improperly seeks an admission on the interpretation of a statute." (Opp. at 22). In reality, RFA 4 asks for an admission as to what CBP was required, under 19 U.S.C. § 1401a(d)(3)(B)(i), to do in this instance when usual profit and general expenses are determined in accordance with GAAP. *Compare with* Complaint (Doc. 7) at ¶ 46 ("Glock Inc.'s cost valuation methodology and allocations were done in accordance with U.S. GAAP"). Thus, RFA 4 permissibly asks for an admission as to the application of law to the facts of this case.[2]

The Government argues that RFA 5 "improperly seeks an admission on a set of hypothetical factual scenarios" while RFAs 6, 7, 8, 10 and 11 "seek admissions on conclusions of law in the abstract, and are not grounded in facts that are specific to this action." (Opp. at 16-17). These RFAs do no such thing and the cases cited by the Government do not support its positions.[3] While RFA 5 includes the word "if" – which the Government asserts means that RFA 5 *must be* a hypothetical – the RFA is directly asking about the application of law (19 U.S.C. § 1401a(g)(3)) to the facts of this case (GLOCK's accounting of its royalty payments).

---

[2] The cases cited in the Opposition do not support the Government's position on this or any of its arguments. *See, e.g.*, *Miller v. Holzmann*, 240 F.R.D. 1, 5 (D.D.C. 2006) ("[I]t is permissible to request an admission as to how a particular source of a legal obligation, such as a contract or a statute or regulation, applies to a given state of facts.").

[3] *See, e.g.*, *Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997) (hypothetical only if, unlike here, "unconnected to the facts of the case at bar"); *Parsons v. Best Buy Stores, L.P.*, No. 3:09-CV-00771, 2010 WL 2243980, at *2 (S.D. W.Va. May 19, 2010) (not hypothetical if "requiring application of law to the facts peculiar to this case to clarify the government's legal theories"); *Denton v. Bibb*, No. 1:19-cv-00316, 2022 WL 2906759, at *4 (E.D. Cal. July 22, 2022) ("As Plaintiff is asking about the application of law to fact, the Court finds that the objections to this and similar requests are not justified.").

RFAs 6, 7, 8, 10 and 11 all seek admissions on facts alleged in the Complaint which can – and should – be established early on to streamline discovery and the efficient presentation of proof at trial. The Government incorrectly argues that these RFAs do not "incorporate references to facts of this case." (Opp. at 18). RFA 6, for example, however, seeks an admission that royalty payments based on net sales "may be properly recorded as a selling expense under U.S. [GAAP.]" and the Complaint alleges that GLOCK accounts for its royalty payments as such under GAAP. Compl. at ¶¶ 35-36. Additionally, RFA 11 seeks an admission that an obligation to pay a royalty based on net sales "is not precipitated until after a sale" occurs, and the Complaint specifically alleges that GLOCK "neither incurs nor pays a royalty" "[a]bsent a completed sale . . ." *Id.* at 26.

Next, whether "a selling expense is a period cost" or "production costs do not include period costs" under GAAP (RFAs 7 and 8), and that the amount of a royalty based on net sales cannot be known until a sale occurs (RFA 10), are necessary facts which must be established for either party to argue over the dutiability of GLOCK's royalty payments. Further, these facts are indisputable, as the U.S. Department of Commerce and courts addressing tax disputes have both acknowledged[4] and logic dictates, and it is unreasonable to withhold admissions of these requests.

Finally, the Government now objects to only four terms used in certain RFAs that it contends are "accounting terms of art": "net sales," "period cost," "selling expense," and "production costs." (Opp. at 19). The Government has not cited any authority to support its refusal to answer a RFA on the basis of a term allegedly being "undefined" or a so-called "term[] of art." But even if it genuinely had no idea what those terms mean, the Government should have amended

---

[4] *See, e.g., Torrington Co. v. U.S.*, 146 F.Supp.2d 845, 880 (C.I.T. 2001) ("Commerce had explained . . . indirect selling expenses are fixed period costs that typically relate to all sales . . ."); *Proctor & Gamble Co. v. U.S.*, No. 1:05-cv-00355, 2007 WL 2994686, at *4 n.1 (S.D. Ohio Oct. 6, 2007) ("Period costs include marketing and selling expenses, distribution expenses, general and administrative expenses….").

