Slip Op. 24-106

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **GLOCK, INC.,** | |
| **Plaintiff,** | **Before: Jennifer Choe-Groves, Judge** |
| **v.** | **Court No. 23-00046** |
| **UNITED STATES,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

[Granting in part and denying in part Plaintiff's Motion to Deem Admitted its Requests for Admission and Compel Other Discovery Responses from Defendant.]

Dated: October 4, 2024

<u>John F. Renzulli</u> and <u>Peter V. Malfa</u>, Renzulli Law Firm, LLP, of White Plains, N.Y., and <u>Jason M. Kenner</u>, Sandler, Travis & Rosenberg, PA, of New York, N.Y., for Plaintiff Glock, Inc.

<u>Justin R. Miller</u>, Attorney-in-Charge, and <u>Marcella Powell</u>, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M. McCarthy</u>, Director. Of counsel was <u>Taylor Bates</u>, Attorney, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection. <u>Monica P. Triana</u> also appeared.

Choe-Groves, Judge: Plaintiff Glock, Inc. ("Plaintiff" or "Glock") brings

this action to contest the liquidation, appraisement, and valuation by U.S. Customs

and Border Protection ("Customs") of a single entry of pistol component parts

imported as kits.  Compl., ECF No. 7.  Before the Court is Plaintiff's Motion to

Deem Admitted its Requests for Admission and Compel Other Discovery

Responses from Defendant.  Pl.'s Mot. Deem Admitted Reqs. Admis. & Compel

Other Disc. Resps. Def. ("Plaintiff's Motion" or "Pl.'s Mot."), ECF No. 18.

Plaintiff seeks an order (1) deeming Plaintiff's First Requests for Admissions

Directed to Defendant ("Plaintiff's Requests for Admissions") admitted by

Defendant United States ("Defendant"), (2) striking Defendant's objections to

Plaintiff's First Interrogatories Directed to Defendant ("Plaintiff's Interrogatories")

as untimely, (3) overruling Defendant's objections to Plaintiff's First Requests for

Production of Documents and Things Directed to Defendant ("Plaintiff's Requests

for Production") and Plaintiff's Interrogatories, (4) directing Defendant to respond

to Plaintiff's Requests for Production and Plaintiff's Interrogatories, and

(5) awarding attorneys' fees. Id.; see also Pl.'s Mot. at Ex. A ("Pl.'s Reqs.

Produc."), ECF No. 18-1; Pl.'s Mot. at Ex. B ("Pl.'s Interrog."), ECF No. 18-2;

Pl.'s Mot. Ex. C ("Pl.'s Reqs. Admis."), ECF No. 18-3.  Defendant filed

Defendant's Response to Plaintiff's Motion to Deem Admitted its Requests for

Admission and Compel Other Discovery Responses.  Def.'s Resp. Pl.'s Mot. Deem

Admitted Reqs. Admis. & Compel Other Disc. Resps. ("Defendant's Response" or

"Def.'s Resp."), ECF No. 34.  Plaintiff filed Plaintiff's Reply in Support of its

Motion to Deem Admitted its Requests for Admission and Compel Other

Discovery Responses from Defendant.  Pl.'s Reply Supp. Mot. Deem Admitted Reqs. Admis. & Compel Other Disc. Resps. Def. ("Plaintiff's Reply" or "Pl.'s Reply"), ECF No. 36.  For the below discussed reasons, Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is a United States company that produces Glock pistols.  Compl. ¶ 1.  Plaintiff manufactures certain models of pistols from domestically manufactured components and assembles other models using imported components produced by foreign manufacturers.  Id.  The Glock trademarks were and are owned by Value Privatstiftung ("Value"), a private foundation formed under Austrian law.  Id. ¶ 18.  Plaintiff is a party to a licensing agreement with Value for the exclusive right to the commercial use of the Glock trademark in the United States.  Id. ¶ 19–20.  Under the licensing agreement, Plaintiff pays royalties to Value based on the net sales of licensed products.  Id. ¶ 21–24.

The subject merchandise entered at the Port of Atlanta, Georgia on November 10, 2021.  Id. ¶ 3.  At the time of entry, Plaintiff appraised the subject merchandise on the basis of deductive value, in accordance with 19 U.S.C. § 1401a(d)(2)(A)(iii), relying on the value of the subject merchandise after assembly in the United States.  Id. ¶ 29.  Plaintiff included the royalty value paid to Value as part of the dutiable value in its appraisal.  Id.  Customs valued the entry as

entered and did not apply a deduction for Plaintiff's royalty payments.  Id. ¶ 30.

Plaintiff filed a protest challenging Customs' valuation, which was deemed denied

by operation of law.  Id. ¶ 4.  Plaintiff filed this action challenging the denied

protest on March 1, 2023.  Summons, ECF No. 1.

     The Court entered a Scheduling Order on March 26, 2024, establishing a

schedule for discovery.  Order (Mar. 26, 2024), ECF No. 15.  Plaintiff served

Plaintiff's Requests for Production and Plaintiff's Interrogatories on March 27,

2024.  Pl.'s Reqs. Produc.; Pl.'s Interrog.  Plaintiff served Plaintiff's Requests for

Admissions on April 2, 2024.  Pl.'s Reqs. Admis.  Defendant provided its

Response to Plaintiff's First Requests for Admissions ("Defendant's Requests for

Admissions Response") on May 2, 2024.  Pl.'s Mot. at Ex. G ("Def.'s Reqs.

Admis. Resp."), ECF No. 18-7.  By letter of May 8, 2024, Plaintiff notified

Defendant that Plaintiff considered Defendant's Requests for Admissions

Response to be deficient.  Id. at Ex. H ("Pl.'s Reqs. Admis. Resp."), ECF No. 18-8.

Plaintiff sent an email to Defendant on May 13, 2024, in which Plaintiff agreed to

extend the deadline for Defendant to respond to Plaintiff's Requests for Production

and Plaintiff's Interrogatories, "excluding objections which were waived pursuant

to USCIT Rule 33(b)(4)."  Id. at Ex. F at 2–3, ECF No. 18-6.  Defendant

responded to Plaintiff's email on May 15, 2024 and expressed its belief that the

Parties had agreed to extend the deadline for Defendant to respond to Plaintiff's

Requests for Production and Plaintiff's Interrogatories to May 28, 2024. Id. at 1.

Defendant provided its Responses to Plaintiff's First Requests for Production of

Documents ("Defendant's Requests for Production Response") and Responses to

Plaintiff's First Interrogatories Directed to Defendant ("Defendant's Interrogatories

Response") on May 28, 2024, which included objections. Id. at Ex. D ("Def.'s

Reqs. Produc. Resp."), ECF No. 18-4; id. at Ex. E ("Def.'s Interrog. Resp."), ECF

No. 18-5. By letter of June 4, 2024, Plaintiff notified Defendant that it considered

Defendant's Requests for Production Response and Defendant's Interrogatories

Response deficient. Id. at Ex. K ("Pl.'s June 4 Letter"), ECF No. 18-11.

Plaintiff's Motion was filed on June 20, 2024. Pl.'s Mot.

## JURISDICTION

The U.S. Court of International Trade has jurisdiction pursuant to 28 U.S.C.

