UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Court No. 23-00046 <br> ) <br> ) <br> ) <br> ) |

**ORDER OF REFERRAL TO COURT-ANNEXED MEDIATION**

Upon consideration of Plaintiff's Motion for Referral to Court-Annexed Mediation, ECF No. ___, and all other papers and proceedings in this action, it is hereby

**ORDERED** that Plaintiff's Motion for Referral to Court-Annexed Mediation, ECF No. ___, is granted; and it is further

**ORDERED** that, pursuant to Rule 16.1, this case is referred to mediation. Judge_____ has agreed to serve as the Judge Mediator and will facilitate all sessions of mediation. The parties have a maximum of _____ days in which to conclude the mediation process. This case shall be stayed for a period of ninety (90) days or until the mediation process is concluded, whichever first occurs; and it is further

**ORDERED** that unless a settlement is reached within the mediation period and a Stipulation of Dismissal or Stipulated Judgment filed, which disposes of the case with respect to all parties and all claims, the parties shall appear for a status conference with the Court on a date to be determined.

_____
Jennifer Cho-Groves, Judge

Dated: _____
New York, New York

1

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE HON. JENNIFER CHO-GROVES, JUDGE

| | |
|---|---|
| GLOCK, INC., <br><br>         Plaintiff, <br><br>v. <br><br>UNITED STATES, <br><br>         Defendant. | Court No. 23-00046 |

## PLAINTIFF'S MOTION FOR REFERRAL TO COURT-ANNEXED MEDIATION

Plaintiff, GLOCK, INC. ("GLOCK"), by and through its undersigned counsel, respectfully moves this Court, pursuant to Rule 16.1 and Rule 1 of the Rules of the United States Court of International Trade ("USCIT Rules") and the Court's Guidelines for Court-Annexed Mediation, for an order referring this action to the Court's court-annexed mediation program. In support of this Motion, Plaintiff states as follows:

### INTRODUCTION

This action presents a narrow, straightforward valuation dispute concerning the deductibility of sales-based royalty payments as a "general expense" under 19 U.S.C. § 1401a(d)(3)(A)(i) in the context of deductive-value appraisement under 19 U.S.C. § 1401a(d)(2)(A)(iii). All fact discovery has been completed. The parties have exchanged voluminous documents, conducted depositions, and fully developed the factual record. Plaintiff respectfully submits that referral to court-annexed mediation is both timely and appropriate. As demonstrated below, and consistent with the standards articulated by this Court in *United States v. Tenacious Holdings, Inc.*, 6 F. Supp. 3d 1374 (Ct. Int'l Trade Sept. 2, 2014), the Court should exercise its broad discretion under Rule 16.1 to refer this matter to mediation so that a neutral third-party judge-mediator may assist the parties' attempts to

2

achieve an amicable, expeditious, and cost-effective resolution.

## BACKGROUND

GLOCK manufactures certain models of GLOCK pistols from domestically manufactured components and assembles certain other models of GLOCK pistols from foreign manufactured pistol component part kits that it imports from GLOCK Ges.m.b.H. in Austria. Pursuant to a licensing agreement, GLOCK pays royalties to another Austrian entity for the right to use certain trademarks in connection with GLOCK's subsequent sale of those products in the United States and Canada. The amount of the royalties is based on a percentage of GLOCK's net sales of products. Because the pistol component part kits that GLOCK imports (the "Subject Merchandise") are not sold in their condition as imported, the component parts are appraised under 19 U.S.C. § 1401a(d)(2)(A)(iii), which provides for the deductive value of imported merchandise after assembly in the United States.

This action concerns the deduction and non-dutiability of GLOCK's sales-based royalty payments. Defendant, through U.S. Customs and Border Protection ("CBP"), has refused to accept GLOCK's accounting of its royalty payments as a "general expense" under 19 U.S.C. § 1401a(d)(3)(A)(i) notwithstanding GLOCK's compliance with U.S. Generally Accepted Accounting Principles ("GAAP"). Consequently, the very straightforward issue for this Court to decide is whether the trademark-related royalty payments that GLOCK makes for its net sales of products assembled in the United States from parts manufactured overseas constitutes a general expense that is properly deducted from the dutiable value of imported component parts.