-4-

its answers after GLOCK supplied definitions in response to its objections. (*See* Motion to Compel, Exhibit H (Doc. 18-8) at 5). Further undercutting the Government's argument that it does not understand these terms is the fact that they were used by CBP in HQ H304606. (*E.g.*, *id.* at 6). Moreover, CBP has used each of these terms hundreds of times collectively in its administrative rulings,[5] and "production cost" and "period cost" are used and defined in U.S.C. Title 19.[6] In sum, the Government does not need definitions of these terms to admit matters that will invariably narrow the issues in dispute in this litigation.

## II. THE COURT SHOULD ORDER THAT THE GOVERNMENT HAS WAIVED OBJECTIONS TO THE INTERROGATORIES AND MUST SUBSTANTIVELY RESPOND TO EACH.

The Government does not contest that it failed to assert objections to GLOCK's Interrogatories within 30 days as required by USCIT Rule 33(b), but it asks this Court to excuse its failure without articulating good cause for its untimeliness. (Opp. at 27-28). Instead, the Government argues that certain of the Interrogatories are purportedly improper.[7]

First, the Government argues that "Interrogatory Nos. 1, 3, 7 and 8 improperly seek a pure legal conclusion." (Opp. at 28). But those Interrogatories all seek answers concerning the application of law to the facts at issue in this case. *See* USCIT Rule 33(a)(2) ("interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact").

---

[5] The Custom Rulings Online Search System (https://rulings.cbp.gov/home, last accessed August 8, 2024) reveals that: (a) "net sales" appears in 116 rulings; (b) "period costs" appears in 26 rulings; (c) "selling expenses" appears in 110 rulings; and (d) "production costs" appears in 91 rulings.
[6] 19 U.S.C. § 1401a(f)(2)(D) (as "cost of production" and encompasses the definition provided in 19 U.S.C. § 4531(a)(25)), and "period cost" is defined in 19 U.S.C. § 4531(a)(25).
[7] The sole case on which the Government attempts to rely for this argument, *Walker v. Dorriety*, No. 1:20-CV-1007, 2022 WL 20209778 (M.D. Ala. Mar. 15, 2022), granted a motion to compel and held that the respondent waived objections when it failed to timely respond.

Next the Government argues that "Interrogatory Nos. 10, 11, 14, and 15 seek information relating to HQ H303606, which is not relevant to the claims in this *de novo* action." (Opp. at 28). However, it is not for the Government to unilaterally decide what discovery is relevant and this Court's *de novo* review does not eliminate GLOCK's entitlement to obtain discovery concerning a relevant CBP ruling. And information related to HQ H303606 is critically relevant because it addresses the Government's analysis of the dutiability of GLOCK's royalty payments. Consequently, information concerning HQ H303606 and the determinations made therein go to the very heart of the issues before this Court and are necessary and material to GLOCK's prosecution of its claims.

The Government then argues that Interrogatory Nos. "2, 4, 5, 12, and 13 seek information that is not relevant and disproportionate to the needs to [sic] of this case," but it does not explain why. (Opp. at 28). Again, it's not for the Government to determine what is relevant to GLOCK's case. Further, each of those Interrogatories seek specific relevant information, including how relevant expenses are to be treated and the interplay of tax regulations which apparently informed CBP HQ's determination of the dutiability of GLOCK's royalty payments. *See* HQ H303606.