§ 1581(a), which grants the Court authority over claims contesting a denial of a

protest under 19 U.S.C. § 1514 by Customs. The Court reviews the agency's

determination based on the record made before the Court. 28 U.S.C. § 2640(a).

## LEGAL STANDARD

The USCIT Rules allow for parties to serve on any other party

interrogatories; requests for production of documents, electronically stored

information, and tangible things; and requests for admissions. USCIT R. 33, 34,

36.  Such discovery requests must be consistent with USCIT Rule 26(b), which

limits discovery to:

> any nonprivileged matter that is relevant to any party's claim or defense
> and proportional to the needs of the case, considering the importance of
> the issues at stake in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties' resources, the
> importance of discovery in resolving the issues, and whether the burden
> or expense of the discovery outweighs its likely benefit.

USCIT R. 26(b).  "Relevancy in discovery is to be construed broadly, subject only

to certain limitations."  FDK Am., Inc. v. United States, 38 CIT 462, 465, 973 F.

Supp. 2d 1315, 1318 (2014) (citing Hickman v. Taylor, 329 U.S. 495, 507–08

(1947)).  If a party fails to answer an interrogatory submitted under USCIT Rule 33

or to produce documents as requested under USCIT Rule 34, the party seeking

discovery may move for an order compelling an answer, designation, production,

or inspection.  USCIT R. 37(a)(2)(B).  If a party fails to admit a request for

admission under USCIT Rule 36 that is later proven to be genuine or true, the

requesting party may move to recover reasonable expenses incurred in making the

proof.  USCIT R. 37(c)(2).  Because USCIT Rules 33, 34, 36, and 37 are

substantively identical to Federal Rules of Civil Procedure 33, 34, 36, and 37, the

Court treats interpretations of the corresponding Federal Rules as persuasive.

USCIT R. 1; compare USCIT R. 33, 34, 36, and 37 with Fed. R. Civ. P. 33, 34, 36,

and 37.

## DISCUSSION

### I.    Plaintiff's Requests for Admissions

Plaintiff served the following requests for production on Defendant:

1.    Admit that [Customs] defines "generally accepted accounting principles" in accordance with 19 C.F.R. § 152.102(c)(1), which states that the phrase "refers to any generally recognized consensus or substantial authoritative support regarding which economic resources and obligations should be recorded as assets and liabilities; which changes in assets and liabilities should be recorded; how the assets and liabilities and changes in them should be measured; what information should be disclosed and how it should be disclosed; and which financial statements should be prepared."

2.    Admit that the accounting rules, standards, and procedures issued by the Financial Accounting Standards Board (FASB) are "generally accepted accounting principles" within the meaning of 19 C.F.R. § 152.102(c)(1).

3.    Admit that the accounting rules, standards, and procedures issued by the Governmental Accounting Standards Board (GASB) are "generally accepted accounting principles" within the meaning of 19 C.F.R. § 152.102(c)(1).

4.    Admit that 19 U.S.C. § 1401a(d)(3)(B)(i) obligates [Customs] to accept an importer's determination of usual profit and general expenses under the provisions of deductive value when the determination is carried out utilizing information prepared in a manner consistent with Generally Accepted Accounting Principles in the United States.

5.    Admit that if Glock correctly determined cost allocations in accordance with U.S. Generally Accepted Accounting Principles, [Customs] is prohibited from substituting Glock's allocation methodology with its own allocation methodology.

6.    Admit that a royalty payment that is based on a percentage of the net sales of a product(s) may properly be recorded as a selling expense under U.S. Generally Accepted Accounting Principles.

7.    Admit that under U.S. Generally Accepted Accounting Principles, a selling expense is a period cost.

8.    Admit that under U.S. Generally Accepted Accounting Principles, production costs do not include period costs.

9.    Admit that [Customs] substituted Glock's cost accounting methodology with its own methodology when it denied Protest No. 1704-22-05518 and assessed duty on Glock's royalty payment.

10.    Admit that the amount of a royalty payment that is based on a percentage of the net sales of a product(s) cannot be known until after the product(s) is sold.

11.    Admit that the obligation to pay a royalty that is based on net sales of a product(s) is not precipitated until after a sale of the product(s).

Pl.'s Reqs. Admis.

Plaintiff contends that Defendant's Requests for Admissions Response is "woefully deficient" and that Defendant's objections are frivolous.  Pl.'s Mot. at 6–9.  Plaintiff argues that Defendant is attempting to hinder discovery and that the Court should rule each of Plaintiff's requests admitted.  Id. at 9.  In response, Defendant contends that its responses are appropriate and that several of the requests for admission are improper.  Def.'s Resp. at 13–19.

USCIT Rule 36 governs requests for admission and permits a party to serve requests for admission on another party concerning "the truth of any matters within

the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or

opinions about either and (B) the genuineness of any described documents."

USCIT R. 36(a)(1).  When responding to a request for admission:

> If a matter is not admitted, the answer must specifically deny it or state
> in detail why the answering party cannot truthfully admit or deny it.  A
> denial must fairly respond to the substance of the matter; and when
> good faith requires that a party qualify an answer or deny only a part of
> a matter, the answer must specify the part admitted and qualify or deny
> the rest.    The answering party may assert lack of knowledge or
> information as a reason for failing to admit or deny only if the party
> states that it has made reasonable inquiry and that the information it
> knows or can readily obtain is insufficient to enable it to admit or deny.

USCIT R. 36(a)(4).  If a responding party objects to a request for admission, it

must clearly state the grounds for the objection.  USCIT R. 36(a)(5).  If the

requesting party believes the responses or objections provided to be insufficient or

inappropriate, it may "move to determine the sufficiency of an answer or

objection."  USCIT R. 36(a)(6).  If the responding party's objection is determined

to be unjustified, the Court must order an answer to be served.  Id.  If a responding

party's answer is insufficient under the rules, the Court may order the request for

admission to be admitted or that an amended answer be served.  Id.

     The purpose of USCIT Rule 36, and the corresponding Federal Rule of Civil

Procedure 36, is to expedite trial by "eliminating the necessity of proving

essentially undisputed and peripheral issues" and narrowing the remaining issues

for trial.  Beker Indus. Corp. v. United States, 7 CIT 361, 362 (1984); see also Fed.

R. Civ. P. 36 advisory committee's note to 1970 amendment ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.").  The rule is not a tool to force or trick an opposing party into conceding an essential element of a case.  United States v. Greenlight Organic, Inc., 46 CIT __, __, 542 F. Supp. 3d 1409, 1414 (2021).

Defendant objects to each of Plaintiff's Requests for Admission.  Def.'s Reqs. Admis. Resp.; see also Pl.'s Reqs. Admis.  Defendant's objections fall into three categories: (A) legal conclusions and legal issues that do not involve application of law to the facts of the case, (B) reliance on undefined or vague terms, and (C) use of hypotheticals.