CBP HQ's previous ruling on the matter erroneously determined that the royalty payments are a dutiable cost of manufacture notwithstanding the fact that they are selling expenses and GLOCK properly accounts for its royalty payment as a cost of sale in accordance with U.S. GAAP. Despite the simplicity of the issues and GLOCK's long-term open-book and collegial engagement

with CBP for well over six years prior to filing suit in 2024, Defendant insisted on making this matter as time-consuming, burdensome, and difficult as possible. Indeed, GLOCK cooperated with CBP at all administrative levels for over a half decade prior to this lawsuit in an effort to amicably resolve this dispute. This litigation came as a result of the Defendant's unabashed refusal to accept GLOCK's GAAP-compliant accounting of its royalty payments. In the years leading up to this action, CBP systematically refused to acknowledge and accept basic accounting principles, act on its statutory mandates, adhere to Congress' explicit guidance, and/or follow its own regulations, published guidance and administrative determinations. In par with its pre-litigation practices, Defendant repeatedly attempted to stonewall discovery in this case. These tactics necessitated a motion to compel as related to GLOCK's requests for production of documents and interrogatories and to deem as admitted GLOCK's requests for admission, which the Court resolved in a wholesome decision that overruled most of the Government's specious objections and ordered it to provide supplemental responses. *See* ECF No. 42.

After completing wholesome and costly fact discovery[1] and before incurring the expense of expert discovery, the parties began good-faith discussions of a potential path toward resolution without the need for continued litigation in this case. Those conversations progressed to a point where, in February of 2025, GLOCK was led to believe there may be an opportunity to ultimately cease litigation in this case through a renewed administrative review process. While an agreement was not reached as to the outcome of the administrative review, GLOCK's agreement to enter into this latest administrative process—a process that CBP urged GLOCK to participate in—was premised upon a mutual understanding that the parties would proceed in good faith and engage in

---

[1] The parties each exchanged initial and amended and supplemental written discovery responses and collectively produced nearly 5,000 pages of documents. GLOCK conducted depositions of two CBP fact witnesses and three Rule 30(b)(6) witnesses who testified on behalf of the United States, and defendant conducted the deposition of GLOCK's Rule 30(b)(6) witness.

4

collaborative and meaningful dialogue prior to the conclusion of the discussions.

On February 12, 2025, the parties jointly moved this Court for an order granting a stay in this matter. The request for a stay was intended to facilitate the parties' discussions at the administrative level while avoiding significant additional litigation costs which may have ultimately proved not to be necessary. On March 12, 2025 the parties agreed that GLOCK would dismiss this action prior to CBP's issuance of an internal advice decision if CBP agreed to: (1) review 12 randomly selected entry lines from the 2023 calendar year under an Internal Advice process; (2) provide an analysis 90 days after GLOCK provides its internal advice submission; and (3) arrange a meeting with GLOCK in advance of any contemplated negative or mixed determination, however if GLOCK provided supplemental information or argumentation then an extension would be necessary for CBP to review and analyze that information. The parties further agreed that discovery and deposition testimony in this action does not need to be re-produced in any subsequent case, there is no waiver of any party rights with respect to objecting to deposition testimony or discovery on any evidentiary or other grounds in any subsequent case filed by GLOCK, there is no waiver of any party rights to conduct fact and witness discovery in any subsequent case filed by GLOCK.

The initial stay was extended multiple times to permit continued dialogue between the parties, which included GLOCK making voluminous documentary submissions to CBP and thereafter responding to several CBP requests for additional information. The parties engaged in a preliminary meeting in August of 2025, before CBP concluded its initial analysis of several key issues that are before the Court in this case, at which time GLOCK provided a supplemental submission and presented several critical questions to CBP to facilitate a discussion on a more complete record. Additionally, CBP requested the preliminary meeting be adjourned to allow CBP to review and consider GLOCK's submission with a follow up meeting to be scheduled. GLOCK's questions

remain unanswered and no meaningful substantive discussion ever occurred.