Next, the Government contends it "responded to every interrogatory, and did not stand on any objections as a basis for not responding," (Opp. at 28), however its responses demonstrate otherwise. Six responses assert objections and state, "Defendant reserves the right to amend or supplement its response to this interrogatory should additional information obtained in discovery warrant it." (*See* Motion to Compel, Exhibit E (Doc. 18-5) at 4, 9, 11 and 12). Four responses assert objections and "directs attention to pages [] and [] of HQ H304606…" (*Id.* at 8-10). Further, the responses that were provided after objections are largely evasive or entirely non-responsive.

Finally, the Opposition makes no mention of Interrogatory Nos. 6, 16, 17 or 18 or why the Government should not be required to amend its deficient and non-responsive answers.

### III. THE COURT SHOULD OVERRULE THE GOVERNMENT'S OBJECTIONS TO THE RFPS AND ORDER FULL RESPONSES TO EACH.

In response to GLOCK's showing that the Government should be compelled to respond to its RFP's, the Government focuses on the "*de novo* nature of this action" (Opp. at 21). While GLOCK understands this matter is *de novo*, such has no bearing on GLOCK's entitlement to fulsome discovery concerning HQ H304606. While it is clear that the Government would like to distance itself from its incorrect ruling, this does not preclude GLOCK seeking discovery on the only information currently known to address the Government's position on the dutiability of sales-based royalties. Consequently, discovery of CBP's determinations and basis therefore made in connection with HQ H304606 are among the most relevant information possible that the Government has in its possession.[8]

While the Government contends that GLOCK bears the burden of proof of establishing its valuation methodology, this is not a basis for objecting to discovery. In fact, the cases that the Government cites for its "burden of proof" arguments all have nothing to do with discovery. A glaring example of this is the April 2, 2009 *Continental Teves, Inc. v. United States* Memorandum quoted on page 22 and attached as Exhibit 7 to the Opposition (Doc. 30-7), wherein the Court denied the plaintiff's request to file "further post-trial briefs." (*Id.* at 3).[9] GLOCK cannot possibly

---

[8] Perhaps realizing the baselessness of its position, the Government has agreed to "produc[e] the non-privileged documents contained in the ruling file for HQ H304606." (Opp. at 23). This concession belies the entirety of the Government's proffered justifications for its meritless objections to the RFAs, Interrogatories, and RFPs.

[9] *See also, e.g., United States v. Arnold Pickle & Olive Co.*, 659 F.2d 1049, 1052 (C.C.P.A. 1981) (reversing grant of partial summary judgment); *Diamax Hawaii, Ltd. v. United States*, 4 C.I.T. 162, 164 (1982) (opinion following a bench trial based on "the evidence adduced at trial and the arguments of the parties").

be expected to prove the appropriateness of its GAAP-compliant valuation methodology, and the Court cannot fully assess the issues in dispute at trial, if the Government is allowed to refuse to produce pertinent information by hiding behind post-trial legal arguments. All Parties and the Court will be hindered in determining the proper valuation of GLOCK's imported merchandise absent the Government's production of relevant information in its possession.

The Government then argues that the RFPs are overbroad because they seek "all" documents in certain categories. (Opp. at 23). GLOCK of course recognizes that "all" documents encompasses those that are obtained through the Government's reasonable search and not necessarily every single document under the sun. And despite arguing about the breadth of the requests, the Government responded without making any efforts to search for responsive documents.[10] Furthermore, while the Government also complains about a lack of a time period for the RFPs, it omits that the operative time period can be reasonably ascertained and that GLOCK requested coordination of a relevant time period, and even proposed a responsive time period. (*E.g.*, Motion to Compel, Exhibit K (Doc. 18-11) at 4). GLOCK reiterates its proposal that the responsive time period be January 1, 2015 through the present, which is intended to cover the time period of the Parties' years-long dispute that led to this lawsuit.