## A.      Pure Legal Conclusions and Legal Issues

Defendant objects to Plaintiff's Requests for Admissions one, two, three, four, five, six, seven, eight, ten, and 11 as "pure legal conclusion[s] or legal issue[s]" that "[do] not involve the application of law to fact or facts."  Def.'s Reqs. Admis. Resp. at 1–4.  "[A] request for admission is not objectionable even if [it] require[s] opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case.  [Conversely, r]equests to admit pure conclusions of law unrelated to facts in the case are objectionable."  See Kansas City Power &

Light Co. v. United States, 132 Fed. Cl. 28, 34 (2017) (alteration in original)
(internal quotation omitted) (interpreting Rule 36(a) of the Rules of the U.S. Court
of Claims, which is identical to Federal Rule of Civil Procedure 36(a) and USCIT
Rule 36(a)); see also Thompson v. Beasley, 309 F.R.D. 236, 241 (N.D. Miss.
2015) ("While the rule allows a party to request an admission of the application of
law to fact, requests for purely legal conclusions . . . are generally not permitted."
(internal quotations and citation omitted)); Stark-Romero v. Nat. R.R. Passenger
Co. (Amtrak), 275 F.R.D. 551, 553–54 (D.N.M. 2011) (observing that Federal
Rule of Civil Procedure 36(a) permits requests applying law to fact, but "one party
cannot demand that the other party admit the truth of a legal conclusion" (citations
omitted)).  It is permissible for a request to seek an admission as to how a
particular legal source applies to a specific given set of facts.  See Miller v.
Holzmann, 240 F.R.D. 1, 5 (D.D.C. 2006).

        All of Plaintiff's Requests for Admissions, except numbers five and nine,
seek a conclusion or opinion of law without connecting the request to the particular
facts of this case.  Requests for Admission one through four each involve an
interpretation or application of 19 C.F.R. § 152.102(c)(1), which defines "generally
accepted accounting principles."  Pl.'s Reqs. Admis. at 1–2; 19 C.F.R.
§ 152.102(c)(1).  Requests for Admission six, seven, and eight seek admissions of
how generally accepted accounting principles might be applied in the abstract.  Id.

Requests for Admission ten and eleven ask Defendant to make admissions regarding when royalty obligations attach and when the amount of such obligations can be determined without reference to a specific contract or the circumstances of a particular royalty arrangement.  Id. at 4.  Each of these requests involves a conclusion or opinion on a legal obligation derived from statute, regulation, or contract.  Plaintiff has connected none of these requests to the specific facts and circumstances of this case.

Defendant's objection to Request for Admission five is the lone outlier in that it relies on the application or interpretation of the law to the specific facts of the dispute.  Request for Admission five reads: "Admit that if Glock correctly determined cost allocations in accordance with U.S. Generally Accepted Accounting Principles, [Customs] is prohibited from substituting Glock's allocation methodology with its own allocation methodology."  Pl.'s Reqs. Admis. at 3.  Because this case involves a dispute over the valuation methodologies proposed by Glock and adopted by Customs, this request is sufficiently tied to the facts of the case.

The Court sustains Defendant's objections to Requests for Admission one, two, three, four, six, seven, eight, ten and 11 on the grounds that they improperly seek conclusions of law.  The Court overrules Defendant's objection to Request for Admission five.

### B.    Undefined or Vague Terms

Defendant objects to Plaintiff's Requests for Admissions two through 11 for including "undefined, vague, and ambiguous" terms.  Def.'s Reqs. Admis. Resp. at 1–4.  A request for admission must be sufficiently unambiguous to allow for the responding party to easily admit or deny the request.  See Henry v. Champlain Enter., Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003) ("Requests for Admissions should be drafted in such a way that a response can be rendered upon a mere examination of the request."); Booth Oil Site Admin. Grp. v. Safety-Kleen Corp., 194 F.R.D. 76, 79 (W.D.N.Y. 2000) ("Ambiguous and vague requests which cannot be fairly answered will not be enforced."); Johnstone v. Cronlund, 25 F.R.D. 42, 45 (E.D. Pa. 1960) ("[W]e observe that if a party is compelled to answer vague and indefinite questions capable of more than one interpretation, and which in fairness to either party require an explanation, then one of the purposes of the rules is immediately thwarted, since at the trial a great deal of the necessary time devoted to determining the issue would be taken up with explanations of answers to improper questions.").  The party responding to a request for admission is expected to use reason and common sense in interpreting the meaning of phrases, assume common and reasonable definitions, and, if necessary, attempt to obtain clarification of the questioned term.  See Lopez v. Don Herring Ltd., 327 F.R.D. 567, 580 (N.D. Tex. 2018).

None of the terms objected to by Defendant are so ambiguous or vague as to make the requests unintelligible or a response impossible. Defendant objects to the terms "accounting rules, standards, and procedures" in Requests for Admission two and three, despite Plaintiff defining the terms as the rules, standards, and procedures promulgated by the Financial Accounting Standards Board and the Governmental Accounting Standards Board. Def.'s Reqs. Admis. Resp. at 1–2. Defendant objects to the use of the term "Generally Accepted Accounting Principles" in Requests for Admission four, five, seven, and eight. Id. at 2–3. "Generally Accepted Accounting Principles" is defined under Customs' regulation and is a commonly used and understood term in trade law. See 19 C.F.R. § 152.102(c) (defining "Generally Accepted Accounting Principles"). Defendant objects to the terms "Glock's allocation methodology" in Request for Admission five and "Glock's cost accounting methodology" in Request for Admission nine. Def.'s Reqs. Admis. Resp. at 2–3. The meaning of these terms could be determined from the context of the underlying administrative dispute or through a request for clarification from Plaintiff. The remaining objections are to words and phrases commonly used in the context of trade or the everyday parlance of an average person: "obligates," "usual profit and general expenses," "royalty payment," "percentage of the net sales," "product," "selling expense," "period cost," "production costs," "royalty," "net sales," and "precipitated." Id. at 2–4.

Plaintiff also provided definitions for these terms in response to Defendant's objections.  <u>See</u> Pl.'s Reqs. Admis. Resp.

None of the challenged terms are so vague or ambiguous as to prevent Defendant from making a good faith effort to respond to the Requests for Admission.  Defendant could have responded assuming the obvious or common usage of the terms.  If there existed actual ambiguity that affected Defendant's ability to answer, Defendant could have provided a qualified response.  The Court overrules Defendant's objections to Plaintiff's Requests for Admission based on terms being "undefined, ambiguous, or vague."

### C.    Hypotheticals

Defendant objects to Plaintiff's Requests for Admissions five, six, ten, and 11 as relying on improper hypotheticals.  Def.'s Reqs. Admis. Resp. at 1–4.  USCIT Rule 36 permits a party to serve on another party a request for admission relating to "facts, the application of law to facts, or opinions about either."  USCIT R. 36(a)(1).  Hypothetical factual scenarios unrelated to the underlying facts of a case are not appropriate in the context of a request for admission.  <u>See</u> <u>Abbott v. United States</u>, 177 F.R.D. 92, 93 (N.D.N.Y. 1997).  Request of Admission six reads: "[a]dmit that a royalty payment that is based on a percentage of the net sales of a product(s) may properly be recorded as a selling expense under U.S. Generally Accepted Accounting Principles."  Pl.'s Reqs. Admis. at 3.  Request for Admission

ten reads: "[a]dmit that the amount of a royalty payment that is based on a percentage of the net sales of a product(s) cannot be known until after the product(s) is sold." Id. at 4. Request for Admission 11 reads: "[a]dmit that the obligation to pay a royalty that is based on net sales of a product(s) is not precipitated until after a sale of the product(s)." Id. None of these requests pose improper hypothetical scenarios, but, rather, seek Defendant's opinions regarding the application of the law to alleged facts. Request for Admission five, which reads: "[a]dmit that if Glock correctly determined cost allocations in accordance with U.S. Generally Accepted Accounting Principles, [Customs] is prohibited from substituting Glock's allocation methodology with its own allocation methodology," does present a hypothetical scenario. Id. at 3. Such request to "admit that if a certain factual situation is found to exist, a certain legal outcome results . . . is precisely the kind of request contemplated by Rule 36(a)." Wagner v. St. Paul Fire & Marine Ins. Co., 238 F.R.D. 418, 423−24 (N.D. W. Va. 2006); see also In re Rail Freight Fuel Surcharge Antitrust Litig., 281 F.R.D. 1, 11 (D.D.C. 2011). Defendant's objections to Plaintiff's Requests for Admissions as improper hypotheticals are overruled.