At the end of this latest protracted and ultimately year-long administrative review process, CBP refused to answer the critical questions that GLOCK asked back in August of 2025, despite its repeated promises to do so. CBP then unilaterally refused to meet with GLOCK after it took over five months to consider GLOCK's supplemental submission and the more than 2,500 pages of confidential supporting documentation that CBP requested, and GLOCK provided. In late November, CBP again represented that they were working to provide GLOCK with "a concrete timeline" for a meeting and responses to the critical questions GLOCK submitted in August of 2025, but less than 30 days later CBP rejected a meeting and stated it would only address GLOCK's questions, if necessary, in their undisclosed final written determination.[2]

GLOCK has been deprived of a fulsome opportunity to engage in the collaborative and meaningful dialogue that it was presented with at the outset of the parties' agreement to enter into a new administrative review process. Instead, GLOCK gave CBP all the information and documentation it requested, and CBP refused to reciprocate in any consequential way. CBP's actions reflect its intent to issue a written determination that is adverse to GLOCK without having engaged in any meaningful and good-faith negotiations with GLOCK. CBP's determination of this matter is of critical importance to GLOCK and will have a substantive impact on countless other importers. And, as all parties have agreed—and CBP's witnesses testified to during fact discovery—the deductibility of sales-based royalty payments for the use of trademarks under deductive value, including trade dress trademarks in this valuation context, are matters of first impression for the agency and the Court.

---

[2] While the parties' agreement included GLOCK's agreement to dismiss this case to allow CBP to issue its internal advice decision following this renewed administrative process, the Court should alternatively consider vitiating the parties' agreement and retain jurisdiction over this case based on CBP's failure to honor its commitment to engage in a good faith meaningful dialogue with GLOCK.

GLOCK continues to believe, after the 9+ years that this dispute has endured, there is a path forward to an amicable resolution and the guidance of a third-party neutral could assist in the orderly and expeditious disposition of this case. Consequently, GLOCK requests an order of referral to the U.S. Court of International Trade's court-annexed mediation program. GLOCK advised the Government of the foregoing and requested its consent to submit this matter to mediation, *see* Exhibit A (RLF Email of February 22, 2026), however the Government declined. *See* Exhibit B (DOJ Email of February 24, 2026). Through this motion GLOCK simply seeks an opportunity to engage in a fulsome, two-way discussion prior to any CBP determination with the guidance of an exceptionally qualified third-party neutral from this Honorable Court.

## ARGUMENT

### I. The Court Possesses Broad Discretion Under Rule 16.1 to Refer This Matter to Court-Annexed Mediation, Even Over Opposition

USCIT Rule 16.1 expressly authorizes the Court to refer any action to court-annexed mediation "[a]t any time during the pendency of an action," either *sua sponte* or "[i]n response to a motion from one or more parties." The Court's Guidelines for Court-Annexed Mediation confirm that referral may occur "in response to a motion from one or more parties." S*ee also Tenacious Holdings*, 6 F. Supp. 3d at 1377 (*citing* Rule 16.1 and Guidelines). No consent of the opposing party is required. *Id.*

In *Tenacious Holdings*, this Court granted a contested motion for referral in a penalty and classification case, expressly adopting the framework of *In re Atlantic Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002). The Court's discretion is limited only by the requirements that the referral (1) reasonably enhances the Court's processes for orderly disposition of cases, (2) does not contradict any statute or rule, (3) comports with procedural fairness, and (4) is exercised with restraint. *Tenacious Holdings*, 6 F.Supp.3d at 1377-78. The Court credited the party seeking mediation's

invocation of USCIT Rule 1 as mediation would promote the "just, speedy, and inexpensive determination" of the action. *Id.* at 1376. The Court also emphasized that settlement rates in mediated cases are high, and that the confidentiality of the process preserves privileges and encourages candid discussion. *Id.* at 1378. The Court further noted that referrals may occur even before discovery is complete and that the benefits of mediation frequently outweigh any temporary delay. *Id.*

Here, all of the *Tenacious Holdings* factors strongly favor referral. The motion is timely (well in advance of any dispositive motions or trial), fact discovery is complete, and the parties stand poised to incur substantial additional expense if either this case were to proceed into expert discovery or if it was dismissed and a new action were commenced following GLOCK's protest of CBP's valuation of new pistol kit entries. And CBP's issuance of a final determination under the present circumstances will unreasonably prolong the parties' nearly decade-long dispute and offer neither party the assurance of finality. Referral at this juncture will plainly enhance the orderly and expeditious disposition of the case.