In terms of specific RFPs, the Government argues that RFPs "4, 5, 6, 17, 18, 19, 20, 21, 22, and 23 seek information that is not relevant to Glock's claims and is disproportionate to the needs of the case." (Opp. at 23). But those RFPs all seek basic information that goes to the very heart of this dispute: how customs valuation-related determinations are made. Indeed, squarely at

---

[10] While the Government complains that GLOCK used the phrase "relating to" in describing discovery sought (Opp. at 25), such language is common parlance in discovery requests. Notably, in recently served discovery in this matter, the Government itself seeks discovery from GLOCK on "factual matters **relating to** the allegations set forth in the Complaint…" (emphasis added).

issue in this lawsuit is how, and the correct manner, to "determine" each of the topics set forth in those RFPs. It therefore defies logic for the Government to contend that the documents sought by those RFPs are irrelevant or otherwise fail to satisfy the lenient standard governing the broad scope of permissible discovery. *See*, *e.g.*, *FDK Am., Inc. v. United States*, 973 F. Supp. 2d 1315, 1318 (C.I.T. 2014) ("Relevancy in discovery is to be construed broadly. . ."); *United Food & Com. Workers Union v. Chesapeake Energy Corp.*, No. CIV-09-1114-D, 2012 WL 32910, at *3 (W.D. Okla. Jan. 6, 2012) ("standard for determining whether information is relevant for purposes of pretrial discovery is substantially broader than the standard for relevance during trial").

The Government next argues that its responses to RFPs 8 through 15 "are justified" because "they seek documents that are not relevant to Glock's claims in this action." (Opp. at 26). Those RFPs seek email communications from accounts of eight specifically identified CBP personnel, and the scope of those RFPs are appropriately limited to information concerning GLOCK. While the Government references a desire to "narrow" those RFPs (Opp. at 27), it has offered no basis for doing so as those RFPs are not burdensome or complex. Indeed, they are simple, fair, and reasonable. Any emails identified from those custodians with respect to GLOCK will almost certainly be relevant to this action because they are known to have been involved in this valuation dispute, and the Government does not contend otherwise.[11]

---

[11] The Government claims that it "did not have sufficient information" at the time of its responses to "narrow the request to identify relevant communications," (Opp. at 27) however, the Government was already in possession of the exact documents that it claims to have needed, as early as March of 2023 when GLOCK submitted a comprehensive stipulation proposal to the Government's counsel. CBP is also in possession of the entry documents detailed in the Complaint and CBP HQ's files. Furthermore, GLOCK's confidential documents could not have been produced earlier because the Government refused to stipulate to a protective order, thereby necessitating unilateral motion practice by GLOCK (Doc. 17).

**IV.   THE COURT SHOULD AWARD GLOCK ITS REASONABLE ATTORNEYS' FEES AND EXPENSES.**

As the Opposition concedes, USCIT Rules "provide that the Court '*shall*' award" attorneys "fees and costs to the prevailing party on" a "motion to compel." (Opp. at 28 (emphasis added)). And as the Government further admits, if the Court grants the Motion to Compel, it must award GLOCK its attorneys' fees unless the Government's responses were "substantially justified." (*Id.* at 29). Here, the Government's objections have served to deprive GLOCK of discovery to which it is rightfully entitled and which it needs to prosecute this case and prove its claims. The Government's positions in opposition to the Motion to Compel confirm that its objections are not substantially justified, and the unfairness of GLOCK having to pursue motion practice supports awarding GLOCK its reasonable attorneys' fees and costs.

**CONCLUSION**

WHEREFORE, Plaintiff GLOCK, Inc. respectfully requests that this Court enter the proposed order attached to the Motion to Compel and grant such other and further relief as the Court deems appropriate and just.

Dated: White Plains, New York
August 12, 2024

Respectfully submitted,

**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, New York 10601
Telephone: (914) 285-0700

By: */s/ Peter V. Malfa*
JOHN F. RENZULLI
PETER V. MALFA

-and-

**SANDLER, TRAVIS & ROSENBERG, P.A.**
JASON M. KENNER
675 Third Avenue, Suite 1805-06
New York, New York 10017
Telephone: (212) 549-0137

*Attorneys for Plaintiff*