    In summary, the Court sustains one of Defendant's objections to Requests for Admission one, two, three, four, six, seven, eight, ten, and 11. The Court overrules all of Defendant's objections to Requests for Admission five and nine.

In responding to Request for Admission nine, Defendant denied the request, not

withstanding its objections.  Defendant is now ordered to respond to Plaintiff's

Request for Admission five.

## II.     Plaintiff's Interrogatories

Plaintiff served the following interrogatories on Defendant:

1.     What does [Customs] contend is the meaning of "addition usually made for profit and general expenses" as the phrase is used in 19 U.S.C. § 1401a(d)(3)(A)(i) and 19 C.F.R. § 152.105(d)(1)?

2.     Explain in detail what factors [Customs] considers when determining whether expenses other than trademark royalties and licensing fees are an "addition usually made for profit and general expenses" deductible from dutiable value under 19 U.S.C. § 1401a(d)(3)(A)(i) and 19 C.F.R. § 152.105(d)(1)?

3.     Does CBP contend that the phrase "addition usually made for profit and general expenses" as used in 19 U.S.C. [§] 1401a(d)(3)(A)(i) and 19 C.F.R. § 152.105(d)(1) excludes all trade dress and non-trade dress trademark royalties and/or licensing fees?

4.     If the answers to Interrogatory 3 above is "no," explain in detail what factors [Customs] considers when determining whether or not a trade dress and/or a non-trade dress trademark royalty and/or licensing fee is an "addition usually made for profit and general expenses" under 19 U.S.C. [§] 1401a(d)(3)(A)(i) and 19 C.F.R. § 152.105(d)(1).

5.     If the answer to Interrogatory 3 above is "yes," please explain the basis for your contention and identify all sources reviewed and/or relied upon including but not limited to internal [Customs] manuals or guidelines, statutes, case law, regulations, explanatory notes, ruling letters, informed compliance publications, articles, books or other texts, or any other information.

6.    Does [Customs] contend that any of the factors detailed in response to Interrogatory 4 are dispositive, if so, list all factors that [Customs] believe are dispositive of whether a royalty and/or licensing fee is dutiable under deductive value.

7.    What does [Customs] contend is the meaning of "use in commerce" as the phrase is used in 15 U.S.C [§] 1127?

8.    Does [Customs] contend that the assembly of the merchandise at issue without a subsequent sale constitutes "use in commerce" of the trade dress trademarks as that phrase is used in 15 U.S.C [§] 1127?  If yes, please explain in full and provide all sources consulted, reviewed and/or relied upon in responding including but not limited to statutes, case law, regulations, journals, articles, books, persons, or any other information or source.

9.    Identify all persons involved in researching, drafting, authorizing, consulting on, and/or issuing HQ Ruling HQ H304606, dated June 24, 2021, and identify their role.

10.    Explain, in detail, the complete factual basis for Defendant's decision in HQ H304606 that the royalty payments made by Glock and referenced in HQ H304606 are costs related to the production or assembly of the imported pistol kits.

11.    Explain, in detail, the complete legal basis for Defendant's decision in HQ H304606 that the royalty payments made by Glock and referenced in HQ H304606 are dutiable including identifying all sources consulted, reviewed and/or relied upon including but not limited to statutes, case law, regulations, journals, articles, books, persons, or any other information or source.

12.    Does [Customs] contend that Internal Revenue Service regulations are relevant to [Customs'] determination of whether an expense is an "addition usually made . . . profit or general expense" under Section [§] 1401a(d)(3)(A)(i)?  If the answer is anything other than an unqualified no, please identify all support for this response including statutes, regulations, ruling letters, etc.

13.    Identify any and all instances where [Customs] applied, consulted, or relied upon Internal Revenue Service regulations or Treasury Decisions in determining proper customs valuation, whether in Ruling letters or otherwise.

14.    Explain, in detail, the complete factual basis for Defendant's statement in HQ H304606 that "[w]ithout the right to use the trade dress trademarks, the importer could not assemble the [pistols] in the United States without infringing the registered trademarks in violation of the Lanham act" (Ruling at 10–11) including identifying the source of each fact.

15.    Explain, in detail, the complete legal basis for Defendant's statement in HQ H304606 that "[w]ithout the right to use the trade dress trademarks, the importer could not assemble the [pistols] in the United States without infringing the registered trademarks in violation of the Lanham act" (Ruling at 10–11) including all sources reviewed and/or relied upon in making the statement including but not limited to statutes, case law, regulations, journals, articles, books or any other information.

16.    Does [Customs] contend that any patented processes are used in the assembly of pistols from the imported Kits at issue.  If the answer is yes, please explain the basis of the Government's contention.

17.    Does [Customs] contend that Glock could not buy the pistol kits without paying the royalty?  If the answer to this Interrogatory is yes, please explain the basis of the Government's contention.

18.    How, if at all, does [Customs] differentiate between "assembly" and "manufacturing" with respect to operations performed on merchandise after importation.

Pl.'s Interrog. at 3–6.  Plaintiff contends that Defendant waived its objections to

Plaintiff's Interrogatories by failing to provide a response on or before the deadline

established under the Court's rules.  Pl.'s Mot. at 9–10; Pl.'s Reply at 5–7.

Plaintiff further argues that if Defendant's objections are not waived, they should

be overruled and Defendant should be required to respond to Plaintiff's

Interrogatories.  Pl.'s Mot. at 10–12.  Defendant does not dispute that its responses

were untimely, but argues that even if its objections are deemed waived, the Court

has discretion to deny a motion to compel responses to Plaintiff's Interrogatories

that are improper.  Def.'s Resp. at 27–28.

       USCIT Rule 33(b)(2) provides that a "responding party must serve its

answers and any objections within 30 days after being served with the

interrogatories."  USCIT R. 33(b)(2).  A party's failure to respond to discovery

requests by the deadline imposed under the applicable rules can result in the waiver

of the party's ability to raise objections.  See Richmark Corp. v. Timber Falling

Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) (citing Davis v. Fendler, 650

F.2d 1154, 1160 (9th Cir. 1981)) ("It is well established that a failure to object to

discovery requests within the time required constitutes a waiver of any

objection."); see also Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co., 238

F.R.D. 536, 538 (D. Conn. 2006) ("A party who fails to file timely objections

waives all objections."); Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 187 F.R.D.