## II. Referral Is Particularly Appropriate in This Straightforward Valuation Dispute of First Impression, Where Plaintiff Has Acted in Good Faith and the Prospect of Further Litigation Is Costly and May Be Unnecessary

This case presents a single, discrete legal question: whether sales-based trademark royalties properly accounted for under GAAP as selling/general expenses are deductible under the deductive-value statute. The factual record is fully developed. Expert discovery is the next (and costly) step. And the alternative step—an entirely new action seeking adjudication of the same legal question currently before the Court—is even more costly to the parties and a strain on the Court's resources. These circumstances make the case an ideal candidate for mediation.

Plaintiff has consistently sought an amicable resolution. GLOCK engaged CBP cooperatively for more than six years prior to bringing this action, included the royalties in dutiable value for a

specific entry solely to frame a protest to bring this matter before the Court, and participated in good faith in the year-long administrative review process that CBP itself urged. In this latest administrative process, GLOCK voluntarily produced over 2,500 pages of confidential documentation while CBP refused to answer basic questions or even meet with GLOCK to engage in a substantive and meaningful dialogue regarding its proposed conclusions. Plaintiff's continued willingness to resolve the matter amicably, even after over nine total years of protracted proceedings to date, demonstrates the very spirit of cooperation that court-annexed mediation is designed to foster.

This case is also ripe for mediation. A knowledgeable neutral may be able to highlight problems or defects in one side or the other that the parties have not considered. Although CBP has been unwilling to engage in a truly meaningful dialogue or seek to negotiate a potential resolution in good faith, the parties' positions may be more aligned than CBP believes. Mediation could help bridge the gap.

A neutral judge-mediator can bring fresh perspective to this novel issue, facilitate creative business-oriented solutions that litigation cannot provide, help the parties avoid the expense and uncertainty of expert discovery, summary judgment, and trial, and save off the need for future litigation involving the same disputed issues that are currently before the Court. Further, the confidentiality protections of the mediation program (Guidelines § II(C)) will allow candid discussion among the parties in good faith, as the parties agreed to at the outset of CBP's new administrative review, without prejudice to either side. *See Tenacious Holdings*, 6 F.Supp.3d at 1378.

Defendant's apparent preference for continued and renewed adversarial proceedings does not outweigh the clear benefits of mediation. This Court has repeatedly recognized that the goals of Rule 1 are best served by encouraging settlement where, as here, the stakes are significant for the importer, the issue has broader impact, and the parties have already demonstrated (through GLOCK's

extensive cooperation) a willingness to resolve the dispute without protracted litigation. Finally, directing the parties to participate in non-binding mediation changes nothing with respect to the strength of their positions or the trajectory of this action or any related future litigation. Indeed, while the Defendant will not be prejudiced by mediation, GLOCK will be prejudiced if it does not have the opportunity for fulsome, two-way dialogue before the parties' settlement discussions conclude.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter an Order referring this action to the Court's court-annexed mediation program, designating an appropriate Judge Mediator, and staying all proceedings for ninety (90) days or until the mediation process is concluded, whichever occurs first, pursuant to the Guidelines.

**WHEREFORE**, Plaintiff requests that its motion be granted in all respects.

Respectfully submitted,

**SANDLER, TRAVIS & ROSENBERG, P.A.**
675 Third Avenue, Suite 1805-06
New York, New York 10017
Telephone: (212) 549-0137

-and-

**RENZULLI LAW FIRM, LLP**
JOHN F. RENZULLI
PETER V. MALFA
One North Broadway, Suite 1005
White Plains, New York 10601
Telephone: (914) 285-0700

By: __*/s/ Peter V. Malfa*__
         PETER V. MALFA

*Attorneys for Plaintiff, GLOCK, Inc.*

Dated: February 26, 2026