528, 529 (E.D. Pa. 1999) ("[W]hen a party fails to serve objections to

interrogatories and/or document requests within the time required, in absence of

good cause or of an extension of time to do so, they have generally waived the

right to raise objections later."). The court may excuse a party's failure to timely respond if good cause is shown. USCIT R. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

Plaintiff served Plaintiff's Interrogatories on March 27, 2024. Pl.'s Interrog. Under the Court's rules, Defendant was required to serve its responses and objections on or before April 26, 2024. USCIT R. 33(b)(2). Defendant did not request an extension of the response deadline before the deadline had expired. Through an email of May 13, 2024, Plaintiff notified Defendant:

> With regards to the government's responses to [Plaintiff's Requests for Production] and [Plaintiff's Interrogatories], we again note that the government has failed to serve any responses to-date. While we understand that you requested an extension of time—albeit after the response deadline passed—we note that Glock has not yet agreed to an extension of time. Nevertheless, in a good faith attempt to move the matter forward, we agree to an extension for the [Plaintiff's Requests for Production] responses until May 27, 2024, and the same extension for the government's answers to [Plaintiff's] Interrogatories, excluding objections which were waived pursuant to USCIT Rule 33(b)(4).

Pl.'s Mot. at Ex. F. Defendant responded on May 15, 2024, "[T]hank you for providing the extension of time until May 27th for the responses to [P]laintiff's requests for production of documents and interrogatories. May 27th is Memorial Day. Thus, we presume that [P]laintiff meant May 28th. We will provide the responses that are complete by that date." Id. Defendant served Defendant's

Interrogatories Response, including objections, on May 28, 2024.  Def.'s Interrog.

Resp.

It is undisputed that Defendant did not respond to Plaintiff's Interrogatories

by the deadline under the applicable rules.  The Court begins its inquiry, therefore,

with whether the Parties agreed to extend the response deadline.  In its May 13,

2024 email, Plaintiff offered to extend the deadline for responses "excluding

objections which were waived pursuant to USCIT Rule 33(b)(4)."  Id.  This

language indicates that Plaintiff's willingness to agree to the extension was

conditioned on the understanding that Defendant had already waived objections.

In accepting the extension offer, Defendant did not oppose or reject Plaintiff's

condition.  Id.  The Court finds that the Parties did not agree to extend the deadline

for Defendant to object to Plaintiff's Interrogatories and concludes that the

objections included in Defendant's Interrogatories Response were untimely.

Having determined the objections to be untimely, the Court considers

whether good cause exists to excuse Defendant's failure to respond timely.  USCIT

R. 33(b)(4).  Prohibiting a party from raising legitimate objections is a severe

sanction and should only be imposed to remedy bad conduct or intentional efforts

to impair the proceedings.  See Ritacca v. Abbott Lab'ys, 203 F.R.D. 332, 335

(N.D. Ill. 2001) ("Minor procedural violations, good faith attempts at compliance,

and other such mitigating circumstances militate against finding waiver.  In

contrast, evidence of foot-dragging or cavalier attitude towards following court orders and discovery rules supports finding waiver." (internal citation omitted)).

In this case, Defendant responded to Plaintiff's Interrogatories one month after the deadline. Defendant only requested an extension retroactively after the deadline had passed, suggesting carelessness and a lack of appropriate due diligence. Defendant also failed to offer any explanation or justification for its inability to meet the deadline or its delay in requesting an extension. See Starlight Int'l, Inc. v. Herlihy, 181 F.R.D. 494, 496–97 (D. Kan. 1998). No good cause exists for excusing Defendant's failure to timely object. The Court concludes that Defendant waived its objections to Plaintiff's Interrogatories.

Plaintiff moves the Court to compel Defendant to respond to Plaintiff's Interrogatories. Pl.'s Mot. at 10. Defendant argues that it "responded to every interrogatory, and did not stand on any objections as a basis for not responding." Def.'s Resp. at 28. Defendant also contends that Plaintiff's Interrogatories one, two, three, four, five, seven, eight, ten, 11, 12, 13, 14, and 15 were improper. Id. Defendant did not challenge the propriety of Plaintiff's Interrogatories six, nine, 16, 17, and 18 in its response. See id. Plaintiff counters that the responses provided by Defendant were non-responsive, evasive, or inappropriate. Pl.'s Reply at 6–8.

Defendant contends that Plaintiff's Interrogatories one, three, seven, and eight improperly seek legal conclusions.  Def.'s Resp. at 28.  Plaintiff's Interrogatories one, three, and seven each ask for the meaning given by Customs to specific statutory language.  Pl.'s Interrog. at 3–4.  USCIT Rule 33(a)(2) provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  USCIT R. 33(a)(2).  Plaintiff's Interrogatories one, three, and seven do not ask Defendant how the identified terms have been applied in past cases or how they were applied to the facts of this case.  Instead, they seek definitions and interpretations in the abstract.  Because Plaintiff's Interrogatories one, three, and seven are inquiries into pure legal matters, they are inappropriate and the Court will not compel a response.  Conversely, Plaintiff's Interrogatory eight asks "[d]oes [Customs] contend that the assembly of the merchandise at issue without a subsequent sale constitutes 'use in commerce' of the trade dress trademarks as that phrase is used in 15 U.S.C [§] 1127" and then requests Customs' support of its position.  Pl.'s Interrog. at 4.  This interrogatory asks for a legal opinion connected to the specific facts of the case and the basis for Customs' position.  Plaintiff's Interrogatory eight is appropriate.

Defendant contends that Plaintiff's Interrogatories ten, 11, 14, and 15 seek irrelevant information relating to Customs Headquarters Ruling H304606.  Def.'s

Resp. at 28.  "Relevancy in discovery is to be construed broadly, subject to certain limitations."  <u>FDK Am., Inc.</u>, 38 CIT at 465, 973 F. Supp. 2d at 1318.  Plaintiff asserted in its Complaint that it appraised the subject merchandise in accordance with its understanding of Headquarters Ruling H304606.  Compl. ¶ 29.  Plaintiff's Interrogatories ten, 11, 14, and 15 are sufficiently relevant for purposes of discovery.

Defendant argues that Plaintiff's Interrogatories two, four, five, 12, and 13 seek information that is irrelevant and disproportionate to the needs of this case. Def.'s Resp. at 28.  Plaintiff's Interrogatories two and four ask what factors are considered by Customs in making determinations.  Pl.'s Interrog. at 3.  Plaintiff's Interrogatory five asks Defendant to explain its positive response to a prior interrogatory and to identify what sources are considered by Customs in making a determination.  <u>Id.</u>  Plaintiff's Interrogatories 12 and 13 seek information on Customs' use of Internal Revenue Service regulations in determining valuation. <u>Id.</u> at 4–5.  In Headquarters Ruling H304606, Customs relied on Internal Revenue Service regulations in support of its ruling.  <u>See</u> HQ H304606 (June 24, 2021) at 14, ECF No. 22-1.  Plaintiff's Interrogatories two, four, five, 12, and 13 are adequately relevant to Plaintiff's claims for purposes of discovery.  Defendant has not demonstrated through Defendant's Response or Defendant's Interrogatories

Response in what ways Plaintiff's Interrogatories two, four, five, and 12 are disproportionate to the needs of the case.

In its response to Plaintiff's Interrogatory 13, Defendant stated "the deadline provided for a response, including the extension, does not allow a reasonable amount of time to identify 'any and all instances where [Customs] applied, consulted, or relied upon Internal Revenue Service regulations or Treasury Decisions in determining proper customs valuation, whether in Ruling letters or otherwise.'" Def.'s Interrog. Resp. at 8. The Court observes that Defendant's Interrogatories Response was served almost one month after the deadline. Regardless, this case involves a single entry and requesting Defendant to "identify any and all instances" of Customs taking a specific action without some reasonable limitations is disproportionate to the needs of the case. Plaintiff's Interrogatory 13 is inappropriate.

Having determined that Plaintiff's Interrogatories one, three, seven, and 13 are inappropriate, the Court now considers whether Defendant's responses to the surviving interrogatories are adequate. Defendant's Interrogatories Responses five, ten, 11, 14, and 15 refer only to other interrogatory responses or the text of Headquarters Ruling H304606. Def.'s Interrog. Resp. at 4, 7, 8–9. "An answer to an interrogatory must be responsive and complete in itself, and should not refer to the pleadings, depositions, documents, or other interrogatories." <u>NEC Am., Inc. v.</u>

<u>United States</u>, 10 CIT 323, 325, 636 F. Supp. 476, 479 (1986).  Plaintiff's

Interrogatory five reads: "If the answer to Interrogatory 3 above is yes, please

explain the basis for your contention and identify all sources reviewed and/or

relied upon . . . ."  Pl.'s Interrog. at 3.  Defendant's Interrogatories Response five

refers back to responses 3 and 4.  Def.'s Interrog. Resp. at 4.  Because this is fully

responsive to the question posed, which itself referred to a prior interrogatory, this

response is adequate.  Defendant's Interrogatories Responses ten, 11, 14, and 15,

which direct Plaintiff to certain pages of Headquarters Ruling H304606, are not

fully responsive to the interrogatories.  <u>Id.</u> at 7–9.  The Court orders Defendant to

respond to Plaintiff's Interrogatories ten, 11, 14, and 15.

      Defendant's Interrogatories Responses 12, 16, 17, and 18, each state only

that Defendant will "amend or supplement its response" to the interrogatory should

additional information become available.  <u>Id.</u> at 7–11.  These responses are not

sufficient.  Though USCIT Rule 33(a)(2) permits a party to delay answering an

interrogatory until after designated discovery, doing so requires approval from the

Court.  USCIT R. 33(a)(2).  The Court has not granted such approval in this case

and Defendant has made no showing as to why it would be appropriate.  Defendant

must provide complete responses to Plaintiff's Interrogatories 12, 16, 17, and 18.

      The Court has reviewed Defendant's Interrogatories Responses two, four,

six, eight, and nine and determined each to be appropriate.  The Court orders

Defendant to provide complete responses to Plaintiff's Interrogatories two, four, six, eight, nine, ten, 11, 12, 14, 15, 16, 17, and 18.

### III.    Plaintiff's Requests for Production

Plaintiff served the following requests for production on Defendant:

1.    Produce all documents, records and things reviewed in preparation for drafting the Defendant's Answer whether or not relied upon in formulating Defendant's Answer.

2.    Produce all documents, records or things reviewed in preparation for the Defendant's response to the Plaintiff's first set of Interrogatories whether or not Defendant relied upon the document in formulating its responses.

3.    Produce all documents, training materials, manuals, or instructions discussing or relating to [Customs'] determination of the deductive value of imported merchandise.

4.    Produce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines the dutiability of royalty payments and licensing fees related to the use of patents.

5.    Produce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines the dutiability of royalty payments and licensing fees related to the use of trademarks.

6.    Produce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines whether an expense is an "addition usually made for profits and general expenses" deductible under 19 U.S.C. § 1401a(d)(3)(A)(i) and 19 C.F.R. § 152.105(d)(1).

7.    Produce all documents, including email, memoranda, casefiles, and/or internal messages, discussing or relating to HQ H304606.

8.    Produce all email communications with all attachments sent from, and/or received by, the email address sean.a.headley@cbp.dhs.gov which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

9.    Produce all email communications with all attachments sent from, and/or received by, the email address bernard.ash@cbp.dhs.gov which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

10.    Produce all email communications with all attachments sent from, and/or received by, the email address hans.maxime@cbp.dhs.gov which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

11.    Produce all email communications with all attachments sent from, and/or received by, the email address kimberly.d.wiggins@cbp.dhs.gov which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

12.    Produce all email communications with all attachments sent from, and/or received by, the email address amy.a.moore@cbp.dhs.gov

which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

13.    Produce all email communications with all attachments sent from, and/or received by, the email address cynthia.m.reese@cbp.dhs.gov which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

14.    Produce all email communications with all attachments sent from, and/or received by, the email address monikarice.brenner@cbp.dhs.gov which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

15.    Produce all email communications with all attachments sent from, and/or received by, the email address tracie.r.siddiqui@cbp.dhs.gov which concern, refer to or in any way relate to Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements.

16.    Produce all documents, including email, memoranda, and/or internal messages, discussing or relating to [Customs'] valuation of Glock's pistol kits.

17.    Produce all documents, training materials, manuals, or instructions discussing or relating to the applicability of the Internal Revenue Code and Internal Revenue Service regulations to customs valuation determinations.

18.    Produce all documents, training materials, manuals, or instructions discussing or relating to the deductibility of costs qualifying under Generally Accepted Accounting Principles ("GAAP") as profits and general expenses ("P&GE") from deductive value under 19 U.S.C. § 1401a(d)(3)(A)(i).

19.    Produce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines whether a royalty payment and/or licensing fee is a condition of sale of imported merchandise for exportation to the United States.

20.    Produce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines whether a royalty payment and/or licensing fee is related to manufacturing merchandise in the United States.

21.    Produce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines whether a royalty payment and/or licensing fee is related to assembling merchandise in the United States.

22.    Produce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines whether a royalty payment and/or licensing fee is related to selling merchandise in the United States.

23.    Produce all documents, training materials, manuals, or instructions discussing or relating to the elements of trademark infringement under the Lanham Act.

24.    To the extent not produced in response to Requests for Production 1–23 above, produce all documents, records or things identified or described in Defendant's responses to Plaintiff's first set

of Interrogatories and correlate the document to the specific
interrogatory answer.

Pl.'s Reqs. Produc.  Defendant objects to each of Plaintiff's Requests for

Production.  Def.'s Reqs. Produc. Resp.  Plaintiff contends that the Court should

overrule Defendant's objections.  Pl.'s Mot. at 10–11.  Defendant asserts that its

responses to Plaintiff's Request for Production are appropriate.  Def.'s Resp. at 19–

27.

### A.    Publicly Available Information

Defendant objects to Plaintiff's Requests for Production one, two, three,

four, five, six, 17, 18, 19, 20, 21, 22, 23, and 24 on the grounds that the

information requested is publicly available.  Def.'s Reqs. Produc. Resp. at 1–4, 16–

19.  There is a split amongst courts as to whether a party can be compelled to

produce publicly available information.  Compare CRST Expedited, Inc. v. Swift

Transp. Co. of Ariz., LLC, 328 F.R.D. 231, 237 (N.D. Iowa 2018) (finding that

publicly available information is subject to production), and Shatsky v. Syrian

Arab Rep., 312 F.R.D. 219, 223–24 (D.D.C. 2015) (same) with Bleecker v.

Standard Fire Ins. Co., 130 F. Supp. 2d 726, 738–39 (E.D.N.C. 2000) (finding that

a party is not required to produce publicly available documents accessible to the

other opposing party), Dushkin Publ'g Grp. v. Kinko's Serv. Corp., 136 F.R.D.

334, 335 (D.D.C. 1991) (denying motion to compel production of pleadings and

discovery filed with the court in another litigation that were available to the

public), and SEC v. Samuel H. Sloan & Co., 369 F. Supp. 994, 996 (S.D.N.Y.

1973).  It does not appear from the Court's review that the U.S. Court of Appeals

for the Federal Circuit or this court has previously expressed an opinion on this

question.  The language of USCIT Rule 34 is expansive, allowing for a party to

request production of "any designated documents or electronically stored

information" "in the responding party's possession, custody, or control."  USCIT

R. 34(a)(1).  The rule does not exclude information that might be easily available

from a public source.  As information becomes more accessible through the

internet and other technologies, imposing such an exclusion would inevitably result

in unnecessary complications for litigants.  Accordingly, Defendant is obligated to

produce documents and information in its custody or possession, even if such

documents and information are publicly available or otherwise accessible to

Plaintiff.  Defendant's objections to Plaintiff's Requests for Production one, two,

three, four, five, six, 17, 18, 19, 20, 21, 22, 23, and 24 as requesting publicly

available information are overruled.

### B.    Plaintiff's Request for Production Seven

Defendant objects to Plaintiff's Request for Production seven on the ground

that:

it is not related to the claims in the Complaint because, in HQ H304606, [Customs] did not review the entry or the "imported merchandise," "merchandise at issue," or "pistol kits," as defined in the "Definitions" section accompanying these requests for production, at issue in this action. In HQ, H3040606, [Customs] did not review the "Amended Intellectual Property Agreement, dated January 1, 2022" identified in Plaintiff's Rule 26(a)(1)(A)(ii) Disclosure as item no. 1. Defendant further objects to this request on the ground that it is not proportionate to the needs of this de novo action.

Def.'s Reqs. Produc. Resp. at 4. A request for production is limited in scope to documents, information, and things that are relevant to the case. USCIT R. 34(a); see also USCIT R. 26(b). In its Complaint, Plaintiff alleges that it appraised the value of the subject merchandise based on Headquarters Ruling H304606. Compl. ¶ 29. For this reason, some discovery related to Headquarters Ruling H304606 is relevant. However, this litigation is not an opportunity for Plaintiff to challenge the correctness of Headquarters Ruling H304606. Discovery related to Headquarters Ruling H304606 should be limited to only whether Customs' valuation in this case was proper. For example, evidence of whether this case concerns "transactions involving the same merchandise and like facts" as those considered in the Headquarters Ruling H304606 or whether Customs deviated from its past practice might be relevant to Plaintiff's claims. See 19 C.F.R. § 177.9(b)(3); SKF USA Inc. v. United States, 630 F.3d 1365, 1373 (Fed. Cir. 2011) (acknowledging that "[w]hen an agency changes its practice, it is obligated to provide an adequate explanation for the change"). Evidence related to Customs'

reasoning and process in issuing Headquarters Ruling H304606 are less likely to be relevant in challenging Customs' valuation in this case. As drafted, Plaintiff's Request for Production seven is overbroad and not limited to information and documents relevant to this case. Therefore, Defendant's objection is sustained.[1]

### C.    Plaintiff's Requests for Production four, five, six, 17, 19, 20, 21, 22, and 23

Defendant objects to Plaintiff's Requests for Production four, five, six, 17, 19, 20, 21, 22, and 23 on the grounds that the information requested is irrelevant. Def.'s Reqs. Produc. Resp. at 2–4, 16–18. Defendant argues that in a valuation case, the plaintiff carries the burden of proving (1) that Customs' appraisement of the subject merchandise was incorrect and (2) the proper valuation. Def.'s Resp. at 25 (citing United States v. Arnold Pickle & Olive Co., 68 CCPA 85, 88, 659 F.2d 1049, 1052 (1981)). At this stage of the proceedings, relevance is construed broadly. FDK Am., Inc., 38 CIT at 465, 973 F. Supp. 2d at 1318.

Requests for Production four, five, and six request Defendant to "[p]roduce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines" the "dutiability of royalty payments and licensing fees related to the use of" patents and trademarks and "whether an expense is an

---

[1]  The Court understands that subsequent to the filing of Plaintiff's Motion, Defendant indicated that it will produce non-privileged documents contained in the ruling file for Headquarters Ruling H304606.

'addition usually made for profits and general expenses' deductible under 19

U.S.C. § 1401a(d)(3)(A)(i) and 19 C.F.R. § 152.105(d)(1)."  Pl.'s Reqs. Produc. at

5.  These requests seek information related to how Customs determines valuation.

Count one of Plaintiff's Complaint argues that Plaintiff's royalty payment based on

net sales of licensed products is not dutiable and should have been treated as a

general expense.  Compl. ¶¶ 32–38.  Plaintiff's Requests for Production four, five,

and six are relevant at this stage of the proceedings.

Plaintiff's Requests for Production 19, 20, 21, and 22 request Defendant to

"[p]roduce all documents, training materials, manuals, or instructions discussing or

relating to how [Customs] determines whether a royalty payment and/or licensing

fee" is related to certain conditions.  Pl.'s Reqs. Produc. at 8.  Defendant objects to

Plaintiff's Requests for Production 19, 21, and 22 arguing that "Plaintiff has not

alleged that the value of the pistol kits includes a licensing fee."  Def.'s Reqs.

Produc. Resp. at 17–18.  Count one of Plaintiff's Complaint alleges that a royalty

payment is not dutiable.  Compl. ¶¶ 32–38.  Each of the challenged Requests for

Production refer to "royalty payments and/or licensing fees."  Pl.'s Req. Produc. at

8.  The Complaint explains that the royalty payment is required under a licensing

agreement and is calculated based on the net sales of licensed products.  Plaintiff's

Requests for Production 19, 21, and 22 are relevant.

Plaintiff's Request for Production 20 also concerns royalty payments and licensing fees and asks Defendant to "[p]roduce all documents, training materials, manuals, or instructions discussing or relating to how [Customs] determines whether a royalty payment and/or licensing fee is related to manufacturing merchandise in the United States."  Id.  Defendant objects to this request, arguing that Plaintiff conceded in its Complaint that "[n]o manufacturing processes are used in the assembly of pistols from [the subject merchandise]."  Def.'s Reqs. Produc. Resp. at 17 (quoting Compl. ¶ 13).  Plaintiff has not demonstrated how Plaintiff's Request for Production 20 is relevant when it does not seek information related to the facts of this case.  Defendant's objection to Plaintiff's Request for Production 20 is sustained.

Defendant objects to Plaintiff's Request for Production 17 on the ground that "Plaintiff has not alleged, nor is there any evidence in the record of this action, indicating that the pistol kits were appraised using the "Internal Revenue Code" and/or "Internal Revenue Service regulations."  Id. at 16.  In Headquarters Ruling H304606, Customs relied on Internal Revenue Service regulations in support of its ruling.  See HQ H304606 at 14.  To the extent that Plaintiff is relying on Headquarters Ruling H304606 to support its valuation position, Plaintiff's Request for Production 17 is relevant for purposes of discovery.

Defendant objects to Plaintiff's Request for Production 23 on the grounds that it is irrelevant because "Plaintiff has not alleged that trademark infringement is an issue in this action." Def.'s Reqs. Produc. Resp. at 18. In Headquarters Ruling H304606, Customs stated:

> we believe the trade dress trademarks are directly related to the production or assembly of the subject [articles]. In our view, these trade dress trademarks are inextricably linked to the production of the [articles]. As such, royalties for the use of these trade dress trademarks are costs of production and part of the cost of goods sold. They are not general expenses deductible under the deductive value method of appraisement.

HQ H304606 at 11. To the extent that Plaintiff is relying on Headquarters Ruling H304606 to support its valuation position, Plaintiff's Request for Production 23 is relevant.

Defendant also objects to Plaintiff's Requests for Production four, five, six, 17, 19, 21, 22, and 23 as overbroad. Def.'s Reqs. Produc. Resp. at 2–4, 16–18. Each of these requests ask Defendant to "[p]roduce all documents, training materials, manuals, or instructions discussing or relating to" how Customs determines valuations. Pl.'s Reqs. Produc. at 5, 7–8. Defendant contends that the use of broad terms such as "all documents" and "relating to" make the requests disproportionate to the needs of the case. Def.'s Resp. at 25–26. The Court agrees. This case involves a single entry. Plaintiff's production requests include no limitations on time, location, or type of goods, and as drafted, would require

Defendant to undertake the Herculean task of reviewing countless cases and documents.  Because Plaintiff has relied on the 2021 Headquarters Ruling H304606, the Court cannot presume that Plaintiff intended to limit its request to only documents, training materials, manuals, or instructions considered in this case.  As drafted, Plaintiff's Requests for Production four, five, six, 17, 19, 21, 22, and 23 are overbroad and Defendant's objections are sustained.

### D.    Plaintiff's Requests for Production Eight, Nine, Ten, 11, 12, 13, 14 and 15

Plaintiff's Requests for Production eight, nine, ten, 11, 12, 13, 14 and 15 each request Defendant to produce all email communications and attachments from certain email addresses that relate to "Glock, including the pistol kits, Glock trademarks, Glock patents, Glock's royalty payments, Glock's use of the fallback method based on the deductive value of imported merchandise, Glock's use of a weighted average to determine model price, the assembly of Glock pistols, and/or Glock licensing agreements."  Pl.'s Req. Produc. at 5–7.  Defendant objects to these requests as irrelevant, overbroad, and duplicative of other requests.  Def.'s Reqs. Produc. Resp. at 4–15.  Plaintiff has indicated that the individuals associated with the identified email addresses "are known to have addressed matters pertaining specifically to Glock and the valuation of its import entries."  Pl.'s Mot. at 11.  Plaintiff's requests are not limited to only the subject entry in this case, but

request all emails related to Glock.  Seeking production of emails concerning other Glock entries that are unrelated and irrelevant to the instant case is overbroad and disproportionate to the needs of this case.  Therefore, Defendant's objections are sustained.

### E.    Plaintiff's Requests for Production 16 and 24

Defendant has indicated that it "continues to search for responsive documents and reserves the right to amend its response[s]" to Plaintiff's Requests for Production 16 and 24.  Def.'s Reqs. Produc. Resp. at 15−16, 18−19.  Defendant has provided no reason for the delay in producing the requested documents. Defendant has provided no objection to Plaintiff's Request for Production 16.  Id. at 15−16.  Defendant's only objection to Plaintiff's Request for Production 24 is that the request might seek documents that are publicly available.  Id. at 18−19. Defendant must promptly produce the documents and information requested in Plaintiff's Requests for Production 16 and 24.

For these reasons, the Court sustains at least one of Defendant's objections to Plaintiff's Requests for Production four, five, six, seven, eight, nine, ten, 11, 12, 13, 14, 15, 17, 19, 20, 21, 22, and 23.  The Court overrules all of Defendant's objections to Plaintiff's Requests for Production one, two, three, 16, 18, and 24 and orders Defendant to provide responses.

IV.    Attorneys' Fees

Plaintiff argues that the Court should award Plaintiff its attorneys' fees and expenses related to litigating Plaintiff's Motion.  Pl.'s Mot. at 12–13.  Defendant contends that costs and fees should not be awarded because its objections and responses were substantially justified.  Def.'s Resp. at 28–29.

USCIT Rule 37 provides that if a motion to compel discovery is granted or disclosure or discovery is provided after the motion is filed, the Court must require the responding party to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the movant did not attempt to obtain discovery in good faith, the nondisclosure, response, or objection was substantially justified, or an award of expenses would be unjust.  USCIT R. 37(a)(4)(A).  If a motion to compel discovery is denied, the Court must order the moving party to pay the responding party's "reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was substantially justified or an award of expenses would be unjust.  USCIT R. 37(a)(4)(B).  If a motion to compel discovery is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." USCIT R. 37(a)(4)(C).  Plaintiff's Motion is granted in part and denied in part and the Court holds that each Party shall bear its own costs and fees.

## CONCLUSION

Upon consideration of Plaintiff's Motion to Deem Admitted its Requests for Admission and Compel Other Discovery Responses from Defendant, ECF No. 18, Defendant's Response to Plaintiff's Motion to Deem Admitted its Requests for Admission and Compel Other Discovery Responses, ECF No. 34, Plaintiff's Reply in Support of its Motion to Deem Admitted its Requests for Admission and Compel Other Discovery Responses from Defendant, ECF No. 36, and all other papers and proceedings in this action, it is hereby

**ORDERED** that Plaintiff's Motion to Deem Admitted its Requests for Admission and Compel Other Discovery Responses from Defendant, ECF No. 18, is granted in part and denied in part; and it is further

**ORDERED** that Defendant's objections to Plaintiff's Requests for Admission one, two, three, four, six, seven, eight, ten, and 11 are sustained. Defendant's objections to Plaintiff's Requests for Admission five and nine are overruled. Defendant shall provide a complete response to Plaintiff's Request for Admission five on or before October 25, 2024; and it is further

**ORDERED** that Defendant's objections to Plaintiff's Interrogatories are deemed waived. Defendant shall provide complete responses to Plaintiff's Interrogatories two, four, six, eight, nine, ten, 11, 12, 14, 15, 16, 17, and 18 on or before October 25, 2024; and it is further

**ORDERED** that Defendant's objections to Plaintiff's Requests for

Production four, five, six, seven, eight, nine, ten, 11, 12, 13, 14, 15, 17, 19, 20, 21,

22, and 23 are sustained.  Defendant's objections to Plaintiff's Requests for

Production one, two, three, 16, 18, and 24 are overruled.  Defendant shall provide

complete responses to Plaintiff's Request for Production one, two, three, 16, 18,

and 24 on or before October 25, 2024; and it is further

**ORDERED** that each Party shall bear its own costs associated with

litigating and defending against Plaintiff's Motion to Deem Admitted its Requests

for Admission and Compel Other Discovery Responses from Defendant.


                                                         /s/ Jennifer Choe-Groves
                                                      Jennifer Choe-Groves, Judge


Dated:     October 4, 2024
           New York, New York